**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LINDSAY O'BRIEN QUARRIE,

      Plaintiff,

v.                                               Civ. No. 17-350 MV/GBW

STEPHEN WELLS, *et al.*,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the Motion to Dismiss Plaintiff's Second Amended Complaint brought by the Board of Regents of the New Mexico Institute of Mining and Technology, Lorie Liebrock, Daniel Lopez, Warren Ostergren, Kevin Wedeward, and Stephen Wells ("NMT Defendants") (*doc. 76*), the Updated Motion to Dismiss brought by SaucedoChavez, P.C. and Christopher Saucedo ("Saucedo Defendants") (*doc. 78*), and the attendant briefing (*docs. 79, 80, 81, 83*). Having reviewed the Motions and applicable law, I RECOMMEND that the Court GRANT Saucedo Defendants' Motion to Dismiss. Further, I RECOMMEND that the Court GRANT NMT Defendants' Motion to Dismiss as it pertains to Counts I, II, IV, and the Count V request for injunctive relief against defamation, but DENY the Motion as it pertains to the Count V request for injunctive relief against racial discrimination.

# I.  BACKGROUND

Plaintiff initiated the current suit on March 20, 2017.  *Doc. 1.*  He later amended his complaint on April 6, 2017 (*doc. 15*) and again on February 14, 2018 (*doc. 75*).  The currently operative complaint in this action, the Second Amended Complaint, alleges claims against NMT Defendants and Saucedo Defendants that Plaintiff has been defamed and wrongfully denied readmission into NMT's PhD program.  *Doc. 75.*  He asserts five counts against various defendants:

(I)   A constitutional slander-based defamation claim under 42 U.S.C. § 1983 against Defendants Lopez, Ostergren, Wedeward, Saucedo, and SaucedoChavez P.C. in their individual capacities;

(II)  A constitutional libel-based defamation claim under 42 U.S.C. § 1983 against Defendant Wells in his individual capacity;

(III) Racial discrimination under Title VI of the Civil Rights Act of 1964 against the Board of Regents of NMT;

(IV)  Unconstitutional deprivation of a property right under 42 U.S.C. § 1983 against Defendants Liebrock and Wells; and

(V)   Request for a permanent injunction under *Ex parte Young* against Defendants Wells, Liebrock, and Board of Regents of NMT to prohibit them from preventing Plaintiff's reinstatement into the PhD program; and against Defendants Lopez, Wells, Ostergren, Wedward, Saucedo, and SaucedoChavez, P.C. to prohibit them from making "false and misleading statements" about Plaintiff.

*Id*. at 19–24.  Saucedo Defendants are named only in Counts I and V and have moved to dismiss all claims against them (*doc. 78*).  NMT Defendants have moved to dismiss Counts I, II, IV, and V.  *Doc. 76.*  The only claim not targeted by the pending motions is

Count III (Title VI racial discrimination), and I accordingly do not analyze its viability.

Both Motions to Dismiss are now before me pursuant to the Court's Order of Reference.

*Doc. 85*.

Notably, this is not Plaintiff's first suit involving the New Mexico Institute of

Mining and Technology. In an earlier action ("*Quarrie I*") commenced on April 12, 2013,

Plaintiff sued the New Mexico Institute of Mining and Technology, Lorie Liebrock, and

Daniel Lopez, along with several other defendants not named in the current complaint,

in connection with his allegedly wrongful expulsion from the PhD program. *See Quarrie*

*v. New Mexico Inst. of Mining & Tech., et al.*, No. 13-cv-0349 MV/SMV, 2014 WL 11456614

(D.N.M. Jan. 6, 2015). This earlier case was dismissed with prejudice on January 6, 2015,

due to Plaintiff's failure to pay court-ordered expenses and his filing of numerous

frivolous motions objecting to the order. *Id.* The Tenth Circuit Court of Appeals upheld

the dismissal based on Plaintiff's failure to comply with the District Court's expenses

order. *Quarrie v. New Mexico Inst. of Mining & Tech., et al.*, 621 F. App'x 928, 934 (10th

Cir. 2015). To the extent that any of the claims in the instant action involve already-

litigated issues, they are, of course, precluded.[1]

---

[1] "[T]he general rule is that '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1303 (citing Restatement (Second) of Judgments § 27, p. 250 (1980)). Though Plaintiff emphasizes that *Quarrie I* was dismissed "on [a] completely unrelated technical ground" (*doc. 75* at 10), involuntary dismissal nonetheless "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a Court will dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Specifically, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In assessing whether a complaint meets this standard, the Court is to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  Then, accepting only the well-pleaded factual allegations as true and viewing them in the light most favorable to the plaintiff, the court is to consider whether "they plausibly give rise to an entitlement to relief." *Barrett v. Orman*, 373 F. App'x 823, 825 (10th Cir. 2010) (unpublished) (quoting *Iqbal*, 556 U.S. at 677–78); *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Where, as here, a party is proceeding *pro se*, the court is to liberally construe his pleadings.  *Casanova*, 595 F.3d at 1125.  "But the court [is] not [to] 'assume the role of advocate for the pro se litigant.'"  *Baker v. Holt*, 498 F. App'x 770, 772 (10th Cir. 2012) (unpublished) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  In other words, "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of

the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110.

## III.  ANALYSIS

### A.  Defamation Claims Against NMT Defendants (Counts I & II) [2]

1. <u>Parties' Positions as to Counts I & II.</u>

In Count I of his Second Amended Complaint, Plaintiff makes a claim of "malicious and conspiratorial defamation by slander" against NMT Defendants Lopez, Ostergren, and Wedeward in their individual capacities. *Doc. 75* at 19.  He alleges that the aforementioned defendants slandered him personally and professionally during a June 28, 2016 meeting at NMT.  *Id.*  In Count II, Plaintiff makes a claim of "malicious and conspiratorial defamation by libel" against Defendant Wells based on a September 13, 2016 letter to Sheryl Stapleton of the New Mexico House of Representatives.  *Id*. at 20–21.  The legal basis for both claims is a violation of the Fifth and Fourteenth Amendments of the U.S. Constitution, enforceable through 42 U.S.C. § 1983.  *Id*. at 19–21.  Plaintiff asserts that Defendants' defamation has deprived him of (1) his "constitutionally guaranteed liberty of good name and reputation" and (2) his "constitutionally protected educational property right, as well as the opportunity, employment, and income that immediately issue therefrom."  *Id.*

---

[2] Because Saucedo Defendants raised different issues in their Motion to Dismiss, I discuss the defamation claims against them separately in the following section.

NMT Defendants have moved to dismiss Counts I and II. *Doc. 76*. NMT Defendants argue that there is no constitutional property right to admission into a PhD program, (*id*. at 6–7), and that even if Plaintiff did have such a property right, there has been no deprivation (*id*. at 8–10). They further argue that Plaintiff cannot show deprivation of a liberty interest in his reputation because the alleged defamation did not occur in the course of his termination from the PhD program. *Id*. at 10–11.

2. <u>Plaintiff alleges no constitutional violation by NMT Defendants sufficient to support a § 1983 defamation claim.</u>

42 U.S.C. § 1983 provides a cause of action for individuals whose federal rights have been violated by defendants acting "under color" of state law. In order to succeed, the § 1983 plaintiff must show that (1) he was deprived of a right secured by the U.S. Constitution or federal law, and (2) the defendant was acting under color of state law. *Johnson v. Rodriguez*, 293 F.3d 1196, 1201–02 (10th Cir. 2002) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)).

An individual's conduct constitutes state action if it satisfies the following two-part test:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible…. Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

*Johnson*, 293 F.3d at 1202 (quoting *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)). As a general rule, "a public employee acts under color of state law while acting

in his official capacity or while exercising his responsibilities pursuant to state law."

*West v. Atkins*, 487 U.S. 42, 50 (1988); *see also Lugar*, 457 U.S. at 936 n.18 ("state

employment is generally sufficient to render the defendant a state actor").[3]  While state

universities enjoy Eleventh Amendment immunity from suit under § 1983, *Cunningham*

*v. Univ. of N.M. Bd. of Regents*, 531 F. App'x 909, 914–15 (10th Cir. 2013), employees of

state universities may be sued for constitutional violations committed in their

individual capacities as long as they acted under color of law, *Hafer v. Melo*, 502 U.S. 21,

30–31 (1991).  *See, e.g., Wrenn v. Kansas*, 561 F. Supp. 1216, 1220 (D. Kan. 1983).

As a preliminary matter, Defendants must have been acting under color of law in

order for Plaintiff's § 1983 claims to succeed.  On Counts I and II, Plaintiff sues all

defendants in their individual capacities.  Defendants Ostergren, Wedeward, and Wells

are current employees of NMT, a public state university.  *Doc. 75* at 2.  Defendant Lopez

is a former NMT employee, and was employed by NMT at the time of the June 28, 2016

meeting.  *Doc. 75* at 2, 12.  Because all NMT Defendants were presumably acting within

the scope of their employment responsibilities by attending the meeting and, in

Defendant Wells' case, by writing the September 13, 2016 letter to Representative

Stapleton, they appear to have been acting under color of state law and are therefore

appropriate § 1983 defendants in their individual capacities.

---

[3] The "color of law" requirement of § 1983 is treated the same as the "state action" inquiry under the Fourteenth Amendment.  *See United States v. Prince*, 383 U.S. 787, 794 n.7 (1966).

The other essential component of a § 1983 action is a deprivation of rights conferred by federal law. Defamation is not ordinarily a federal constitutional cause of action. *See Siegert v. Gilley*, 500 U.S. 226, 233 (1991) ("Defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation."). Plaintiff contends, however, that because Defendants' alleged defamation deprived him of several constitutionally protected rights, it rises to the level of a federal constitutional claim. Specifically, he claims Defendants deprived him of the following: (1) the "constitutionally guaranteed liberty of good name and reputation," (2) a "constitutionally protected educational property right," and (3) "the opportunity, employment, and income that immediately issue therefrom." *Doc. 75* at 20.

Plaintiffs can establish § 1983 claims based on defamation only under a very limited set of circumstances. It is well established that "injury to reputation," without more, is "not a 'liberty' interest protected under the Fourteenth Amendment." *Siegert*, 500 U.S. at 233 (citing *Paul v. Davis*, 424 U.S. 693, 708–709 (1976)); *see also Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 726 (10th Cir. 2000) ("defamation, standing alone, [is] not sufficient to establish a claim for deprivation of a liberty interest"). Consequently, Plaintiff's claims cannot survive based solely on his first assertion of damage to his "name and reputation."

However, Plaintiff also alleges damage to his opportunities for employment and the deprivation of an educational property right. Constitutional defamation may exist

as a claim where it is accompanied by the loss of an interest or status previously granted by state or federal law. *Davis*, 424 U.S. at 710–711, 711 n.5; *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012) ("There are two elements of a stigma-plus claim: (1) governmental defamation and (2) an alteration in legal status."). In *Wisconsin v. Constantineau*, for example, a state statute that prohibited individuals from purchasing alcohol after they had been "posted" for excessive drinking was held unconstitutional because it failed to provide sufficient due process. 400 U.S. 433 (1971). However, the defamation involved in "posting" was unconstitutional only because of the accompanying alteration in the individuals' legal status with respect to being allowed to purchase alcohol. *See Davis*, 424 U.S. at 707–09. The Court explained that "the governmental action taken in [*Constantineau*] deprived the individual of a right previously held under state law—the right to purchase or obtain liquor in common with the rest of the citizenry. 'Posting,' therefore, significantly altered her status as a matter of state law, and it was that alteration of legal status which, combined with the injury resulting from the defamation, justified the invocation of procedural safeguards." *Id*. at 708–09.

Individuals have a recognized property interest in continued public employment. *See Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994). Accordingly, in the employment context, defamation may constitute a constitutional violation if it

"occur[s] in the course of the termination of employment."[4] *Davis*, 424 U.S. at 710. If the defamation occurs later in time, it cannot form the basis of a constitutional claim, though it may be actionable under state tort law. *See Siegert*, 500 U.S. at 234. This is true even if the defamation "would undoubtedly damage [the employee's] reputation…and impair his future employment prospects." *Id*. The Tenth Circuit requires public employees claiming an infringement of liberty interest via defamation to satisfy a four-part test. The defamatory statements: (1) must impugn the employee's "good name, reputation, honor, or integrity"; (2) must be false; (3) must be published; and (4) "must occur in the course of terminating employment." *Valdez v. New Mexico*, 109 F. App'x 257, 262 (10th Cir. 2004) (unpublished) (quoting *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1153 (10th Cir. 2001)).[5]

Plaintiff has alleged a loss of "opportunity, employment, and income" as a result of NMT Defendants' statements.[6] *Doc. 75* at 20. However, even accepting all of Plaintiff's allegations as true, this loss is insufficient to convert defamation into a violation of Plaintiff's liberty interest. Simply put, the statements did not occur in the

---

[4] There may also be a constitutional violation if the defamation occurs in the course of declining to re-hire an employee. *Bd. of Regents v. Roth*, 408 U.S. 564 (1972). Note that "re-hire" in this context refers to the decision not to renew a contract, rather than to the refusal to re-hire an employee subsequent to termination or resignation.
[5] The Tenth Circuit previously included "foreclosure of employment opportunities" in its four-part test. *See Stidham*, 265 F.3d at 1153–54 (explaining how and why the Supreme Court's *Siegert* decision altered the Tenth Circuit approach).
[6] Plaintiff also repeatedly refers to Defendants' defamation as "malicious." *Doc. 75* at 19–20. The Supreme Court has made it clear that "malice" is irrelevant in determining whether a constitutional claim exists. *Siegert*, 500 U.S. at 234.

course of terminating Plaintiff's employment because Plaintiff was not employed by NMT.  It was Plaintiff's enrollment in the PhD program that was terminated, not his public employment.  *Doc. 75* at 7.  Moreover, the statements at issue occurred during a meeting on June 28, 2016, and in a letter written on September 13, 2016, approximately four years after Plaintiff's expulsion.  His claim therefore cannot survive the fourth prong of the Tenth Circuit test.

Lost employment opportunities, as opposed to the termination of continuing employment, are generally insufficient to transform a state defamation claim into a federal constitutional one because they are "too speculative…to constitute a deprivation of a liberty…interest."  *Valdez*, 109 F. App'x at 262 (quoting *Workman*, 32 F.3d at 481).  As a result of his previous public employer's bad reference, the plaintiff in *Siegert* was unable to obtain Army credentials and ultimately was terminated from his next job and rendered unable to find "other appropriate employment in the field."  500 U.S. at 228–29.  Similarly, the plaintiff in *Stidham v. Peace Officer Standards and Training* was repeatedly rejected from other jobs in his field due to his previous employer's allegations that he had raped a young girl.  265 F.3d 1144, 1149 (10th Cir. 2001).  In both cases, the Court found that the plaintiff failed to raise a constitutional claim because the defamation did not occur in the course of terminating employment.  If anything, Plaintiff's loss of future opportunity in the instant case appears to be *less* definite than

those in *Siegert* and *Stidham*.[7]  In sum, because the alleged defamation certainly did not

occur in the course of terminating continued employment, it cannot be characterized as

an infringement on his liberty interest.

Plaintiff's final theory is that Defendants' defamation deprived him of a

constitutionally protected educational property right.  *Doc. 75* at 20.  More specifically,

in his Response to NMT Defendants' Motion to Dismiss, Plaintiff claims that he was

deprived of an educational property right without due process during the June 28, 2016

meeting.  *Doc. 80* at 7–8.  Procedural due process is required only where there is an

accompanying deprivation of constitutional property or liberty interests.  *Bd. of Regents

v. Roth*, 408 U.S. 564, 569 (1972).  A constitutional property interest in a particular benefit

is created where an individual has a "legitimate claim of entitlement."  *Id*. at 577.

Likewise, defamation by a state actor only rises to the level of a constitutional liberty

infringement where it is accompanied by the loss of a legal right or the alteration of a

legal status.  *Davis*, 424 U.S. at 710–711, 711 n.5.  Therefore, Plaintiff's defamation claims

turn on whether Plaintiff had a right to readmission into NMT's PhD program under

either federal or state law.

---

[7] Plaintiff claims that, but for Defendants' defamation, he would have been reenrolled at NMT, would have received his doctoral degree, and would "immediately" have found employment as a professor. *Doc. 80* at 7.  The plaintiffs in *Siegert* and *Stidham* were already fully qualified for their positions, and they lost employment opportunities as a direct result of the past employers' statements.

Plaintiff asserts that he has a constitutional right to public higher education as long as he meets the university's requirements for admission.[8] *Doc. 80* at 8. Contrary to Plaintiff's belief, however, there is no constitutional right to public education, *Plyler v. Doe*, 457 U.S. 202, 223 (1982); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973), let alone to public higher education. *See, e.g., Lemon v. Labette Cmty. College*, 6 F. Supp. 3d 1246, 1250 (D. Kan. 2014) (finding no property right to enrollment in public community college, although the plaintiff met all criteria for admission). At most, students may have a property interest in *continued* university enrollment. *See Gaspar v. Bruton*, 513 F.2d 843, 850 (10th Cir. 1975); *Harris v. Blake*, 798 F.2d 419, 422 (10th Cir. 1986) (holding that state law had created "the basis for a [] claim of entitlement" to continued enrollment upon payment of tuition). The case before the Court, however, does not involve the termination of Plaintiff's continued enrollment, which was previously litigated in *Quarrie I*. Rather, Plaintiff claims a constitutional property interest in admission to NMT's PhD program. No such constitutional property interest exists. Plaintiff's argument that he is, by virtue of being a taxpayer, constitutionally entitled to admission at a public university is without merit.

---

[8] Plaintiff argues: "As in all other states in the United States, taxpaying state residents in New Mexico who apply to publicly funded state colleges and universities must be given priority and admitted if they meet the admission requirements. Plaintiff agrees with the proposition that schools reserve the right to refuse admission to students who do not meet the admission requirements, but not to those who do. Otherwise, any taxpaying resident could forever be justly excluded from accessing the publicly funded educational institutions in his respective state that he himself has helped to pay for by way of his state and federal taxes." *Doc. 80* at 8.

The absence of a federal right to higher education does not end the inquiry. Where state law provides a right, and that right is lost pursuant to a state actor's defamation, a constitutional violation may ensue. In *Goss v. Lopez*, 419 U.S. 565 (1972) for instance, procedural due process requirements were triggered by a school suspension because Ohio state law provided a right of public education to all children.[9] *See Davis*, 424 U.S. at 710 (discussing *Goss*'s conformity with the principle that reputational damage alone is insufficient to establish a constitutional violation). If Plaintiff enjoys a right to public higher education under New Mexico law, and was deprived of that right by NMT's refusal to readmit him, then his federal defamation claim can survive NMT Defendants' motion to dismiss.

Unlike federal law, New Mexico state law provides a right to free public education for "all school-age persons." N.M. Stat. § 22-12-4 (2013). A "school-age person" is "a person who is at least five years of age prior to 12:01 a.m. on September 1 of the school year and who has not received a school diploma or its equivalent." N.M. Stat. § 22-1-2(O). "Public school" is defined as "elementary, middle, junior high or high school." N.M. Stat. § 22-1-2(L). While school-age children in New Mexico are guaranteed a right to public primary and secondary education, there is no mention of a right to public higher education in either the New Mexico Constitution or the New

---

[9] "These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status." *Davis*, 424 U.S. at 710–11.

Mexico Statutes.  Consequently, state law does not provide Plaintiff with a federal cause of action for defamation.[10]

For the foregoing reasons, Plaintiff fails to state a claim for relief in Counts I and II of the Second Amended Complaint, and I therefore recommend that NMT Defendants' Motion to Dismiss be granted with respect to all claims found therein.

### B.  Defamation Claims Against Saucedo Defendants (Count I)

1.  Parties' Positions as to Count I.

Plaintiff claims that Defendants Saucedo and SaucedoChavez, P.C. defamed him during the June 28, 2016 meeting and—just as with NMT Defendants—that this defamation deprived him of his constitutional rights to education and reputation.  He brings this action against Defendants Saucedo and SaucedoChavez, P.C. in their individual capacities.  *Doc. 75* at 19–20.

Saucedo Defendants do not address the constitutional issue in their Motion to Dismiss, but instead assert absolute immunity to Plaintiff's claims.  They argue that, under New Mexico law, attorneys have absolute immunity against suit for defamation occurring during either judicial or non-judicial proceedings, as long as they are acting in the capacity of counsel.  *Doc. 41* at 4–8.  They contend that the allegedly defamatory

---

[10] Plaintiff makes much of the fact that the denial of re-admission "could not possibly have been for legitimate reasons," (*doc. 79* at 14), presumably because he believes his 2012 dismissal from the program was wrongful and the attendant reasons do not justify denial of his renewed application.  However, any claims regarding the 2012 expulsion are precluded by the dismissal with prejudice of *Quarrie I* and may not be revived.

statements mentioned in Count I of the Second Amended Complaint were reasonably related to the litigation and were made either in anticipation of litigation, or in the direct aftermath of *Quarrie I*. *Id*.

>   2.   Plaintiff alleges no constitutional violation by Saucedo Defendants
>        sufficient to support a § 1983 defamation claim.

When an immunity defense is raised in a § 1983 action, there is an "analytically earlier stage" of determining whether the plaintiff's allegations, even if true, "state a claim for violation of any rights secured to him under the United States Constitution." *Siegert*, 500 U.S. at 227. For the reasons discussed in the Section III(A), *supra*, Plaintiff's allegations against Saucedo Defendants do not state a claim for violation of the Constitution or other federal law. Therefore his action under § 1983 cannot survive, and there is no need to reach the immunity issue. I recommend that Saucedo Defendants' Motion to Dismiss be granted as to all claims contained in Count I.

## C.   Application Fee Property Deprivation Claim (Count IV)

>   1.   Parties' Positions as to Count IV.

In Count IV of his Second Amended Complaint, Plaintiff alleges "malicious and conspiratorial deprivation of financial property right" under the Fifth and Fourteenth Amendments of the U.S. Constitution and § 1983. *Doc. 75* at 22. He claims that Defendant Liebrock, the Dean of Graduate Studies at NMT, and Defendant Wells, the President of NMT, have deprived him of a property right by keeping his application fee

(paid on December 2, 2016) without responding to Plaintiff's application for readmission. *Id.* He further claims that "keeping application processing fees without responding to the applications for which those fees are paid is a violation of the standards set by the U.S. Department of Education and a deprivation of Plaintiff's constitutionally protected financial property right." *Id.* Construed liberally in light of Plaintiff's *pro se* status, the theory is presumably that the Department of Education standards provide a legal basis for Plaintiff's § 1983 claim, i.e., that violation of Department of Education guidelines amounts to a violation of federal law.

NMT Defendants, conversely, argue in their Motion to Dismiss that Plaintiff has failed to state a claim with regard to deprivation of a property right because such a claim cannot be based on Department of Education guidelines. *Doc. 76* at 12. More specifically, they argue that a claim for deprivation of a property right must be based on state law which, of course, would exclude Department of Education guidelines. *Id.* ("Plaintiff has not alleged a deprivation of a property right based upon a violation of state law [thus he] fails to state a claim upon which relief can be granted.") *Id.*

In his Reply, Plaintiff contends that Department of Education guidelines can serve as the basis for a deprivation claim because "as a federally funded institution of higher education, NMT must comply with the standards set by the Department of Education or risk losing its funding from the federal government." *Doc. 80* at 16.

Plaintiff appears to present two separate theories of liability under Count IV: (1) that accepting application fees without deciding on an application is unconstitutional, and (2) that it violates Department of Education standards. *Doc. 75* at 22. I will analyze both theories in turn.

2. <u>There is no due process right to receive a response in exchange for graduate school application fees.</u>

The undersigned construes Plaintiff's first theory as alleging a due process violation of his property right in the application fee. For a property interest to be constitutionally protected, a person "must have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*. Plaintiff has not cited to any state law (or any other independent source) that would serve as the source of a property interest in application fees. While he does cite to the Department of Education standards, he does not point to any which would create such a property right. Therefore, to the extent he raises a due process argument in support of his claim regarding the application fee, it fails.

3. <u>Unspecified Department of Education standards do not confer rights enforceable through § 1983.</u>

Plaintiff's second theory of liability is squarely based on NMT Defendants' alleged violation of Department of Education standards in handling his application fees. Indeed, violations of federal statutes can support liability under § 1983. *See, e.g., Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 105 (1989). However, for a federal statute to be enforceable under § 1983, "a person must assert the violation of a federal *right,* not merely a violation of federal *law.*" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original). Three tests must be passed for a particular federal statutory provision to create an enforceable federal right in favor of individual plaintiffs:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

*Id*. at 340–41 (internal citations omitted). Moreover, the relevant question is not whether the statutory scheme creates enforceable rights, but whether the specific statutory provision at issue creates enforceable rights. *Id*. at 342. Even if these requirements are met, a federal statute is not enforceable under § 1983 if it contains enforcement remedies created by Congress to be the exclusive means of enforcement.[11] *See Livadas v. Bradshaw,*

---

[11] In fact, the regulatory scheme to which Plaintiff refers—the standards set by the Department of Education—may fail this test. Plaintiff argues that "as a federally funded institution of higher education, NMT must comply with the standards set by the Department of Education or risk losing its funding from

512 U.S. 107, 133 (1994); *see also Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n.*, 453 U.S. 1, 20 (1981).

Notably, Plaintiff does not cite to any federal statute which Defendants allegedly violated in their handling of his application fee. Instead, he points only to Department of Education guidelines for which he provides no precise citation. Consequently, it is unclear whether the purported "standards set by the U.S. Department of Education" (*doc. 75* at 22) derive from a non-binding "Dear Colleague" letter or from an administrative regulation. For the sake of argument, the undersigned will assume that these guidelines are indeed formal federal regulations.

With that assumption, the question becomes whether a federal regulation alone can be enforceable under Section 1983. While neither the Tenth Circuit nor the Supreme Court[12] has directly addressed the issue, virtually every circuit court which has reached the question has held that it cannot. *See Taylor v. Housing Authority of City of New Haven*, 645 F.3d 152, 153–54 (2d Cir. 2011) (per curiam); *Johnson v. City of Detroit*, 446 F.3d 614,

---

the federal government." *Doc. 80* at 16. The fact that violation of a particular federal statute may lead to the cutting off of federal funding can be indicative of an alternative enforcement mechanism which precludes enforceability under § 1983. *See, e.g., Gonzaga University v. Doe*, 536 U.S. 273, 280 (2002) (holding that FERPA provisions were enforceable by cutting off funding to schools, but not by individual action, in part *because* this alternative enforcement method existed). Because the undersigned concludes below that the Department of Education standards do not create a private right enforceable under § 1983, there is no need to address this additional problem.

[12] *See Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 437–438 (O'Connor, J., dissenting) ("In the absence of any indication…that Congress intended to create an enforceable right to utilities, it is necessary to ask whether administrative regulations *alone* could create such a right. This is a troubling issue not briefed by the parties, and I do not attempt to resolve it here. The Court's questionable reasoning…apparently allows it to sidestep the question.").

629 (6th Cir. 2006); *Save Our Valley v. Sound Transit*, 335 F.3d 932, 939 (9th Cir. 2003); *S. Camden Citizens in Action v. N.J. Dep't of Envtl. Prot.*, 274 F.3d 771, 790 (3rd Cir. 2001); *Harris v. James*, 127 F.3d 993, 1009 (11th Cir. 1997); *Smith v. Kirk*, 821 F.2d 980, 984 (4th Cir. 1987). This position finds strong support in *Alexander v. Sandoval*, 532 U.S. 275 (2001). In *Sandoval*, the Supreme Court stated that "language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Id.* at 291. The plaintiff's case in *Sandoval* was premised upon an implied right of action under Title VII, not § 1983. However, the Court has expressly "reject[ed] the notion that our implied right of action cases are separate and distinct from our § 1983 cases. To the contrary, our implied right of action cases should guide the determination of whether a statute confers rights enforceable under § 1983." *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002). Thus, not only are the opinions concluding that regulations alone cannot create rights enforceable through § 1983 persuasive, but such a result is likely compelled by *Sandoval*.[13] Finally, even if in theory a regulation could create rights enforceable under § 1983, Plaintiff has failed to establish that the Department of Education "regulations" to which he refers would qualify under the test laid out in *Blessing* and described above.

In summary, Plaintiff has not established a property right in his application fees sufficient to make a due process claim under § 1983. He has also failed to establish that

---

[13] Notably, the only contrary circuit holding long pre-dated *Sandoval*. *See Samuels v. District of Columbia*, 770 F.2d 184, 199 (D.C. Cir. 1985).

any federal statute or regulation has created a right enforceable under § 1983.

Accordingly, I recommend that NMT Defendants' Motion to Dismiss be granted as to

the claims in Count IV.

### D. Injunctive Relief (Count V)

1. Parties' Positions as to Count V.

Plaintiff has requested two permanent prospective injunctions under *Ex parte Young*. The first requested injunction is against Defendants Wells, Liebrock, and the Board of Regents of NMT in their official capacities to "immediately cease preventing Plaintiff from being reinstated in the PhD program in Materials Engineering at NMT." *Doc. 75* at 23. The second is against Defendants Lopez, Wells, Ostergren, Wedeward, Saucedo, and SaucedoChavez, P.C., to "immediately and forever cease making false and misleading statements concerning Plaintiff's character, academic achievements at NMT, and professional and legal activities." *Id*.

NMT Defendants have moved to dismiss Count V on the basis that Plaintiff cannot request permanent injunctive relief until the merits of the underlying claims have been adjudicated. *Doc. 76* at 13. Further, they assert that Plaintiff cannot base a request for injunctive relief "on any claims asserted against NMT Defendants that fail to state claims as a matter of law." *Id*. at 14. Saucedo Defendants move to dismiss all claims against them on grounds of absolute immunity. *Doc. 78*; *doc. 83* at 8.

2. Injunction Against Defamation.

The *Ex parte Young* doctrine permits federal courts to issue injunctions to prevent state officers from violating federal law. 28 S.Ct. 441 (1908). Ordinarily, the Eleventh Amendment bars suits by individuals against states and against state officers in their official capacities. *Hans v. Louisiana*, 134 U.S. 1 (1890). The *Ex parte Young* doctrine overcomes this bar where a plaintiff seeks prospective injunctive relief from an ongoing violation of federal law. By permitting injunctive relief against state officers in their official capacity, the doctrine strikes a balance between state sovereign immunity and "the need to promote the supremacy of federal law." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 910 (1984). Because *Ex parte Young* is rooted in the Supremacy Clause, U.S. Const. art. VI, cl. 2, it applies exclusively to violations of federal law. The court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" in assessing whether the Eleventh Amendment bar is overcome. *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002). Where there has been no violation of federal law, the Eleventh Amendment bars suit.

For the reasons stated in Section III(A), *supra*, Plaintiff has failed to state a federal defamation claim. Consequently, his Count V request for injunctive relief against further defamation must also be dismissed. Relief under *Ex parte Young* is not available absent a violation of federal law, and Plaintiff cannot state a federal law claim with

respect to Defendants' alleged defamation. Any requested injunction against Defendants in their official capacities is therefore barred by the Eleventh Amendment. Moreover, a request for a particular form of relief, such as an injunction, cannot survive if the underlying claim (here, defamation) is dismissed for failure to state a claim. Therefore, I recommend that NMT Defendants' Motion to Dismiss and Saucedo Defendants' Updated Motion to Dismiss be granted as to Plaintiff's request for an *Ex parte Young* injunction prohibiting future defamation.

3. Injunction Against Racial Discrimination.

Plaintiff alleges that Defendants Wells, Liebrock, and the Board of Regents of NMT "continue[] to deny Plaintiff access to higher education based on NMT's racially discriminatory policies." *Doc. 75* at 23. He requests a permanent prospective injunction against them to "immediately cease preventing Plaintiff from being reinstated in the PhD program in Materials Engineering at NMT." Plaintiff fails to identify, within Count V, which specific federal law or constitutional provision Defendants have violated. However, it is reasonable to assume that he makes the same kind of claim as in Count III of the Second Amended Complaint (alleging racial discrimination in violation of Title VI of the Civil Rights Act of 1964, *see doc. 75* at 21).

In any case, NMT Defendants have not moved to dismiss Plaintiff's request for an *Ex parte Young* injunction on the merits of the underlying racial discrimination claim, nor have they moved to dismiss any part of Count III. Rather, citing *Quarrie I*, they

argue that *any* request for a permanent injunction is premature and should be dismissed until the Court has decided the merits of the underlying claim.[14]  *Doc. 76* at 13.  This assertion is incorrect.  While a permanent injunction cannot be granted until actual success on the merits is shown, *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (internal citation omitted), a plaintiff may request injunctive relief in his complaint well before a showing of actual success.

In the *Quarrie I* order cited by NMT Defendants, Plaintiff had filed a motion "seek[ing] the ultimate relief requested in this case"—namely, a permanent injunction ordering defendants to reinstate him at NMT.  *Quarrie I*, 2014 WL 11456613 at *2. Though he had, in his complaint, "properly stated [] claims" for which he was entitled to seek injunctive relief, his *motion* for injunctive relief *prior* to termination of the case was premature and unripe because there had not yet been an adjudication on the merits.  *Id*.  Conversely, the claims in his complaint seeking *Ex parte Young* injunctive relief against NMT officials survived summary judgment because Plaintiff had properly alleged an ongoing constitutional violation, though the claims were yet to be adjudicated.  *See Quarrie v. New Mexico Inst. of Mining & Tech., et al.*, No. 13-cv-0349 MV/SMV, 2014 WL 11456610, at *4 (D.N.M. Feb. 25, 2014).

---

[14] Specifically, NMT Defendants argue: "Plaintiff has not prevailed on the merits of any of his claims in the Second Amended Complaint and, therefore, Plaintiff cannot demonstrate 'actual success on the merits' to support granting him the requested permanent injunctive relief."  *Doc. 76* at 13 (citing *Quarrie v. New Mexico Inst. of Mining & Tech., et al.*, No. 13-cv-0349 MV/SMV, 2014 WL 11456613, at *2 (D.N.M. Apr. 3, 2014)).

A demonstration of actual success on the merits is necessary to *obtain* a permanent injunction from the Court, but not to request such relief in the Complaint. Claims for injunctive relief under *Ex parte Young* need not be automatically dismissed because the Plaintiff raises them prior to adjudication on the merits. *See, e.g., Buchwald v. University of New Mexico School of Medicine*, 159 F.3d 487, 495–96 (10th Cir. 1998) ("plaintiff may maintain an action against [university officials] in their official capacities to the extent she seeks a prospective injunction ordering her admission into UNMSM"); *Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 976–78 (10th Cir. 2001) (in order to survive a motion to dismiss, a claim under *Ex parte Young* need only "allege[] a non-frivolous claim for relief" against state officials and seek prospective equitable relief).

Because the claim for injunctive relief in the Complaint is not premature, and because NMT Defendants have not moved to dismiss the underlying racial discrimination claim, I recommend that NMT Defendants' Motion to Dismiss be denied as to Plaintiff's Count V claim for injunctive relief against further racial discrimination in refusing to readmit him.

## IV.  CONCLUSION

For the foregoing reasons, I recommend that the Court GRANT Saucedo Defendants' Updated Motion to Dismiss (*doc. 78*) in its entirety.  As to NMT Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (*doc. 76*), I recommend that the Court GRANT the Motion as it pertains to Counts I, II, IV, and the

request for injunctive relief against further defamation contained in Count V; but DENY

the Motion with respect to the request for injunctive relief against racial discrimination

contained in Count V.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**