**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LINDSAY O'BRIEN QUARRIE,

      Plaintiff,

v.                                                                          Civ. No. 17-350 MV/GBW

STEPHEN WELLS, *et al.*,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Plaintiff's Motion for Leave to Amend

Second Amended Complaint. *Doc. 94.* Having reviewed both the Motion and attendant

briefing (*docs. 99, 100*), I find that the motion to amend is untimely, presents improper

*theories seriatim*, and that the proposed amendments would be futile. I therefore

RECOMMEND that the Court DENY Plaintiff's Motion.

## I.  BACKGROUND

Plaintiff filed the instant Motion for Leave to Amend Second Amended

Complaint on March 1, 2019. *Doc. 94.* However, as evidenced by the Motion's title, this

is not the first time Plaintiff has moved to amend his complaint. Plaintiff first amended

his complaint on April 6, 2017. *Doc. 15.* He then sought leave to amend his complaint

once again (*doc. 57*), which the Court granted (*doc. 74*). Accordingly, Plaintiff filed his

Second Amended Complaint on February 14, 2018. *Doc. 75.*

With the Second Amended Complaint operative, both the NMT Defendants (Defendants Board of Regents of the New Mexico Institute of Mining and Technology, Lorie Liebrock, Daniel Lopez, Warren Ostergren, Kevin Wedeward, and Stephen Wells) and Saucedo Defendants (SaucedoChavez, P.C. and Christopher Saucedo), respectively, filed motions to dismiss. *Docs. 76, 78.* NMT Defendants' motion was granted in part, and Saucedo Defendants' motion was granted in full, in the Court's Memorandum Opinion and Order adopting the Magistrate Judge's PFRD. *See doc. 90.*

Following the Court's ruling, Plaintiff's only remaining claims were Count III (Title VI racial discrimination) and part of Count V (request for injunctive relief against discrimination) of the Second Amended Complaint. *See docs. 88, 90.* Following the dismissal of most of his claims, Plaintiff seeks leave to amend his complaint yet again. According to Plaintiff, the proposed Third Amended Complaint ("TAC") includes the following changes:

(1) Count III of the Second Amended Complaint has been "strengthened," and the surviving portion of Count V has been "split into two independent counts and reordered for the purpose of clarification."[1]

(2) Four new counts (Counts VII, VIII, IX, and X) have been added.

(3) "[S]everal new pages of important factual allegations" and a revised version of Exhibit H have been added.

---

[1] In fact, despite Plaintiff's characterization, it appears that Count V *as a whole* (not just the surviving portion) has been split into two independent counts. Count V of the Third Amended Complaint mirrors the surviving portion of the original Count V, and Count III of the Third Amended Complaint is identical to the *dismissed* portion of the original Count V. *See doc. 94-1* at 30–31, 32–33; *doc. 75* at 22–24.

> (4) The requested award of damages has been increased from two million to three million dollars.

*Doc. 94* at 2.

Several of the claims in the proposed TAC are identical or essentially identical to claims dismissed by the Court's Order (*see doc. 90*):

> (1) Count I (Malicious and Conspiratorial Defamation by Slander) (*doc. 94-1* at 28) appears identical to Count I of the Second Amended Complaint (*doc. 75* at 19), which was dismissed in its entirety.
>
> (2) Count II (Malicious and Conspiratorial Defamation by Libel) (*doc. 94-1* at 29) is similarly identical to the dismissed Count II of the Second Amended Complaint (*doc. 75* at 20).
>
> (3) Count III (Request for Permanent Prospective Injunction Concerning Counts I and II) (*doc. 94-1* at 30) corresponds exactly to the dismissed portion of Count V in the Second Amended Complaint (*doc. 75* at 23).
>
> (4) Count VI (Malicious and Conspiratorial Deprivation of Financial Property Right) (*doc. 94-1* at 33) is identical in substance and language to the dismissed Count IV (*doc. 75* at 22).

Plaintiff explains in his Reply, however, that his reason for including the already-dismissed claims in the proposed TAC is not to relitigate them, but rather to preserve them for appeal. *Doc. 100* at 9 n.2.

NMT Defendants oppose Plaintiff's Motion to Amend.[2] *See doc. 99*. All claims against Saucedo Defendants have been dismissed (*see doc. 90*), and Saucedo Defendants are not named in any of the new counts of the proposed TAC (*see generally doc. 94-1*).

---

[2] As the Court has previously explained, Plaintiff's Motion is *not* unopposed, despite his characterization to the contrary. *See doc. 97* at 2.

Saucedo Defendants are therefore effectively dismissed from the case and were neither obligated nor permitted to respond. Following NMT Defendants' Response (*doc. 99*) and Plaintiff's Reply (*doc. 100*), Plaintiff's Motion to Amend is now before the Court.

## II.    LEGAL STANDARD

Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after service of the pleading or of a responsive pleading. Fed. R. Civ. P. 15(a)(1). Not only has Plaintiff already amended his complaint once as of right (*doc. 15*), but the twenty-one day period, whether measured under Rule 15(a)(1)(A) or 15(a)(1)(B), has long since expired. Plaintiff's current motion is therefore controlled by Rule 15(a)(2), which reads: "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court's valid reasons for denying leave to amend may include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Where, as here, a party is proceeding *pro se*, the court is to liberally construe his pleadings. *Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010). "But the court [is] not [to] 'assume the role of advocate for the pro se litigant.'" *Baker v. Holt*, 498 F. App'x

770, 772 (10th Cir. 2012) (unpublished) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

### III.   ANALYSIS

### A.  Plaintiff has unduly delayed seeking the proposed amendment.

NMT Defendants first argue that Plaintiff has offered no explanation for the delay in filing his motion to amend.  *See doc. 99* at 5.  In the Tenth Circuit, "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'"  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006) (quoting *Frank v. U.S. West*, 3 F.3d 1357, 1365–66 (10th Cir. 1993)).  Indeed, the court may deny leave to amend on this ground alone.  *See Wopsock v. Natchees*, 279 F. App'x 679, 689 (10th Cir. 2008) (citing *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994)).  This is particularly true where all evidence relevant to the proposed amendment was available at the time of the original complaint.  *See, e.g., State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984) ("Where the party seeking the amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.").  Unexplained delays of less than two years have been held to justify denial of amendment.  *See, e.g., Pallottino*, 31 F.3d at 1027 (motion to amend, filed eight months after original complaint, was properly denied where plaintiff "did not explain his failure to amend the complaint earlier, especially as it was not

based on new evidence."); *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 799–800 (10th Cir. 1998) (motion to amend properly denied nineteen months after the plaintiff filed his original complaint, where there was no sufficient justification for the delay).

Plaintiff has delayed approximately two years[3] in adding these new claims and factual allegations, and in "strengthening" his Title VI racial discrimination claim. *See generally doc. 94*. He does not argue that his new claims are based on recently-discovered facts, nor does he provide any other adequate explanation for the delay in presenting his new claims. *See generally id*. Rather, Plaintiff simply "believes that now is the appropriate time to add his new claim[s]." *Doc. 94* at 4; *doc. 100* at 7. The most Plaintiff offers in the way of justification for the delay in presenting his new claims is that they are "based on additional case-law research that Plaintiff undertook approximately six months ago." *Doc. 100* at 6. However, Plaintiff could have undertaken this case-law research two years ago. The newly-added Exhibit H, Plaintiff argues, "only came to [his] attention after a revised version of the review of his PhD program at NMT was recently completed in late February of this year." *Id*. Yet he does not explain the nature of this "review" or why the document was not available to him previously. Motions to amend are subject to denial where the moving party *should have known* of the facts at the time of filing, not only where the moving party *actually knew* of

---

[3] Plaintiff filed his initial complaint in March 2017, and the instant Motion to Amend in March 2019. *See docs. 1, 94*. There is also a one-year gap between the Second Amended Complaint, filed in February 2018, and the current Motion. *See docs. 75, 94*.

the facts.  *Glemore Distilleries*, 738 F.2d at 416.  Without more, therefore, Plaintiff's explanation is insufficient to establish that Exhibit H was not available to him at an earlier date.

As in *Pallottino*, the novel theories in the Third Amended Complaint are simply theories that Mr. Quarrie "did not choose to advance until after his primary theory had been dismissed."  *Pallottino*, 31 F.3d at 1027.  I therefore find that Plaintiff has unduly delayed amendment, and that his undue delay sufficiently justifies denial of his motion to amend.

**B. Plaintiff's proposed amendments would turn his complaint into a "moving target."**

NMT Defendants next argue that Plaintiff's proposed amendments are "presented to salvage lost claims and/or to create a moving target."  *Doc. 99* at 5.  Plaintiff emphatically denies this characterization.  He states in his Reply that the new Counts VII and IX are "based on additional case-law research that Plaintiff undertook approximately six months ago," and are "therefore not in response to the Court's Memorandum Opinion and Order."  *Doc. 100* at 6–7.

Notwithstanding Plaintiff's characterization of his subjective intent, Plaintiff's motion to amend at this stage, subsequent to the Court's dismissal of most of his claims, has the practical effect of transforming his complaint into a moving target.  It is improper for a plaintiff to amend his complaint in order to "avoid the court's prior

rulings and the arguments raised by the defendants[.]" *Wopsock*, 279 F. App'x 679, 688.

The Tenth Circuit has stated:

> Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a "moving target," *Viernow v. Euripides Dev. Corp*, 157 F.3d 785, 800 (10th Cir. 1998), to "salvage a lost cause by untimely suggestion of new theories of recovery," *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001), [or] to present "theories seriatim" in an effort to avoid dismissal, *Pallotino*[, 31 F.3d at 1206.]

*Minter*, 451 F.3d at 1206. In other words, the fact some or all of a plaintiff's claims were

dismissed by the court's ruling does not, without more, justify amendment of the

complaint in order to salvage those claims or present alternative ones. Indeed, as the

Tenth Circuit has recognized,

> Much of the value of summary judgment procedure…would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back along thereafter and fight on the basis of some other theory.[4]

*Pallottino*, 31 F.3d at 1027 (quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469–70

(5th Cir. 1967)). *See also Viernow*, 157 F.3d at 800 ("[W]e do not favor permitting a party

to attempt to salvage a lost case by untimely suggestion of new theories of recovery,

especially after the trial judge has already expressed adverse rulings.").

---

[4] Although the *Pallottino* court referenced summary judgment procedure in particular, the Tenth Circuit has subsequently made no distinction between dismissal of claims based on summary judgment and dismissal of claims based on Rule 12(b)(6). *See Wopsock*, 279 F. App'x at 689 (discussing the plaintiffs' motion to amend after the court's ruling on both a motion to dismiss and a motion for summary judgment).

Even construing generously Plaintiff's representation that he did not file the instant Motion in response to the Court's Memorandum Opinion and Order, Plaintiff is attempting to use Rule 15 to present new theories of recovery that he could have presented, but did not choose to present, prior to the Court's ruling. As discussed in the previous section, he offers no excuse sufficient to justify his two-year delay in presenting his new claims or adding to his existing ones. The only objectively apparent reason for these proposed changes, two years after the initial filing of the suit, is that the majority of Plaintiff's claims were dismissed by the Court following briefing by both parties and an opportunity for Plaintiff to object to the PFRD. Plaintiff's proposed TAC introduces additional theories that were available to him at the time of filing his Complaint (*doc. 1*), his Amended Complaint (*doc. 15*), and his Second Amended Complaint (*doc. 75*). This attempted presentation of "theories seriatim" constitutes independent grounds for denial of the motion, and in combination with Plaintiff's undue delay, it is fatal. At this stage, Plaintiff must litigate the one surviving claim (and accompanying request for injunctive relief) that he has.

Finally, although "[i]t is not necessary to show prejudice to the opposing party" when denying a motion to amend, *Wopsock*, 279 F. App'x at 689 (citing *First City Bank v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1133 (10th Cir. 1987)), and the undersigned expresses no opinion on whether such prejudice has been shown, it is worth noting that NMT Defendants have already filed two dispositive motions in this case. NMT

Defendants first filed a Motion for Judgment on the Pleadings on July 14, 2017. *Doc. 40.*[5]

Plaintiff, concededly in response to Defendants' motions,[6] moved to amend his

complaint, for which the Court granted leave. *See docs. 57, 75.* As a result, NMT

Defendant's Motion for Judgment on the Pleadings was denied as moot. *Doc. 86.*

Immediately after the filing of Plaintiff's SAC, NMT Defendants filed another

dispositive motion, their Motion to Dismiss. *Doc. 76.* The Court then ruled on that

Motion and dismissed the majority of Plaintiff's claims. *Doc. 90.* The undersigned is

therefore sympathetic to NMT Defendants' plea that they "should be permitted to rely

upon the finality of this Court's Memorandum Opinion and Order." *Doc. 99* at 6. This

is particularly so in light of Plaintiff's unjustified failure to make these amendments two

years previously.

Plaintiff's behavior, regardless of his subjective intent, substantially resembles

the presentation of "theories seriatim" to improperly avoid the arguments of

Defendants and the rulings of the Court. *See Wopsock*, 279 F. App'x at 688. Leave to

amend should therefore be denied.

---

[5] At this time, Saucedo Defendants also filed a Motion to Dismiss, *doc. 41*, which was also denied as moot after the Court granted leave for Plaintiff to file his Second Amended Complaint, *doc. 86*.

[6] Plaintiff insists that he was "forced" to file his Second Amended Complaint because of "NMT Defendants' insistence on misconstruing Plaintiff's Amended Complaint." *Doc. 100*. This assertion has no effect on the analysis here, since Plaintiff could have included his new theories in the Second Amended Complaint regardless of the reason for amendment.

**C. The proposed Third Amended Complaint includes claims previously dismissed.**

NMT Defendants next argue that Plaintiff's inclusion of claims previously dismissed in his proposed TAC constitutes an improper attempt to relitigate issues already decided by the Court. *See doc. 99* at 6–8. Plaintiff, however, explains in his Reply that the inclusion of these claims is "certainly not an attempt to relitigate them, but rather to preserve them for the record in the event that there is an appeal to the Tenth Circuit." *Doc. 100* at 9 n.2.

While the inclusion of these previously dismissed claims in the proposed TAC is certainly improper, the Court is obliged to generously construe the filings of Mr. Quarrie as a *pro se* litigant. *See Casanova*, 595 F.3d at 1125. Therefore, I find that their inclusion was based on confusion rather than bad faith. At best, however, the addition of these claims in the proposed TAC would be futile, as they are subject to dismissal. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008). Therefore, their inclusion provides further support for denial of Plaintiff's Motion to Amend.

**D. The new claims that Plaintiff wishes to add would be futile.**

NMT Defendants argue, in the alternative, that the newly-added counts of the proposed TAC are futile because they fail to state a plausible claim for relief. *Doc. 99* at 8. Although there is no need for the Court to reach this issue in light of Plaintiff's

undue delay in filing his Motion to Amend, I find that the addition of the newly-added claims would be futile.

The court need not grant leave to amend where the proposed amendment would be futile. *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008) (internal quotation omitted). This standard includes dismissal "for any reason," *Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001), including failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

In order to state a claim under which relief can be granted, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a 12(b)(6) motion, the court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723. However, the court need not accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678. "Thus, in ruling on a motion to dismiss, a court

should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

## 1. Equal Protection: Counts VII and VIII

Count VII of the proposed TAC presents a claim for "malicious and conspiratorial denial of equal protection for unfair readmission practices at NMT." *Doc. 94-1 at 34.* Specifically, Plaintiff argues in the proposed TAC that (1) he has a right to public higher education[7]; (2) public education must be provided on equal terms where the state has undertaken to provide it; (3) Plaintiff was refused admission on at least two occasions based on the defamatory statements of Defendants Lopez, Saucedo, Wedeward, and Ostergren, and Wells; (4) defamation cannot be a legitimate basis for refusal to admit or readmit a student; and (5) Plaintiff does not know of any other students denied readmission "based on NMT's defamatory statements against them[.]" *Id*. at 34-35. He therefore alleges a denial of equal protection by Defendants Lopez and Wells, for which he has received no due process. *Id*. at 36.

As noted by Defendants, Plaintiff does not base his equal protection claim on membership in a protected class such as race, sex, or age. *See doc. 94-1 at 34 – 36; doc. 94 at 4–5; doc. 100 at 11–12.* Instead, he simply argues that he was treated differently from

---

[7] Plaintiff does not have a right to public higher education. *See doc. 88 at 13, doc. 90 at 8.* However, the non-existence of a freestanding right to public higher education is not fatal to his equal protection claim, and I therefore will not address it further.

other prospective students applying to NMT's graduate program. *See doc. 94* at 5. The type of equal protection claim in which a plaintiff "does not…allege discrimination based on membership in any protected class" is "commonly called a 'class of one' claim." *Zia Shadows, LLC v. City of Las Cruces*, 829 F.3d 1232, 1239 (10th Cir. 2016) (citations omitted). In order to be successful, a class-of-one plaintiff must show that he was "intentionally treated differently from others similarly situated and…there is no rational basis for the difference in treatment." *Kansas Penn*, 656 F.3d at 1216 (quoting *Willowbrook v. Olech*, 528 U.S. 562 (2000)).

There are two elements to a class-of-one equal protection claim. First, the plaintiff must establish that "others, 'similarly situated in every material respect' were treated differently." *Id*. (quoting *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1210 (10th Cir. 2006)). The degree of similarity required between plaintiff and comparator is heightened in class-of-one cases. *Id*. at 1218; *Jicarilla Apache*, 440 F.3d at 1212. Second, the plaintiff must establish that the difference in treatment "was without rational basis." *Kansas Penn*, 656 F.3d at 1216. This is an objective standard: "if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations." *Id*. (citation omitted). The government actor must have "no conceivable basis for his action other than spite or some other improper motive[.]" *Id*. (internal quotation and citation omitted). In short, the plaintiff must show that "no rational person could regard the circumstances of the plaintiff to differ

from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy[.]" *Jicarilla Apache*, 440 F.3d at 1213 (quoting source omitted). The plaintiff has the "substantial burden" of proving both elements. *Id*. at 1217; *Zia Shadows*, 829 F.3d at 1240.

Courts, including the Tenth Circuit, "have approached class-of-one claims with caution, wary of turning even quotidian exercises of government discretion into constitutional cases." *Kansas Penn*, 656 F.3d at 1216 (internal quotation and citation omitted). This concern is "magnified" in low-level government, including with "university administrators." *Id*. Moreover, in forms of state action that are intended to be discretionary, "allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 603 (2008). For this reason, "the class-of-one theory of equal protection has no application in the public employment context[.]" *Id*. at 607.

A number of courts have held that class-of-one claims are inapplicable in the university context as well. *See Coffman v. Hutchinson Cmty. College*, 2018 WL 3093506, at *15 (D. Kans. June 22, 2018) (collecting cases and finding class-of-one claims plainly unavailable in the public education setting). This approach is supported by the important value of the "freedom of a university to make its own judgments as to…the selection of its student body." *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 312

(1978). In light of the Supreme Court's analysis in *Engquist*, it is at least doubtful that class-of-one claims are applicable at all in the context of applying for admission to a graduate program. Even assuming that such a claim can exist, however, Plaintiff has failed to establish either necessary element. He has neither (1) pointed to another applicant, similarly situated in every material respect, who was treated differently by NMT, nor (2) established that there was no conceivable legitimate basis for a difference in treatment.

To begin with, Plaintiff has failed to identify any specific comparators. *See doc. 94-1* at 34–36. He states only that he "has no knowledge of any other prospective students having been refused admission or readmission to NMT based on NMT's defamatory statements against them." *Doc. 94-1* at 35. Of course, the Court is not required to accept Plaintiff's legal conclusions. *See Iqbal*, 556 U.S. at 678. I therefore need not and do not assume the existence of any "defamatory statements" by NMT Defendants. Relatedly, and more crucially still, Plaintiff's characterization of the proper comparator class is inadequate. Without deciding the preclusion question, *see doc. 99* at 7–8; *doc. 100* at 10–11, the fact that Plaintiff was previously terminated from the graduate program at NMT is recited in the operative Second Amended Complaint and is therefore undisputed. *Doc. 75* at 9. Consequently, the appropriate class of comparators would be applicants who—at the very least—were previously terminated from NMT's graduate program. However, Plaintiff has neither alleged the existence of

such comparators nor specifically identified them. *See doc. 94-1* at 34–36. He therefore cannot establish that the similarity of comparators is such that "no rational person" could find a legitimate basis for NMT's differential treatment. *See Jicarilla Apache*, 440 F.3d at 1213 (internal quotation and citation omitted).

Specifically, applicants who do not share this material characteristic are inappropriate comparators because it provides an objectively conceivable and rational reason for NMT's subsequent refusals to readmit Plaintiff. A rational person would not be shocked to hear that a university, in its discretion, denied readmission to applicants previously dismissed. Notably, so long as an objectively rational basis for the differential treatment is evident, a class-of-one claim fails even if an alternate interpretation is possible. *Jicarilla Apache*, 440 F.3d at 1213 (internal quotation and citation omitted) (class-of-one claim fails if any "rational person" could regard the plaintiff's circumstances as justifying legitimate differential treatment). Indeed, because the standard is objective, this is true even if NMT also bore malice against Plaintiff. *See Jicarilla Apache*, 440 F.3d at 1210 ("Even if subjective ill will is a *necessary* condition for a class-of-one claim, it is not a sufficient one.") (citations omitted).

The alternate reason suggested by Plaintiff—that NMT refused to readmit Plaintiff "based on" its own defamatory statements (*doc. 94-1* at 35)—is confusing at best. It is puzzling to understand how NMT would be misled by its *own* false statements into rejecting Plaintiff's application for readmission. Without delving too far

into Plaintiff's rather opaque reasoning, I note that Count VII of the proposed TAC is in fact suspiciously similar to the dismissed constitutional defamation claims of the Second Amended Complaint. It seems probable that what Plaintiff is really trying to litigate here is not the denial of his reapplication to NMT "based on" defamation, but rather the alleged defamation itself.

In any event, Plaintiff's class-of-one claim fails because nothing in the proposed TAC "nudge[s his] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. He does not carry his "substantial burden" of demonstrating the existence of materially similarly-situated comparators who were treated differently with no objectively rational basis. *See Kansas Penn*, 656 F.3d at 1217 (quoting *Jicarilla Apache*, 440F.3d at 1212). Because Count VII fails to state a claim under which relief can be granted, Count VIII must also fail.[8] Therefore, such amendments would be futile.

2. <u>Counts IX and X</u>

Count IX of the proposed Third Amended Complaint alleges a claim of "malicious and conspiratorial deprivation of the liberty to apply for readmission to graduate studies at NMT." *Doc. 94-1* at 37. Count X ix a request for injunctive relief from the same. *Id.* at 39.

---

[8] As the undersigned has previously explained, *see doc. 88* at 22–23, injunctive relief under *Ex parte Young* is not available absent an accompanying violation of federal law.

Plaintiff characterizes Count IX as a deprivation, without due process, of his "constitutionally guaranteed liberty under the Fourteenth Amendment to improve his life prospects and career opportunities by becoming knowledgeable through higher education." *Doc. 94-1* at 38. Specifically, he argues that Defendants Liebrock and Wells have refused to process his application for readmission to NMT by issuing a final admissions decision. *Id*. at 37–38. He further alleges that Defendants Liebrock and Wells will continue to refuse to process Plaintiff's application for readmission in the future. *Id*. at 38.

The trouble with Plaintiff's argument is that there is no constitutionally guaranteed liberty to apply for admission to a public university, or, for that matter, to have one's application processed thereafter. As this Court has explained *ad infinitum*, there is no constitutional right to higher education. *See doc. 88* at 13; *doc. 90* at 8. At most, enrolled students may have a liberty interest in their *continued* enrollment. *See Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 84–85 (1977). Plaintiff has certainly pointed to no case law, nor is the undersigned aware of any, establishing a constitutional right to *apply* to a university. One simply cannot be deprived of a constitutional right where no constitutional right exists. Because Plaintiff does not have a "constitutionally guaranteed liberty" to apply for graduate school admission, he cannot base a constitutional claim on his inability to do so. The addition of Counts IX and X would therefore be futile.

**IV.  CONCLUSION**

Because Plaintiff has unduly delayed in moving to amend, his proposed amendments would create a "moving target," he has improperly included already-dismissed claims, and his newly-added claims would be futile in any case, I find that justice does not require the Court to grant Plaintiff's Motion.  I therefore RECOMMEND that the Court DENY Plaintiff's Motion for Leave to Amend Second Amended Complaint (*doc. 94*).

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**