# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LINDSAY O'BRIEN QUARRIE,

    Plaintiff,

v.                                           No. CIV 17-350-MV-GBW

STEPHEN WELLS, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION TO AMEND

THIS MATTER is before the Court on Plaintiff's Objections (*doc. 110*) to the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD") (*doc. 104*). The Magistrate Judge recommended denying Plaintiff's Motion for Leave to Amend Second Amended Complaint (*doc. 94*). Having conducted an independent, *de novo* review of Plaintiff's Motion, the attendant briefing (*docs. 99*, *100*), and the Magistrate Judge's PFRD (*doc. 104*), the Court overrules Plaintiff's objections and adopts the PFRD.

## BACKGROUND

The history of this case has been recently detailed, *see doc. 90* at 1–3, as has its current posture, *see doc. 104* at 1–4. The Court therefore recites only the following essential facts.

Plaintiff filed his Motion for Leave to Amend Second Amended Complaint on March 1, 2019. *Doc. 94*. The proposed Third Amended Complaint ("TAC") includes the two surviving counts from the Second Amended Complaint, with some alterations (Counts IV, V); four counts

previously dismissed (Counts I, II, III, and VI);[1] and four entirely new counts (Counts VII, VIII, IX, and X). *See generally doc. 94-1*. The proposed TAC also includes new factual information in the form of Exhibit H, *id*. at 98, and "several new pages" of factual information not specifically identified. *See doc. 94* at 3. Finally, the proposed TAC includes an increased request for damages. *Id*.

NMT Defendants filed a response on March 15, 2019, opposing leave to amend on the grounds of unexcused untimeliness, inclusion of already-dismissed claims, inclusion of new claims that rendered the complaint a "moving target," and futility. *See generally doc. 99*. Plaintiff filed his reply on March 29, 2019. *Doc. 100*.

The Magistrate Judge issued his PFRD on April 3, 2019, recommending denial of leave to amend based on undue delay, improper presentation of theories seriatim, and, in the alternative, futility of Plaintiff's newly added claims. *See generally doc. 104*. Plaintiff subsequently filed objections to the PFRD, *doc. 110*,[2] and his Motion to Amend is now before the Court.

**LEGAL STANDARD**

Plaintiff's Motion (*doc. 94*) was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). *See doc. 85*. Under that referral provision, the Court's standard of review of a magistrate judge's PFRD is *de novo*. *See* 28 U.S.C. § 636(b)(1)(C). When resolving objections to a magistrate judge's PFRD, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept,

---

[1] The Court agrees with the Magistrate Judge's determination that Plaintiff's inclusion of previously-dismissed claims was due to mistake rather than bad faith. *See doc. 104* at 11. Plaintiff does not object to this finding, *see doc. 110* at 12, so the Court will not address it further.
[2] Plaintiff has also filed a Notice of Errata to his Objections. *See doc. 112*. The Court has also considered this document.

reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Moreover, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). *See also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").

In adopting a PFRD, the district court need not "make any specific findings; the district court must merely conduct a de novo review of the record." *Garcia v. City of Albuquerque*, 232 F.3d 760, 766 (10th Cir. 2000). "[T]he district court is presumed to know that de novo review is required. Consequently, a brief order expressly stating the court conducted de novo review is sufficient." *Northington v. Marin*, 102 F.3d 1564, 1570 (10th Cir. 1996) (citing *In re Griego*, 64 F.3d at 583–84). "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 724 (10th Cir. 1993). A "terse" order containing one sentence for each of the party's "substantive claims," which did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion," has been held sufficient. *Garcia*, 232 F.3d at 766. The Supreme Court has explained that "in providing for a de novo determination rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a

magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676 (1980) (quoting 28 U.S.C. § 636(b)) (citing *Mathews v. Weber*, 423 U.S. 261, 275 (1976)).

Federal Rule of Civil Procedure 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court may deny leave where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendments are futile "if the complaint, as amended, would be subject to dismissal." *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008) (internal quotation omitted). This includes failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Where, as here, a party is proceeding *pro se*, the court is to liberally construe his pleadings. *Casanova*, 595 F.3d at 1125. "But the court [is] not [to] 'assume the role of advocate for the pro se litigant.'" *Baker v. Holt*, 498 F. App'x 770, 772 (10th Cir. 2012) (unpublished) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In other words, "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110.

## ANALYSIS

**I.  Plaintiff's motion is unduly delayed and presents a moving target.**

1.  <u>Undue Delay</u>

The Magistrate Judge found that Plaintiff's motion to amend was untimely because he failed to provide adequate explanation for his approximately two-year delay in adding new

4

claims. *Doc. 104* at 5–7. As explained in the PFRD, undue delay alone may justify denial of a plaintiff's motion to amend. *See Wopsock v. Natchees*, 279 F. App'x 679, 689 (10th Cir. 2008) (citing *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994)); *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 799–800 (10th Cir. 1998); *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984).

Plaintiff argues that his motion was not untimely. *Doc. 110* at 10–11. As in his original motion, Plaintiff's only explanation for the delay in adding new claims is that he did not undertake the requisite legal research until about six months ago. *Id*. at 10 – 11; *doc. 100* at 6. He now asserts, first, that this is adequate justification because "[i]f the deciding factor in granting a movant leave to amend is whether or not they could have undertaken their legal research at an earlier date, then no one would qualify for leave, since it is arguable that everyone could have undertaken their research earlier than they did." *Doc. 110* at 10. It is, indeed, difficult to imagine any circumstance in which a delay in conducting legal research would excuse a delay in moving to add new claims. The discovery of new *facts*, conversely, may justify a delay in seeking amendment if the plaintiff did not know and should not reasonably have known about those facts before. *See*, *e.g.*, *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006) (delay justified where plaintiff was previously unaware of factual information revealed by defendant's late disclosures); *State Distribs.*, 738 F.2d at 416 (citation omitted) ("Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.").

Second, Plaintiff argues that he "could not" previously have conducted his legal research, either at the time of filing this action two years ago or at the time of filing his Second Amended

Complaint one year ago, because the additional research was "instigated by NMT Defendants' misconstrual of the defamation and financial deprivation claims in Plaintiff's SAC." *Doc. 110* at 11. However, it was Plaintiff's responsibility to conduct legal research about his claims at the time of filing suit. He certainly has not persuaded the Court that he could not have done so prior to the defense filings he references. *See*, *e.g.*, *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60 (2d Cir. 1990) (internal citations omitted) ("The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay, and the court is free to conclude that ignorance of the law is an unsatisfactory excuse."). In short, the delay in conducting legal research neither excuses nor justifies Plaintiff's delay in attempting to add new claims.

As for the attempted addition of Exhibit H, *doc. 94-1* at 98, Plaintiff has failed to demonstrate or even assert that it is based on evidence not previously available to Plaintiff. Plaintiff argues that Exhibit H was not available to him prior to its "revision date" in 2019. *Doc. 110* at 11. But he does not explain why. If Plaintiff himself "revised" the document using information already at his disposal, then the "revision date" of the document is irrelevant and does not excuse the delay in filing. If, however, Plaintiff can show that Exhibit H was recently revised by a third party or otherwise based on factual information not reasonably available to him before March 2019, then the Court will consider granting leave for this amendment in a future motion.[3]

Finally, Plaintiff indicates that he "does not see how his TAC would prejudice NMT Defendants." *Doc. 110* at 10. Because the Magistrate Judge neither made a finding of prejudice

---

[3] The Court cautions Plaintiff, however, that future motions to amend will not be favorably received unless accompanied by a showing that the proposed amendments are based on newly discovered information not reasonably available to Plaintiff before.

nor based any of his conclusions on such a finding, the Court need not and does not address the issue of prejudice to Defendants.

      2.  Moving Target/Theories Seriatim

Notwithstanding Plaintiff's assertions to the contrary, it appears objectively obvious that Plaintiff moved to amend his complaint in response to the Court's Memorandum Opinion and Order (*doc. 90*) dismissing the majority of his claims. He certainly presents no other convincing reason for the delay in filing. The Court therefore finds that Plaintiff has attempted to introduce "theories seriatim" in an effort to evade its adverse ruling. *See Pallotino*, 31 F.3d at 1206.

Plaintiff protests that it is a "mystery" to him how he could have attempted to avoid the Court's prior rulings, since he has "in no way attempted…to relitigate" his dismissed claims. *Doc. 110* at 11. The presentation of improper "theories seriatim," however, does not typically consist in presenting the same claims successively. Rather, it involves proposing theories that the plaintiff "did not choose to advance until after his primary theory had been dismissed." *Pallottino*, 31 F.3d at 1027. "A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Id*. (quoting *Freeman v. Continental Gin. Co.*, 381 F.2d 459, 469–70 (5th Cir. 1967)).

There is no apparent reason for Mr. Quarrie's delay in moving to add the proposed claims except that the majority of his original claims were recently dismissed. Indeed, Mr. Quarrie's own briefing supports this construction. He spends many pages of his Objections explaining how the Court was mistaken in its previous ruling and asserting that his prior claims would not have been dismissed if the Court had analyzed them correctly. *Doc. 110* at 3–7. He also states outright that his Motion to Amend was necessitated by the Court's previous misconstruction of his claims:

7

> Although [Counts VII and IX] were clearly inferred in Plaintiff's Title VI claim in his SAC, their addition to his TAC is necessary since the incorporation-by-reference statement at the beginning of the Title VI claim has been ignored.

*Id*. at 13. The Court therefore concludes that Plaintiff's proposed TAC constitutes an attempt to present "theories seriatim" in order to procure a second bite at the apple.[4] The Court, in its discretion, declines to allow this and therefore denies Plaintiff's Motion to Amend.

**II.     Addition of Plaintiff's new claims would be futile.**

The Court concludes that Plaintiff's undue delay and improper presentation of theories seriatim independently justifies denial of Plaintiff's Motion to Amend. However, the Court will briefly address Plaintiff's objections to the Magistrate Judge's futility analysis.

   A.  <u>Separate Analysis of Claims</u>

At the outset, Plaintiff presents a "general objection" that his claims should not be analyzed independently, but rather should be evaluated in conjunction with one another since they arise out of the same underlying facts. *See doc. 110* at 2–9. This objection rests on a misunderstanding of the way that courts analyze claims. When two claims differ in the applicable "elements and burdens of proof," those claims should be analyzed "separately." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). This is true even if the claims arise from the same events, as is often the case in a single lawsuit.

Plaintiff's contention that NMT Defendants made a "strategic decision to decouple Plaintiff's Title VI claim from his other claims in his SAC by moving the Court to dismiss the latter but not the former," *doc. 110* at 13–14, is therefore groundless. Plaintiff's claims would

---

[4] In fact, Plaintiff has already received a number of opportunities to present and perfect his claims. This is neither the first lawsuit in which Plaintiff has attempted to litigate issues related to his dismissal from NMT, *see Quarrie v. New Mexico Inst. of Mining & Tech., et al.*, No. 13-cv-0349 MV/SMV, 2014 WL 11456614 (D.N.M. Jan. 6, 2015); *Quarrie v. New Mexico Inst. of Mining & Tech., et al.*, 621 F. App'x 928, 934 (10th Cir. 2015), nor even Plaintiff's first amended complaint in this very action, *see docs. 15, 75*. Remarkably, it is not even the first time that Plaintiff has petitioned the Court for leave to amend in response to Defendants' "misrepresentation" of his claims. *See doc. 57* at 4.

have been analyzed separately, regardless of which individual claims NMT Defendants moved to dismiss. Plaintiff's objection to "the magistrate judge's decoupling of his primary claim of racial discrimination under Title VI from the newly added claims in his TAC," *doc. 110* at 7, is similarly without merit.[5]

### B. Incorporation by Reference

Plaintiff's next objection is that the Magistrate Judge mischaracterized his new claims because he failed to incorporate all previous allegations by reference into each claim. *See doc. 110* at 7–9. At the beginning of each count in the proposed TAC, Plaintiff includes the following statement: "Plaintiff re-alleges and incorporates by reference each and every allegation contained in this complaint as if fully pled herein." *E.g.*, *doc. 94-1* at 28. He therefore argues that both of his new claims ought to have been read as claims of racial discrimination. Plaintiff now characterizes his Count VII equal protection claim as a race-based discrimination claim rather than a "class-of-one" claim. *See doc. 110* at 13. Similarly, he now alleges that his Count IX due process claim is based, *not* on a deprivation of his constitutional liberty to apply for admission to a university, but rather on a deprivation of his constitutional liberty not to be racially discriminated against while so applying. *See id*. at 16.

Just as Plaintiff may not endlessly amend his complaint to present new theories where old ones have failed, he may not suddenly recharacterize his claims at the Objections stage. The complaint must "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*,

---

[5] Indeed, it is difficult to understand (and certainly not obvious on the face of the pleadings) why Plaintiff's Title VI racial discrimination claim happens to be his "primary" one, except in the sense that it is his only claim remaining. It is not at all clear, for instance, that the dismissed claims for constitutional defamation were "secondary" to Plaintiff's Title VI claim. Defamation is an unrelated cause of action with entirely different elements. For that matter, Plaintiff's Title VI claim was not even the first claim listed in the Second Amended Complaint. *See doc. 75*. at 19–22.

9

355 U.S. 41, 47 (1957)). Neither Count VII nor Count IX is race-based on its face. In fact, both claims are *explicitly* based on factors other than race, meaning that to characterize them as race-based claims would be to contradict their plain meaning. Plaintiff's interpretation would therefore fail to give NMT Defendants "fair notice" of the very nature of the claims, let alone of the grounds upon which they rest.

Count VII of the proposed TAC is explained as follows, without any mention of racial discrimination:

> Plaintiff was refused readmission to the PhD program at NMT *based on the malicious and conspiratorial defamatory statements made against him* by Defendants Lopez, Saucedo, Wedeward, and Ostergren.
>
> Plaintiff was again refused readmission to the PhD program at NMT *based on the malicious and conspiratorial defamatory statements made against him* by Defendants Lopez, Saucedo, Wedeward, and Ostergren.

*Doc. 94-1* at 35 (emphasis added). There is nothing ambiguous about this claim. It is quite clear that Plaintiff is making a claim of denial of equal protection *based on defamation*, not *based on race*. Plaintiff contends, however, that the Court should incorporate by reference the following allegation from Count IV of the proposed TAC, thus transforming his defamation-based claim into one based on race:

> Defendants Lopez, Saucedo, Ostergren, Wedeward, and Wells' defamatory statements concerning Plaintiff's character, academic achievements at NMT, lawsuit against NMT, and Settlement Agreement with NMT as a basis for refusing to readmit him to the PhD program at NMT in 2016 were a *pretext for NMT's racial discrimination against Plaintiff*.

*Doc. 94-1* at 32 (emphasis added); *doc. 110* at 7–8.

The Court declines to define Count VII, against its plain meaning, by reference to an allegation contained in a separate claim. This is particularly so because Plaintiff himself, in briefing, treated Count VII as a class-of-one claim. NMT Defendants' response included a class-

10

of-one analysis, *doc. 99* at 9–15, with the stated understanding that "[t]here are no allegations in the TAC suggesting that Plaintiff's equal protection claim is based upon Plaintiff's status as a member of a protected class," *id*. at 11. Rather than disputing the correctness of a class-of-one analysis, Plaintiff replied:

> In NMT Defendants' Response, they argue that for purposes of Counts VII and IX in Plaintiff's proposed TAC, he would be a "class-of-one" litigant and that "there is no authority from this Circuit that would allow Plaintiff to bring a class-of-one equal protection claim in an academic setting. The Tenth Circuit does not recognize class-of-one claims in the public employment context." *But Plaintiff's claim is not in the context of public employment. And NMT Defendants cite no cases that bar one from bringing a class-of-one equal protection claim in an academic setting*.

*Doc. 100* at 12 (emphasis added) (internal citations omitted). Both NMT Defendants and the Court are entitled to rely on Plaintiff's own characterization of his claims.

As for Plaintiff's argument that it is "logically absurd" to assume he would bring both a race discrimination claim and a non-race-based discrimination claim, *doc. 110* at 14, the Court quite simply disagrees. Class-of-one equal protection claims exist, *see, e.g.*, *Zia Shadows, LLC v. City of Las Cruces*, 829 F.3d 1232, 1239 (10th Cir. 2016); *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011), and Plaintiff might well have chosen to bring one against Defendants. Plaintiff also appears to misunderstand the fact that two entirely distinct claims may be based on the same underlying events (e.g., one could bring both a claim of race discrimination and a claim of sex discrimination).

In short, Plaintiff may not now, for the first time, object to "the magistrate judge's finding that 'Plaintiff does not base his equal protection claim on membership in a protected class such as race, sex, or age.'" *Doc. 110* at 113 (citing *doc. 104* at 13). It is too late to transform his equal protection claim based on defamation into one based on racial discrimination. As for Plaintiff's assertion that he "need not identify a comparator" to support his equal protection

11

claim, *doc. 110* at 14–15, Plaintiff cites no legal authority for this proposition, and the Court disagrees for the reasons outlined in the PFRD. *See doc. 104* at 13–18.

Count IX of the proposed TAC, similarly, does not appear to be based on racial discrimination:

> By having in effect permanently blocked Plaintiff from being able to freely apply for readmission to NMT, Defendants Liebrock and Wells have deprived Plaintiff *of his constitutionally guaranteed liberty under the Fourteenth Amendment to improve his life prospects and career opportunities by becoming knowledgeable through higher education*, thereby preparing himself for gainful employment in his profession.

*Doc. 94-1* at 38. Nowhere in the proposed TAC does Plaintiff present the theory, now expounded in his Objections, that Plaintiff was actually deprived of the constitutional liberty "to apply for admission (or readmission) to higher education, including at NMT, without being intentionally racially discriminated against as an African-American," *doc. 110* at 16. The inclusion in the proposed TAC of a statement about how the constitutional liberty to apply to university is "especially relevant" to African Americans, *doc. 94-1* at 37, does not transform the claim into one based on the liberty not to be racially discriminated against. For that matter, although Plaintiff now acknowledges that "there is no constitutional right to higher education," *id*. at 16, the proposed TAC includes the following claim:

> Among the many liberties that are constitutionally protected under the Fourteenth Amendment is the liberty to apply for admission (or readmission) to a publicly funded state university in order to partake of the opportunity to improve one's life and employment prospects by obtaining knowledge through higher education.

*Doc. 110* at 16. In sum, rather than defending his original claims, Plaintiff now seeks to redefine them.

Plaintiff may not make new arguments at the Objections stage, *see Marshall*, 75 F.3d at 1426, and he certainly may not transform the very nature and basis of his claims. Accordingly, the Court finds that the Magistrate Judge's analysis of the newly added claims as originally

defined was appropriate. Because the Court, upon *de novo* review, agrees with that analysis, the Magistrate Judge's findings regarding futility are hereby adopted.

## CONCLUSION

It is therefore ORDERED, ADJUDGED, AND DECREED that Plaintiff's Objections (*doc. 110*) are overruled, and the Magistrate Judge's Proposed Findings and Recommended Disposition (*doc. 104*) are ADOPTED upon *de novo* review. Plaintiff's Motion for Leave to Amend Second Amended Complaint (*doc. 94*) is therefore DENIED.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**