IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDSAY O'BRIEN QUARRIE,

    Plaintiff,

v.                                                      Civ. No. 17-350 MV/GBW

STEPHEN WELLS, *et al.*,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS TO COMPEL

THIS MATTER comes before the Court on Plaintiff's Motion to Compel a Discovery Response (*doc. 193*) and Motion to Compel Discovery Responses (*doc. 197*). The first motion relates to Defendant Wells' objections to particular interrogatories, and the second relates to a disagreement about the number of parties that exist in the case. For the reasons explained below, the Court finds that there are three Defendants in the case and will therefore GRANT Plaintiff's second motion (*doc. 197*). The Court will GRANT in part and DENY in part Plaintiff's first motion (*doc. 193*) to compel individual responses to his interrogatories.

    **I.**    **NUMBER OF PARTIES**

Although the related motion was filed second, the question of the numerical limitation of Plaintiff's discovery requests is logically antecedent. Pursuant to the parties' Joint Status Report, there is an agreed-upon maximum of "twenty-five (25)

interrogatories by each party to any other party." *Doc. 155* at 15. The limitations on requests for admission and requests for production use the same wording. The Court's Order Setting Pretrial Deadlines and Briefing Schedule adopts these limitations, stating: "Each party shall be limited to twenty-five (25) interrogatories, twenty-five (25) requests for production, and thirty (30) requests for admission to serve or notice on the other parties." *Doc. 166* at 1. This language is distinct from the limitation on depositions, which specifies that "[e]ach *side* shall be limited to ten (10) depositions to serve or notice on the other *side*." *Id*. (emphasis added).

Plaintiff's position is that, since three Defendants remain in the case, he is permitted a maximum of twenty-five interrogatories against each Defendant, for a total of seventy-five. Defendants disagree. Because Plaintiff's claims against Defendants Wells and El-Osery are limited to those defendants' official capacities, Defendants assert that there is only one party in the case: the New Mexico Institute of Mining and Technology ("NMT").

Defendants' argument has some theoretical support. It is certainly true that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted). However, this principle has generally been applied, as in *Graham*, to the determination of damages. The generic statement that an official-capacity suit should be treated as a suit against the entity expresses the idea that the entity, not the individual, is responsible for

damages. It does not alter the fact that officers sued in their official capacities may—as here—be listed as separate parties on the Court's docket. Defendants cite no precedent in direct support of their position, and this Court is aware of none. Moreover, as Plaintiff points out, the *Graham* Court also remarked that "implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are *not* treated as actions against the State." *Id*. at 167 n.14 (emphasis added).

There is scant case law on the issue of when multiple parties should be treated as one, though it has occasionally arisen in other contexts. One court held that two parties should be treated as one for discovery purposes where plaintiffs had treated them as such, concluding that "the parties did not intend for [the defendants] to be treated as separate parties under the DPO [document production order]." *Verinata Health, Inc. v. Sequenom, Inc.*, 2014 WL 909869, at *1 (N.D. Cal. Feb. 27, 2014). A court may also interpret its own discovery order to treat two defendants as one party for purposes of the discovery limits contained therein. *See Ziptronix, Inc. v. Omnivision Techs.*, 2013 LEXIS 112752, at *3 (N.D. Cal. Aug. 9, 2013). None of the cases cited by Defendants or discovered by the Court in conducting its independent research establish a general rule that multiple employees of the same entity, sued in their official capacities, are *automatically* treated as one party for discovery purposes.

In reading the Third Amended Complaint ("TAC"), it is clear that Plaintiff meant and understood the defendants to be separate parties, and he has treated them as separate parties throughout the progression of this case. The plain language of the Joint Status Report (*doc. 155*) and the Order Setting Pretrial Deadlines and Briefing Schedule (*doc. 166*), combined with the indisputable fact that Defendants are listed as separate parties on the docket, leads the Court to conclude that they should be treated as separate parties for the purposes of Plaintiff's discovery requests.

While there is some logic to the notion that the defendants in this case ought to be treated as one party for discovery purposes, the time to raise that issue was during the Rule 16 scheduling conference held on September 20, 2019. *See doc. 165*. At that time, Defendants were already aware of the disagreement, *see doc. 193* at 2, and no federal or local rule prohibited them from bringing it to the Court's attention before the Order Setting Pretrial Deadlines and Briefing Schedule was issued. Therefore, if Defendants wish to alter the scheduling order, they must file a motion to that effect and demonstrate good cause for the alteration. Likewise, if Defendants believe that Defendants Wells and El-Osery are not properly named parties in this case, they may file a dispositive motion.[1] Having established that all three defendants count as

---

[1] The Court acknowledges that *Rubio ex rel. Z.R. v. Turner Unified Sch. Dist. No. 202*, 453 F. Supp. 2d 1295, 1300 (D. Kan. 2006), cited by Defendants, may support their position that Title VI suits against individual defendants in their official capacities are duplicative. Even in that case, however, the court granted dismissal of the individual defendants rather than counting them as one party for discovery purposes. Defendants did not raise this Title VI argument in their prior Motion to Dismiss, *see doc. 76* at 13–14, but they are free to present it in a future dispositive motion.

separate parties for discovery purposes, any numerosity objections by Defendants are hereby overruled.

## II. DEFENDANTS WELLS' INTERROGATORY RESPONSES

The Court now turns to Defendant Wells' other objections to Plaintiff's individual discovery requests.[2] The Federal Rules of Civil Procedure provide:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has any tendency to make a material fact more or less probable. Fed. R. Evid. 401. Information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). However, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

---

[2] The Court declines to dispose of Plaintiff's motion on the basis that he failed to confer in good faith under Fed. R. Civ. P. 37(a) or to seek concurrence under D.N.M.LR-Civ. 7.1(a). *See doc. 200* at 3–5. Based on the lengthy email exchange detailed in Plaintiff's first motion, *see doc. 193* at 3–4, it appears that Plaintiff in fact made a good faith effort to resolve this discovery issue prior to filing a motion. Plaintiff's compliance with Local Rule 7.1 is more troublesome. While the Court acknowledges his explanation about a faulty internet connection, *see doc. 206* at 5, the Court simply cannot construe an email sent two hours before the filing of the motion as a good faith effort to seek concurrence. The Court in its discretion will not summarily deny Plaintiff's motion on this basis, but Plaintiff is hereby put on notice that more is required. Future failures to follow this local rule will not be excused.

1. <u>Interrogatory No. 3</u>

This interrogatory asked Defendant Wells to "[d]escribe in detail Lindsay O'Brien Quarrie's academic and professional achievements and activities, including degrees, certificates, awards, research, publications, work experience, and current employment position, that you are familiar with or have knowledge of." *Doc. 193* at 16. Defendant Wells objected on grounds that the interrogatory was overbroad and irrelevant. However, he proceeded to answer anyway, stating: "I was not President of NMT at the time of [sic] Plaintiff attended NMT. I do not have personal knowledge of Plaintiff's 'academic and professional achievements and activities.'" *Id*.

Plaintiff's academic and professional achievements at the time of his reapplications to NMT (and Defendant Wells' knowledge thereof) are clearly relevant to his claim of Title VI racial discrimination, as such information might tend to establish that Plaintiff was as qualified as, or more qualified than, comparator applicants. As noted by Defendant Wells, the interrogatory may be slightly overbroad in its wording, since only Plaintiff's achievements at the time of reapplication are relevant; achievements subsequently attained are not. The Court therefore overrules Defendant Wells' objections to Interrogatory No. 3, to the extent that it is limited to Plaintiff's achievements as of his most recent date of reapplication to NMT.

The second question is whether Defendant Wells, despite his objections, has already satisfactorily answered the interrogatory. It is Plaintiff's position that he has

not. Plaintiff cites a September 13, 2016 letter to New Mexico State Representative Stapleton in which Defendant Wells wrote: "Mr. Quarrie did not fulfill the requirements to be granted a Ph.D. from New Mexico Tech despite receiving several opportunities to do so." *Id*. at 7. Also in this letter, Defendant Wells allegedly "made certain false allegations against Plaintiff as concerns his academic achievements at NMT between 2009 and 2012 and his professional activities thereafter." *Id*. at 6. Finally, on a separate note, Plaintiff argues that Defendant Wells "should" know about Plaintiff's academic and professional achievements and activities because he is the current President of NMT. *See doc. 206* at 6.

The Court is unpersuaded that the statements contained in the September 13, 2016 letter contradict the response given by Defendant Wells. The fact that Plaintiff did not fulfill the Ph.D. requirements at NMT is not an academic activity, and it certainly is not an academic achievement. Similarly, Defendant Wells' statement that Plaintiff had represented to third parties that he obtained his Ph.D. from NMT, *see doc. 200* at 6, does not relate to an academic or professional achievement or activity. If anything, it might relate to academic or professional misconduct, which appears unresponsive to Plaintiff's interrogatory as written. As for Plaintiff's contention that Defendant Wells "should" know about his achievements and activities, even if this is true, it does not signify that his answer was nonresponsive. Plaintiff asked about Defendant Wells' actual knowledge of his achievements and activities, not about the information that he

7

could discover by reading Plaintiff's academic file, or the knowledge that he *should* have as NMT's President. The Court therefore finds Defendant Wells' answer adequate, and DENIES Plaintiff's Motion to Compel as it relates to Interrogatory No. 3.

2. Interrogatory No. 4

This interrogatory asks Defendant Wells to describe in detail "the role you played in NMT's decision not to readmit Lindsay O'Brien Quarrie to the PhD program in Materials Engineering at NMT when he applied for readmission thereto in August and December of 2016." *Doc. 193* at 17. Defendant Wells objected on the basis that the interrogatory was "vague and ambiguous," as "Plaintiff has always alleged that he re-applied for admission into NMT in December of 2016, not August of 2016." *Id*.

The Court finds this objection to be meritless. In the TAC, Plaintiff specifically alleges that he reapplied for admission "on June 28, August 19, and December 2, 2016." *Doc. 150* at 20, ¶ 84. There is nothing vague or ambiguous about Plaintiff's question, nor is it evident how Plaintiff could provide any further clarification about the relevant dates. If indeed there was no reapplication in August 2016, Defendant Wells can include that proviso in his answer to the interrogatory. The Motion to Compel is GRANTED as to Interrogatory No. 4.

3. Interrogatory No. 5

Plaintiff has appropriately conceded that, in light of his question's wording, Defendant Wells' response to Interrogatory No. 5 was adequate. *See doc. 206* at 7–8.

8

Because Plaintiff has effectively withdrawn his Motion to Compel with respect to Interrogatory No. 5, the Court considers the question no further.

4. Interrogatories No. 6 and 7

Interrogatories No. 6 and No. 7 read as follows:

[Interrogatory No. 6]: Describe in detail what role you played in NMT's decision to admit (or readmit) any student to the PhD program in Materials Engineering at NMT in 2016, 2017, 2018, 2019.

[Interrogatory No. 7]: Describe in detail the academic and professional qualifications of the students who were admitted (or readmitted) to the PhD program in Materials Engineering at NMT in 2016, 2017, 2018, and 2019.

*Doc. 193* at 17, 18. Defendant Wells objected to both interrogatories on the same bases: namely, that they are not relevant because Plaintiff's application was not measured against other 2016 applicants, and they are not particularized to the needs of the case because Plaintiff applied in 2016, not in 2017, 2018, or 2019. *See doc. 193* at 17–18.

In an unpublished but persuasive disposition, the Tenth Circuit noted that "a claim of discrimination under Title VI is analyzed using the burden-shifting analysis outlined in *McDonnell Douglas*." *Black Educ. Network, Inc. v. AT&T Broadband, LLC*, 154 F. App'x 33, 44 (10th Cir. 2005) (unpublished) (citing *Freeman v. Fahey*, 374 F.3d 663, 665 (8th Cir. 2004)); *see also Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 635 (10th Cir. 2008) (unpublished) (citing *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006)). As observed by the *Vesom* court, this approach is consistent with published Tenth Circuit precedent. *Id.*; *see, e.g., Bryant v. Indep. Sch. Dist. No. I-38*, 334 F.3d 928, 930

(10th Cir. 2003) (applying functionally identical burden-shifting framework to Title VI claims); *Antonio*, 458 F.3d at 1181 (applying *McDonnell Douglas* framework in the context of Title VII and § 1981 where there is no "direct evidence of discrimination"). It is also consistent with case law from other circuits. *See, e.g.*, *Jumbo v. Ala. State Univ.*, 760 F. App'x 918, 920 (11th Cir. 2019) (unpublished) (collecting cases applying the *McDonnell Douglas* framework to Title VI claims from the Ninth, Eighth, and Third Circuits); *Maisha v. Univ. of N.C.*, 641 F. App'x 246, 250 (4th Cir. 2016) (unpublished) ("We apply the familiar *McDonnell Douglas* test for claims of discrimination under Title VI.") (footnote omitted). At least for purposes of discovery, therefore, Plaintiff is well within the scope of relevance and proportionality to request information relating generally to the *McDonnell Douglas* burden-shifting framework. Under this framework, a plaintiff must first establish a prima facie case of discrimination. He may do this by demonstrating that other, similarly situated individuals outside of his protected class were treated differently. *Amro v. Boeing Co.*, 232 F.3d 790, 798 (10th Cir. 2000). Once the plaintiff has established a prima facie case, the burden shifts to the defendants to demonstrate a legitimate, nondiscriminatory reason for the difference in treatment. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Finally, the burden shifts to the plaintiff once again to show that the proffered nondiscriminatory reason is pretextual. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002).

Therefore, Defendants' argument that they need not provide information about comparator students because they have not given other students' qualifications as a reason for Plaintiff's rejection is inapposite. *See doc. 200* at 9. The question is not whether *Defendants* have offered Plaintiff's inadequate qualifications as a legitimate reason for his rejection, but whether *Plaintiff* has chosen to establish his prima facie case under Title VI by demonstrating that similarly situated students of other races received more favorable treatment. Defendants' contention that Plaintiff's applications were denied on the basis of the Settlement Agreement rather than a comparison with other students goes directly to the second step of the *McDonnell Douglas* framework, but it has no effect on the first. The Court therefore finds that the requested information is relevant.

However, relevant information is not necessarily proportional, and Rule 26 requires both. *See* Fed. R. Civ. P 26(b)(1). Defendants additionally object that information about students in 2017, 2018, and 2019 has no bearing on the litigation because Plaintiff applied for readmission in 2016. *See doc. 200* at 8. The scope of discovery in cases of alleged discrimination can be "extensive" where the evidence sought is "*particularly cogent*" to the plaintiff's claims. *Heward v. Western Electric Co.*, 1984 WL 15666, at *6 (10th Cir. Jul. 3, 1984) (unpublished) (emphasis in original) (quoting *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1978)). However, courts regularly limit the temporal scope of discovery, even in discrimination cases, to

several years before or after the alleged discriminatory conduct. *See*, *e.g.*, *Olivo v. Crawford Chevrolet, Inc.*, 2011 WL 12687969, at *5, (D.N.M. Apr. 20, 2011) (unpublished) (finding a four-year period reasonable and noting that "[c]ourts' decisions in placing time limitations on discovery requests for a reasonable number of years both prior to and following claims of discrimination have frequently been upheld"); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 212 (D. Kan. 2002) (collecting cases; limiting discovery scope to two years before and after the alleged discriminatory conduct).

In this instance, Plaintiff's requests are limited to the time period from the date of the alleged discrimination to three years after. In light of this limited time frame, the Court finds that both interrogatories are reasonable in scope and therefore proportional to the needs of the case. Plaintiff's Motion to Compel is therefore GRANTED with respect to Interrogatories No. 6 and 7.

    5.  <u>Interrogatory No. 8</u>

Interrogatory No. 8 asks Defendant Wells to state how many African American students have graduated from the Materials Engineering PhD program at NMT over the past fifty years, and to state the years in which they graduated. *Doc. 193* at 9, 18. Defendant Wells objected that this interrogatory "is overly broad, unduly burdensome, and seeks information that is not relevant." *Doc. 193* at 18. Relatedly, Defendant Wells

also alleged that Interrogatory No. 8 is "not limited to a reasonable period of time or scope." *Id*.

Plaintiff has alleged racial discrimination in violation of Title VI of the Civil Rights of 1964. As a general matter, therefore, NMT's practice of admitting African American students to the program into which Plaintiff sought readmission is undoubtedly relevant to Plaintiff's claims. The question remains whether the interrogatory is appropriately limited in time and scope. As discussed above, courts regularly limit the scope of discovery to several years before and after the alleged discrimination in similar cases. The Court agrees with Defendants that a fifty-year timespan is not proportional to the needs of the case and is of highly doubtful relevance. Consequently, the Court will GRANT Plaintiff's Motion to Compel as to Interrogatory No. 8, but only with the limitation that Defendant Wells shall provide the requested information about African American students admitted within the past *eight* years. This shortened timespan encompasses the dates of Plaintiff's reapplications as well as a period of approximately five years prior, a scope that should prove ample for the purposes of Plaintiff's claims.

6. <u>Interrogatory No. 9</u>

Interrogatory No. 9 asks Defendant Wells to:

Describe in detail why the "No Future Application" restriction in the 2015 Settlement Agreement and Mutual Release between Lindsay O'Brien Quarrie and NMT (see attached Exhibit A), which states that "Plaintiff agrees that he will not re-apply for enrollment at NMIMT now or in the

13

> future," does not, in you [sic] view, violate public policy by racially discriminating against Mr. Quarrie as an African American.

*Doc. 193* at 18–19.

Defendant Wells first objected to this interrogatory because it seeks information that is not relevant and not "particularized to the needs of the case." *Id*. at 19. The Court finds these objections meritless. Because of the possibility that the 2015 Settlement Agreement bars Plaintiff's present suit, discovery related to its validity and enforceability is both relevant and particularized to the needs of the case. Assuming *arguendo* that the 2015 Settlement Agreement is valid and enforceable, Plaintiff's entire case could be subject to dismissal. Consequently, although "[w]hether or not the Settlement Agreement is in violation of public policy is not a claim that is presently before this Court," *id.*, its relevance is clear.

In addition, Defendant Wells had already objected to Plaintiff's Interrogatory No. 6 on the basis that Plaintiff's reapplication was "viewed as a violation of the terms of the Settlement Agreement" and was therefore not measured against other 2016 applications. *See id*. at 17–18. This statement suggests that Defendants intend to establish step two of the *McDonnell Douglas* framework by reference to the Settlement Agreement. If so, the Settlement Agreement has additional relevance to Plaintiff's claims.

Defendant Wells next objected that Interrogatory No. 9 improperly "seeks a legal opinion from NMT as to the validity of a contract upon which a judicial determination

14

has been made that Plaintiff may not sue upon its alleged lack of enforceability as he failed to comply with the 2 year statute of limitation period." *Id*. The Court is unconvinced. The question of the Settlement Agreement's issue-preclusive effect has yet to be resolved, and the Court once again declines to rule until the question is properly before it. *See doc. 137* at 7 ("The Court expresses no opinion on the validity of Plaintiff's conclusions and will not decide this complicated issue in the context of a motion for sanctions."). Plaintiff and Defendants disagree about whether issue preclusion applies, and its applicability is therefore in question until raised and resolved on a dispositive motion. In any event, Plaintiff does not appear to be "su[ing] upon its alleged lack of enforceability," as alleged by Defendants. *See doc. 193* at 19. Whether Defendants are liable for breaching the Settlement Agreement is a different question—albeit closely related—to whether Plaintiff's claims are barred by the prior settlement. The Court therefore overrules Defendant Wells' objection on this point.

Finally, Defendant Wells objected on the basis that Interrogatory No. 9 is an improper and unduly burdensome contention interrogatory. "Contention interrogatories" are interrogatories that "inquire into an opinion or contention that relates to fact or the application of law to fact." 2 Moore's Manual Fed. Practice & Procedure § 15.25. Contention interrogatories are specifically contemplated and permitted by the Federal Rules of Civil Procedure. "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or

15

the application of law to fact[.]" Fed. R. Civ. P. 33(a)(2). *See also Atchison v. Saddleback Metro. Dist.*, 2008 WL 4681915, at *4 (D. Colo. Oct. 21, 2008) (interrogatory requesting legal opinion from defendant would not be improper). Defendant Wells does not object to Interrogatory No. 9 because it is a contention interrogatory, but rather on the ground that it would improperly require him "to provide the equivalent of a narrative account of [his] case." *Doc. 193* at 19 (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)). While a contention interrogatory should not require a party to provide "every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents," they are proper if they "do not encompass every allegation, or a significant number of allegations, made by a party." *Lucero*, 240 F.R.D. at 594. Interrogatory No. 9 asks for an explanation of Defendant Wells' position on one discrete issue: why he believes that the Settlement Agreement signed by Plaintiff did not violate public policy. The Court does not find that this limited question requires Defendant Wells to provide an entire narrative account of his case, and overrules his objection on that basis.

With all of Defendant Wells' objections overruled, the question remains whether the response already provided was satisfactory. Defendant Wells finished his response by stating: "Subject to said objections and without waiving the same, see NMT's Answer to Interrogatory No. 1." *Doc. 193* at 19. NMT's Answer to Interrogatory No. 1, as Defendants themselves describe it, "provided factual information as to the reasons

NMT entered into the Settlement Agreement." *Doc. 200* at 11; *see doc. 200-3* at 3–4. After reading NMT's response, the Court cannot see how it is responsive to Plaintiff's interrogatory to Defendant Wells. It does not at any point provide an explanation as to "why the 'No Future Application' restriction in the 2015 Settlement Agreement … does not, in [Defendant Wells'] view, violate public policy by racially discriminating against Mr. Quarrie as an African American." *See doc. 193* at 18–19. Plaintiff's motion to compel is therefore GRANTED as to Interrogatory No. 9.

   7. <u>Interrogatory No. 10</u>

Interrogatory No. 10 reads:

> State in detail how many checks NMT received from Lindsay O'Brien Quarrie in 2016 and 2017 as reimbursement for the $6,000 that Mr. Quarrie had received from NMT and the New Mexico Risk Management pursuant to the Settlement Agreement and Mutual Release (see attached Exhibit A), when those checks were received, what the exact amounts of those checks were, who they were made out to, and what you and/or any other NMT employee did with those checks after NMT received them.

*Doc. 193* at 19. As with Interrogatory No. 9, Defendant Wells objected that this discovery request seeks information that is not relevant because "[w]hether or not the Settlement Agreement is not a legally enforceable contract, including any actions Plaintiff took to unilaterally declare the contract void, is not a claim that is presently before this Court." *Id*. at 20. Defendant Wells also objected once again to the request for a legal opinion about the validity of a contract "upon which a judicial determination has been made that Plaintiff may not sue upon its alleged lack of enforceability." *Id*.

As explained above, the validity and enforceability of the Settlement Agreement may be at issue even though Plaintiff may not (and indeed, is not) bringing any claims against Defendant Wells or NMT for its breach. Defendant Wells' objections are therefore overruled and Plaintiff's Motion to Compel is GRANTED with respect to Interrogatory No. 10.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Compel Discovery Responses (*doc. 197*) is GRANTED in its entirety.

Plaintiff's Motion to Compel a Discovery Response (*doc. 193*) is GRANTED with respect to Interrogatories No. 4, 6, 7, 9, and 10; and with respect to Interrogatory No. 8 as limited to students who have graduated over the past eight years. Plaintiff's Motion to Compel is DENIED with respect to Interrogatory No. 3.

Finally, the Court will DENY Defendants' requests for attorney's fees and costs, *see doc. 200* at 11; *doc. 202* at 4. Although Plaintiff may not have been compliant with Local Rule 7.1 in the filing of his second motion, *see supra* note 2, the Court finds no material failure to confer under Fed. R. Civ. P. 37(a). Particularly given the merits of Plaintiff's motions, the request for attorney's fees and costs is properly denied.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE