IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDSAY O'BRIEN QUARRIE,

    Plaintiff,

v.                                                      Civ. No. 17-350 MV/GBW

STEPHEN WELLS, *et al.*,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL DISCOVERY

THIS MATTER comes before the Court on Defendants' Motion to Compel Discovery. *Doc. 236*. Having reviewed the motion and the parties' briefing (*docs. 250*, *263*), the Court will GRANT IN PART and DENY IN PART Defendants' request to compel Plaintiff's discovery responses.

**I.    BACKGROUND**

On November 6, 2019, Defendants served their First Set of Interrogatories and Requests for Production on Plaintiff. *Doc. 236* at 2. Plaintiff responded on December 6, 2019, answering some requests and objecting to others.[1] *Id*. On January 16, 2020, Plaintiff supplemented his responses, again raising a number of objections. *Docs. 236-1*,

---

[1] Neither party has provided a copy of Plaintiff's initial discovery responses to the Court. The Court will therefore assume that all of Plaintiff's later-raised objections were also adequately raised at that time.

*236-2*. This supplementation prompted Defendants, on January 27, 2020, to notify Plaintiff via email that they believed his responses to be incomplete. *Doc. 236-3*.

Plaintiff again supplemented his discovery responses on January 30, 2020, reprising many—if not all—of his previous objections. *Doc. 236-4*. Defendants filed the instant motion to compel on January 31, 2020. *Doc. 236*. They ask the Court to compel responses to the following individual discovery requests: Interrogatories No. 1(f), 1(i), 1(j), 1(k), 1(l), and 3, and Requests for Production No. 2 and 7. *See generally id*. Plaintiff maintains both his objections and his opposition. *See doc. 250*. The motion is now before the Court.

**II.    STANDARD OF REVIEW**

The Federal Rules of Civil Procedure provide the following general standard of discoverability:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has any tendency to make a material fact more or less probable. Fed. R. Evid. 401. Information "need not be admissible in evidence to be discoverable," Fed R. Civ. P. 26(b)(1), and discovery rules "are to be accorded a broad and liberal treatment," *Herbert v. Lando*, 441 U.S. 153, 177 (1979).

2

However, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

Where one party improperly fails to respond to another party's discovery requests, the requesting party may move to compel disclosure and for appropriate sanctions. Fed. R. Civ. P. 37(a)(3)(A). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

### III.  ANALYSIS

A. <u>Residential Addresses—Interrogatory No. 1(f)</u>

Several of the disputed discovery requests are contained in Defendants' Interrogatory No. 1, which requests a variety of biographical information. Defendants' Interrogatory No. 1(f) requests all of Plaintiff's "residence addresses" for the past ten years and the dates during which Plaintiff lived at each residence. *Doc. 236-1* at 2.

In his Supplemented Objections and Answers, Plaintiff objected that Interrogatory No. 1 as a whole was "not relevant, not reasonably calculated to lead to the discovery of admissible evidence, and not based on the particularized needs of the case," as well as being "an invasion of Plaintiff's personal privacy." *Id*. He alleged that Interrogatory No. 1(f) in particular was "duplicative and a waste of Plaintiff's time to prepare an answer since Defendants have had Plaintiff's address on file for the past 15

3

years since 2005." *Id*. at 3. In his Second Supplementation, Plaintiff repeated his objection that Interrogatory No. 1(f) was duplicative and a waste of time. *Doc. 236-4* at 2. However, he added the following response: "Plaintiff has permanently resided only at 609 Neel Street, Socorro, NM 87801 since February 2005. Nothing else has any relevance to the instant case." *Id*.

At least some of the dispute between Plaintiff and Defendants appears to arise from confusion about the term "residence addresses." In his response to the motion, Plaintiff purports to cite Black's Law Dictionary for the proposition that a "residence" is "a fixed and permanent abode or dwelling-place for the time being, as contradistinguished from a mere temporary locality of existence." *Doc. 250* at 4. It is unclear which, if any, edition of Black's Law Dictionary Plaintiff actually cites. The same language can, however, be found in an 1891 Supreme Court opinion. *See Barney v. Oelrichs*, 138 U.S. 529, 533 (1891) (defining residence as "a fixed and permanent abode or dwelling place for the time being, as contradistinguished from a mere temporary locality of existence"). The same opinion explains that a residence need not be absolutely permanent, but rather must be for "some continuance of time"—for example, "for business or other purposes." *Id*. at 534–35 (quotations and citations omitted).

More recent legal precedent elaborates on this definition and clarifies the distinction between "domicile" and "residence." *See Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("'Domicile' is not necessarily synonymous with

4

'residence,' and one can reside in one place but be domiciled in another.") (citations omitted). While one's "domicile" comprehends an "intent to remain there," *id*. (citing *Texas v. Florida*, 306 U.S. 398, 424 (1939)), one's "residence" is simply "[t]he place where one actually lives," *Didon v. Castillo*, 838 F.3d 313, 324 (3d Cir. 2016) (quoting *Residence*, BLACK'S LAW DICTIONARY (10th ed. 2014)). One's domicile and one's residence need not, therefore, be the same. *Holyfield*, 490 U.S. at 48. Unlike with domicile, it is possible to have more than one residence simultaneously. *See, e.g.*, *Grange Prop. & Cas. Ins. Co. v. Smith*, 2019 WL 3997151, at *4 (N.D. Ga. Aug. 23, 2019) (unpublished) (quoting *Residence*, BLACK'S LAW DICTIONARY (9th ed. 2009)); *Guynn v. Blatt, Hasenmiller, Liebsker & Moore, LLC*, 2018 U.S. Dist. LEXIS 43032, at *12 (S.D. Ind. Mar. 14, 2018) (unpublished) (quoting *Residence*, BLACK'S LAW DICTIONARY (4th ed. 1968)). Therefore, the fact that Plaintiff's Socorro address is his "permanent" residence, and may perhaps be his domicile, is not dispositive of whether he has resided at other addresses in the past ten years.

In order to avert further confusion and disagreement over the sufficiency of Plaintiff's discovery response, the Court will adopt the following definition with respect to Interrogatory No. 1(f):

> A residence is a place where a person lives and conducts the daily affairs of life, though not necessarily exclusively or permanently. A person may have several residences at once. A residence is contrasted with a domicile, which is a principal residence, the place where a person is considered exclusively and permanently to be a domiciliary[.]

*Residence*, BOUVIER LAW DICTIONARY (Desk ed. 2012).  This definition is consistent with the rather common-sense view, espoused by the United States Supreme Court and many others, that one's residence is where one lives.  *See*, *e.g.*, *Monasky v. Taglieri*, 140 S. Ct. 719, 726 (2020) (citing BLACK'S LAW DICTIONARY (5th ed. 1979)) ("A child 'resides' where she lives.").

With this definitional question settled, the Court turns to Plaintiff's objections. First, the Court finds it is not a legally cognizable objection to a party's interrogatory that the question has already been answered elsewhere, or that the opposing party already knows the answer.  The Federal Rules require responding parties to answer interrogatories "separately and fully in writing under oath."  Fed. R. Civ. P. 33(b)(3). Responses by reference to another document, or—as in this case—to alleged prior knowledge, are therefore insufficient.  *See*, *e.g.*, *Yazzie v. Law Offices of Farrell & Seldin*, 2010 WL 11450784, at *2 (D.N.M. Oct. 1, 2010) (unpublished) (citing *Pilling v. Gen. Motors Corp.*, 45 F.R.D. 366, 369 (D. Utah 1968)) ("While a party may incorporate by reference prior answers to interrogatories to avoid duplication, it may not do so by referring to documents outside the answers."); *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 663 (D. Colo. 2000); *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 640 (D. Kan. 1999). Plaintiff's objection that Interrogatory No. 1(f) is "duplicative and a waste of Plaintiff's time," *doc. 236-1 at 3*, is therefore overruled.

Plaintiff's remaining objections involve the relevance, proportionality, and private nature of this information. In his briefing, Plaintiff also raised concerns about the burden imposed by the request, alleging that "to try and list every such address over the last ten (10) years is unduly oppressive."[2] *Doc. 250* at 4. However, information about a party's places of residence during an appropriately limited period of time is generally relevant, and imposes an exceptionally minimal burden on the party from whom the information is sought. *See*, *e.g.*, *Wilson v. Wal-Mart Stores, Inc.*, 2008 WL 11379987, at *1–2 (D. Kan. Jan. 28, 2008) (unpublished) (compelling response to an interrogatory that asked for all addresses at which plaintiff resided for the past ten years).

Although Defendants do not explain the relevance of Plaintiff's residential addresses in very specific terms, they argue that the information is broadly relevant to Plaintiff's damages. *See doc. 236* at 3. The Court agrees. Plaintiff's addresses of residence are sufficiently related to his financial status and employment history to be plausibly relevant to his claimed damages. Relevance in the discovery context is broadly construed, *see Herbert*, 441 U.S. at 177, and a discovery request "should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party," *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2002)

---

[2] The Court notes, merely in passing, that this statement appears to convey a recognition that Plaintiff's Socorro address is *not* his only "residence address" of the past ten years.

(internal quotation and citation omitted).  The Court therefore finds that information about Plaintiff's residential addresses is sufficiently relevant to be discoverable.

The question only remains whether the request, though relevant, should be denied because the information sought is either privileged or disproportionate to the needs of the case.  Plaintiff has not argued that the information sought is privileged, and the Court hereby overrules his unsubstantiated objection that the request is "an invasion of Plaintiff's personal privacy," *doc. 236-1* at 2.  Plaintiff has offered no legal support for the proposition that a party's residential address is confidential, and this Court is aware of none.  Indeed, as Plaintiff points out, at least one residential address of his is "on file" with Defendants and contained in "every filing by Plaintiff." *Id*. at 3.

As for Plaintiff's argument that the request is unduly burdensome and disproportionate to the needs of the case, the Court cannot agree.  Drawing up a list of his residential addresses for the past ten years should impose at most a minimal burden on Plaintiff.  Given the nominal labor and lack of expense involved in providing a complete response, both the request and its temporal scope appear facially reasonable and proportional to the needs of the case.  Indeed, Plaintiff himself has frequently argued that events more than ten years past are relevant to this litigation.  *See*, *e.g.*, *doc. 193* at 9, 18 (requesting information about NMT's African American students during the past fifty years).  Any objections grounded in proportionality and burden are, accordingly, overruled.

For these reasons, Defendants' motion to compel will be GRANTED with respect to Interrogatory No. 1(f). Plaintiff is ordered to provide a complete list of his addresses of residence, in conformity with the definition of "residence" provided above, for the past ten years, along with the dates lived at each address.

B. <u>Family Information—Interrogatories No. 1(i), 1(j), 1(k), 1(l)</u>

The remainder of the disputed subparts in Defendants' Interrogatory No. 1 ask Plaintiff to provide the following information:

    i.      The name and present address of any present spouse and/or past spouses;
    j.      The date of each marriage and city and state where married;
    k.     The date and manner of termination of each past marriage;
    l.      The name, birth date, current age and current address of any children[.]

*Doc. 236-1* at 2.

Plaintiff asserts in both his supplemental responses and his briefing that the requested information is not relevant to the litigation and an invasion of Plaintiff's privacy. *Doc. 236-1* at 2–3; *doc. 236-4* at 3; *doc. 250* at 4. Defendants argue that the information is "relevant to Plaintiff's damages, sources of income, and expenses" and that they are "entitled to know whether his alleged inability to find a job, or any additional purported damages (which he claims include emotional distress damages) have been caused by other factors in his personal life." *Doc. 236* at 6.

While there may exist some marginal possibility of relevance in Plaintiff's detailed marital history and the personal information of his children, these requests

9

come perilously close to a "speculative fishing expedition," *Murphy*, 619 F.3d at 1163, on the part of Defendants. Defendants can provide no concrete, plausible reason why Plaintiff's alleged damages may result from his family relationships. To adopt Defendants' line of reasoning would be to allow virtually unlimited discovery into any plaintiff's personal life, purely on the basis that such discovery might conceivably uncover some alternate cause for his damages. In addition to its doubtful relevance, the information requested in subparts (i)–(l) is somewhat more personal and sensitive in nature than the residence information requested in subpart (f), as it concerns not only Plaintiff but his family members as well.

The scope of discovery is broad, but it is not all-encompassing. This Court will not compel the discovery of Plaintiff's personal family information in a suit for racial discrimination without some clearly demonstrated relevance to the litigation at hand. *See Coleman v. Starbucks*, 2015 WL 2449585, at *5 (M.D. Fla. May 22, 2015) (unpublished) (disallowing a similar discovery request and noting that "[t]he Court fails to see what relevance Plaintiff's marital history has to this lawsuit alleging racial discrimination and retaliation in employment"). Defendants are entitled to inquire into Plaintiff's present marital status, but no more.

As each of the subparts of Interrogatory No. 1 proceed beyond this simple yes or no question (i.e., whether Plaintiff is married), the Court will DENY the motion to compel in its entirety as to Interrogatories Nos. 1(i)–(l). Should Defendants so choose,

they may direct a future interrogatory to Plaintiff asking whether or not he is presently married.

C. Employment History—Interrogatory No. 3 and Request for Production No. 2

Interrogatory No. 3 and Request for Production ("RFP") No. 2 both concern Plaintiff's employment history. Interrogatory No. 3 requests the names and addresses of each of Plaintiff's employers over the past ten years, as well as the dates employed, address and telephone number, full name, approximate salary, and the type of work performed for each employer. *Doc. 236-1 at 4*. RFP No. 2 asks Plaintiff to fill out and return an attached employment records release authorization. *Doc. 236-2 at 2*.

To both requests, Plaintiff objected as follows:

> [T]his extra request is overly broad and unduly burdensome and unnecessary since this information was previously provided to Defendants in Plaintiff's Financial Expert Witness Testimony. Mitigation is clearly shown in the certified IRS transcripts provided to Defendants. Plaintiff has demonstrated and provided more than sufficient evidence to show that he mitigated his financial damages whenever possible.
> Furthermore, due to the nature of Plaintiff's work and research, the policies of the companies that he has worked for do not allow any such contact or disclosures.

*Doc. 236-1 at 4; doc. 236-2 at 2*. Plaintiff additionally responded, in his Second Supplementation:

> Any employment that precedes June 28, 2016, which was the first time that year that Plaintiff reapplied for admission to the PhD program at NMT, has no relevance to the instant case, since Plaintiff is not suing for damages based on the loss of employment prior to his June 28, 2016 reapplication for admission to NMT.

*Doc. 236-4* at 3. Finally, in his briefing, Plaintiff stated: "Plaintiff provided his employment history to Defendants through a supplemental response. Plaintiff is principally an independent contractor and to the extent he has contracts for independent work, he is not 'employed' in the nature of the questions propounded[.]" *Doc. 250* at 4.

The Court is unpersuaded by any of Plaintiff's arguments or objections. To begin with, Plaintiff's employment history has clear relevance to his claims. Plaintiff has alleged, *inter alia*, "loss of employment" and "loss of income" as damages resulting from NMT's denial of his reapplication. *See doc. 150* at ¶ 95. Defendants are therefore entitled to discover information tending to establish whether or not Plaintiff suffered such damages. The Court also rejects Plaintiff's argument that his employment prior to June 28, 2016, the date of his reapplication to NMT's PhD program, is irrelevant. Even if Plaintiff is not suing for damages based on a loss of employment prior to that date, a comparison of Plaintiff's employment and income before and after that date has obvious relevance to the assessment of his damages. Defendants also cite more particularized reasons for seeking information about Plaintiff's employment history, such as their need to investigate Plaintiff's assertion that he worked as a professor of engineering subsequent to his rejection from NMT's PhD program. *See doc. 236* at 7. Finally, although Defendants have not specifically raised this point, Plaintiff's prior employment history could well be relevant to NMT's evaluation of his application for

readmission. In short, contrary to Plaintiff's assertions, mitigation of damages is not the only purpose for which information about his employment and income may be relevant.

Plaintiff also objected that "the policies of the companies that he has worked for do not allow any such contact or disclosures." *Doc. 236-1 at 4; doc. 236-2 at 2*. Generally speaking, however, information that is merely confidential (as opposed to privileged) is discoverable so long as it is relevant and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) ("parties may obtain discovery regarding *any* nonprivileged matter that is relevant . . . and proportional . . .") (emphasis added). As one court explained:

> It is well settled that confidentiality does not act as a bar to discovery and is not grounds to withhold documents or information from discovery. "A concern for protecting confidentiality does not equate to privilege." While a confidentiality objection may be appropriate when a party seeks a protective order limiting the parties' use or disclosure of confidential information, it is generally not a valid objection to withholding discovery altogether.

*Benney v. Midwest Health, Inc.*, 2018 WL 6042591, at *5 (D. Kan. Nov. 19, 2018) (quoting *High Point SARL v. Spring Nextel Corp.*, 2011 WL 4008009, at *1 (D. Kan. Sept. 9, 2011)). Of course, particularly in cases where a third party's sensitive information is requested, the court may consider the privacy interests at stake in determining whether the discovery is proportional to the needs of the case. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648–49 (10th Cir. 2008).

Plaintiff has not alleged that the information sought by Interrogatory No. 3 and RFP No. 2 is privileged, nor that it implicates the privacy interests of anyone but himself. By filing suit in this Court and alleging damages connected with a loss of employment and income, Plaintiff has put his employment history at issue and cannot expect that it will remain confidential. If Plaintiff believes that the specialized nature of his former work necessitates a protective order limiting its use or disclosure, he may so move the Court—though that motion should be accompanied by a full explanation for the need, not a vague assertion of confidentiality.

Lastly, Plaintiff asserts that the requested information has already been provided in the testimony of his financial expert witness. *Doc. 236-1* at 4; *doc. 236-2* at 2. The Court finds that this response is insufficient to answer either request. Interrogatories must be answered "separately and fully in writing under oath," Fed. R. Civ. P. 33(b)(3), without reference to outside documentation. Therefore, Plaintiff has not provided a satisfactory answer to Interrogatory No. 3. As for RFP No. 2, while requests for production may sometimes be answered by reference to an already-provided document, the expert witness testimony referenced by Plaintiff is surely not a signed and completed copy of the release authorization attached to Defendants' request. In consequence, this reference is also unresponsive to RFP No. 2.

The Court therefore overrules Plaintiff's objections and GRANTS Defendants' motion with respect to Interrogatory No. 3 and RFP No. 2. Plaintiff shall provide full

and complete answers to each request. To the extent that he has worked as an "independent contractor," *doc. 250* at 4, he should answer as much and provide the requested information with respect to that period of employment.

D. <u>Tax Information—Request for Production No. 7</u>

RFP No. 7 asked Plaintiff to produce copies of his business and personal income tax returns for the tax years 2011 through 2019. *Doc. 236-2* at 3. In his first set of supplemented responses, Plaintiff did not object to RFP No. 7 on any substantive grounds, but stated that the requested documents had already been produced. *Id*. In his Second Supplementation, Plaintiff argued once again that employment and income preceding June 28, 2016, was irrelevant to the litigation. *Doc. 236-4* at 5.

The Court rejects Plaintiff's relevance objection for substantially the same reasons explained in the previous section.[3] Plaintiff's income prior to the date of reapplication to NMT is broadly relevant to his claimed damages resulting from loss of income, and the Court will allow any discovery requests seeking that information that are reasonable in scope and do not implicate privileged information.

The only issue remaining, therefore, is whether Plaintiff has already sufficiently answered RFP No. 7. In his briefing, Plaintiff relies on

> the disclosure he has made to Defendants via his financial expert witness testimony including detailed IRS Transcripts of his Employer and Income

---

[3] Because the objection is overruled, the Court need not consider whether the objection was waived by Plaintiff's failure to raise it in his first supplementation. *See doc. 236-2* at 3 (objecting only on the basis that "[t]he relevant information has already been provided").

15

over the period that was provided with all relevant information to
establish his income and financial losses for the relevant period of time
that Plaintiff is requesting compensation.

*Doc. 250* at 4–5.

Defendants are not satisfied with Plaintiff's production of these "detailed IRS Transcripts" in response to their request for "income tax returns." First, they note that the documents date back only to 2012, not to 2011 as requested. Second, they argue that the documents are not responsive to the request because "the attachments to the expert's report are merely wage and income transcripts which are not itemized and do not provide information sufficient to determine whether Plaintiff has disclosed all of his income." *Doc. 236* at 8.

The Court agrees that Plaintiff has not provided a satisfactory response to RFP No. 7. Defendants' request is clear and specific: they seek Plaintiff's personal and business income tax returns from the tax years of 2011 to 2019. Plaintiff must produce documentation of the requested kind—i.e., income tax returns—and he must do so for each requested year, including 2011. Defendants' motion is therefore GRANTED with respect to RFP No. 7.

### IV. CONCLUSION

For the reasons explained above, Defendants' Motion to Compel Discovery (*doc. 236*) is GRANTED IN PART and DENIED IN PART.

The motion is GRANTED with respect to Interrogatory No. 1(f), Interrogatory No. 3, RFP No. 2, and RFP No. 3. Plaintiff is ORDERED to provide complete responses to these requests no later than **April 10, 2020**.

The motion is DENIED with respect to Interrogatories No. 1(i), 1(j), 1(k), and 1(l), and Plaintiff need provide no further response to these requests.

In their motion, Defendants also requested an award of attorney's fees and costs pursuant to Fed. R. Civ. P. 37. Because their motion is granted only in part and the Court has ruled in Plaintiff's favor on approximately half of the disputed discovery requests, the Court finds it appropriate for each party to bear its own costs. The request for attorney's fees and costs is therefore DENIED.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE