**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LINDSAY O'BRIEN QUARRIE,

     Plaintiff,

v.                                                                    Civ. No. 17-350 MV/GBW

STEPHEN WELLS, *et al.*,

     Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTIONS TO COMPEL DISCOVERY RESPONSES**

THIS MATTER comes before the Court on Plaintiff's Motion to Compel

Discovery (*doc. 278*) and Plaintiff's Motion to Compel (*doc. 286*).  Having considered

both motions, the parties' briefing (*docs. 284*, *302*, *287*, *301*, *304*), and the relevant law,

the Court will GRANT IN PART Plaintiff's first motion (*doc. 278*) and GRANT IN PART

Plaintiff's second motion (*doc. 286*).

## I.    BACKGROUND

On January 13, 2020, Plaintiff served his Fifth Set of Interrogatories on Defendant

Board of Regents of the New Mexico Institute of Mining and Technology ("NMT").

*Doc. 278* at 1.  Defendant NMT served its Objections and Answers on February 10, 2020,

accompanied by a privilege log.  *See id.* at 2; *doc. 278-2*.  Following an email

communication from Plaintiff, Defendant NMT supplemented the date of the

memorandum listed on its privilege log, but made no other, substantive amendments.[1] *See doc. 278-4.* Despite several further communications between the parties, they were unable to reach an agreement. However, in light of Plaintiff's good faith efforts to confer and the recent withdrawal of his attorney, the Court granted an extension until March 16, 2020, for Plaintiff to file a motion to compel based on Defendant NMT's responses. *Doc. 274.* Plaintiff timely filed his motion. *Doc. 278.*

Meanwhile, on February 1, 2020, Plaintiff served his Sixth Set of Interrogatories on Defendant NMT. *Doc. 286-1.* Defendant NMT served its Objections and Answers on March 9, 2020. *Doc. 286-2.* This set of interrogatories (consisting of a single discovery request, Interrogatory No. 18) is the subject of Plaintiff's second motion to compel (*doc. 286*).

Some additional background information is necessary in order to understand the parties' current disputes. All four of the discovery requests in Plaintiff's Fifth Set of Interrogatories (*doc. 278-1*), as well as Interrogatory No. 18 from Plaintiff's Sixth Set of Interrogatories (*doc. 286-1*), relate to Plaintiff's academic records at NMT and Defendant NMT's actions with respect to those records. On October 8, 2015, prior to the filing of the current suit, Plaintiff and Defendant NMT entered into a Settlement Agreement in

---

[1] The supplemented Amended Privilege Log (*doc. 278-4* at 3–4) was evidently intended to correct a typographical error in the original Privilege Log, which read: "Memorandum prepared by attorney Robin Goble dated 22, 2017 regarding Plaintiff's student records and compliance with Settlement Agreement." *Doc. 278-2* at 6. The Amended Privilege Log lists the relevant date as August 22, 2017. *Doc. 278-4* at 4.

which Plaintiff agreed, *inter alia*, that he would not re-apply for enrollment at NMT

"now or in the future." *Doc. 278-6* at 3. The instant suit for racial discrimination is, of

course, premised on Defendants' denial of Plaintiff's several reapplications for

enrollment in 2016. *See doc. 150* at 20. However, Plaintiff asserts that the Settlement

Agreement is "void, invalid, and unenforceable" due to Defendants' own non-

compliance. *Id.* at 14. Specifically, Plaintiff believes that Defendants violated the

following provision of the Settlement Agreement:

> The parties agree that [NMT] will permanently remove the words
> "TERMINATED FROM GRADUATE PROGRAM" (or any similar
> language) from Plaintiff's NMIMT transcript, as well as from any other
> related documents in Plaintiff's academic and/or administrative files at
> NMIMT[.]

*Doc. 278-6* at 3; *see doc. 150* at ¶ 55. Defendants deny this. *Doc. 151* at ¶ 55. Obviously,

the enforceability or non-enforceability of the Settlement Agreement may be critical to

the success of Plaintiff's suit, though the Court expresses no opinion on that question

here.

Plaintiff has pursued the issue of the Settlement Agreement's enforceability

throughout the discovery period. Of particular relevance to the instant dispute,

Defendant NMT provided the following response to Plaintiff's Request for Production

No. 20:

> While certain documents were transferred to a legal file pursuant to the
> terms of the Settlement Agreement (e.g., the termination letter and
> associated communications), no documents were destroyed. Subject to
> said objection and without waiving the same, to the extent this Request

3

seeks the termination letter, this has already been produced.  No other responsive documents.[2]

*Doc. 278-1* at 3.  Plaintiff's Fifth and Sixth Sets of Interrogatories are focused mainly on this prior response and the details of the referenced transfer of documents to Plaintiff's "legal file."  Defendant NMT alleges that the information requested by Plaintiff is either privileged or unduly burdensome.  Both motions are now before the Court.

## II.   STANDARD OF REVIEW

### A. <u>Scope of Discovery</u>

The Federal Rules of Civil Procedure provide the following general standard of discoverability:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Evidence is relevant if it has any tendency to make a material fact more or less probable.  Fed. R. Evid. 401.  Information "need not be admissible in evidence to be discoverable," Fed R. Civ. P. 26(b)(1), and discovery rules "are to be accorded a broad and liberal treatment," *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  However, "Rule 26 vests the trial judge with broad discretion to tailor discovery

---

[2]  Neither party attached Plaintiff's Request for Production No. 20 as an exhibit to the briefing, but Defendant NMT does not dispute that this is an accurate quotation of its response.

narrowly." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

In addition, the court "must limit the frequency or extent" of otherwise permissible discovery where:

> (i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)  the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Where one party improperly fails to respond to another party's discovery requests, the requesting party may move to compel disclosure and for appropriate sanctions. Fed. R. Civ. P. 37(a)(3)(A).

## B. <u>Information Protected from Discovery</u>

As stated in Rule 26, privileged information is protected from discovery. The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (citation and internal quotation marks omitted). Operating in the other direction, the privilege "protect[s] at least those attorney to client communications which would have a tendency to reveal the confidences of the client." *Id*. (quoting Kenneth S. Brown,

*McCormick on Evidence* § 89 (6th ed. 2006)).  Courts have also protected attorney-to-client communications that "constitute legal advice."  *Id*. (quoting *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990)); *see also Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011) (extending the privilege to communications of "legal advice based on . . . client confidences").  The attorney-client privilege must be "strictly construed," *Trammel v. United States*, 445 U.S. 40, 50 (1980), and the burden of establishing its applicability "rests on the party seeking to assert it," *In re Grand Jury Proceedings*, 616 F.3d at 1183 (quoting *In re Grand Jury Subpoena Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 279 (10th Cir. 1983)).

Attorney work product is similarly protected.  The work-product doctrine "only prevents disclosure of information that was prepared by the attorney in anticipation of litigation or for trial."  *Id.* at 1184 (citing *Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1042 (10th Cir. 1998)).  *See also Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006) ("[W]ork product protection only applies to attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation.").  As with attorney-client privilege, "[t]he party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable."  *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

Under the Federal Rules of Civil Procedure, a party withholding otherwise discoverable information by asserting either attorney-client privilege or the work-product doctrine must:

(i)     expressly make the claim; and

(ii)    describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A). The privilege or protection must be established as to "specific questions or documents, not by making a blanket claim." *Forest v. Hill (In re Foster)*, 188 F.3d 1259, 1264 (10th Cir. 1999) (citation omitted).

### III.   ANALYSIS

#### A.   <u>Interrogatory No. 14</u>

Interrogatory No. 14 asks Defendant NMT to:

Describe in detail each of the "certain documents" referenced [in Defendant NMT's response to Request for Production No. 20] that "were transferred to a legal file pursuant to the terms of the Settlement Agreement," when exactly they were transferred (day, month, and year), what files they were transferred from, who transferred them, and who authorized their transfer.

*Doc. 278-2* at 2–3.  Defendant NMT responded as follows:

Objection, this Interrogatory seeks materials protected from disclosure by the attorney-client privilege and/or work product doctrine.  Subject to said objection and without waiving the same, see attached privileged log. These documents have previously been produced to include the termination letter and related correspondence identified by bates number (NMT.00066, NMT.00275–00285, NMT.00287–00301, NMT.00303–00305,

NMT.00308, NMT.00314 and NMT.00421).  The termination letter was
contained with Plaintiff's academic files maintained by the Registrar and
by Graduate Studies.

*Id*. at 3.  The attached privilege log identified one item: a memorandum "prepared by

attorney Robin Goble dated August 22, 2017 regarding Plaintiff's student records and

compliance with Settlement Agreement."  *Doc. 278-4* at 4.

Plaintiff concedes that "the Memorandum itself *may* be privileged."  *Doc. 278* at

6.  The Court agrees that it is.  Based on the description provided by Defendant NMT,

the memorandum contains confidential legal advice from counsel to Defendant,

rendering it subject to attorney-client privilege.  In addition, it appears that the

memorandum may constitute protected work-product in the form of counsel's mental

impressions of the case, though this is less clear.  In any event, the Court finds that the

memorandum itself is non-discoverable.  Plaintiff argues, however, that the

memorandum itself is not responsive to any of his interrogatories, and that the

information actually requested is not privileged.

By the Court's count, Interrogatory No. 14 requests approximately five related

pieces of information: (1) a detailed description of the documents transferred to the

legal file; (2) the date of transfer; (3) what file(s) the documents were transferred from;

(4) who transferred them; and (5) who authorized the transfer.  Defendant NMT's

response addresses two of these five subparts.  On subpart (1), Defendant NMT

identified the transferred documents as "the termination letter and related

correspondence," which were previously produced, and identified each document by bates number. *Doc. 278-2* at 3. To subpart (3), Defendant NMT responded that "[t]he termination letter was contained with Plaintiff's academic files maintained by the Registrar and by Graduate Studies." *Id*. at 3. Defendant NMT provided no response to subpart (3) as it applied to the "related correspondence." Moreover, Defendant NMT provided no response whatsoever to subparts (2), (4), or (5).

Though the exact contents of the August 22, 2017 memorandum are unknown to the Court, it seems obvious that the memorandum itself is not directly responsive to any part of Interrogatory No. 14.[3] Instead, Defendant NMT's argument appears to be that because it undertook certain actions based on the privileged recommendations of counsel, those actions are likewise privileged and undiscoverable. *See doc. 284* at 5 ("the attorney-client privilege arises based upon communications between counsel and the client regarding how the termination letter should be treated"). It is difficult for the Court to understand how this could be the case. It certainly is not true, as a general principle, that actions undertaken on the advice of counsel are privileged. If, for example, a party initiates a lawsuit or files a motion on the recommendation of counsel, the factual details surrounding that action (date, location, etc.) are not automatically

---

[3] At the risk of stating the obvious, Interrogatory No. 14 is not a request for production to which a document would be responsive. In addition, Plaintiff himself has stated that his Fifth Set of Interrogatories do not "seek[] to know the contents of the Memorandum cited in the Privilege Log." *Doc. 278* at 6.

covered by attorney-client privilege.  Likewise, the factual details of a party's

compliance with a settlement agreement are not generally privileged or protected—on

the contrary, they are frequently considered by courts in evaluating whether the

agreement has been complied with.  *See*, *e.g.*, *McClendon v. City of Albuquerque*, 328

F.R.D. 567, 570 (D.N.M. 2018) (outlining a detailed plan of monitoring and reporting to

ensure compliance with settlement agreement); *Fender v. Kan. Soc. & Rehab. Servs.*, 168 F.

Supp. 2d 1216, 1221–22 (D. Kan. 2001) (analyzing defendant's compliance with

settlement agreement).

The burden was on Defendant NMT to establish the applicability of either

attorney-client privilege or work-product doctrine to the information requested, *In re*

*Grand Jury Proceedings*, 616 F.3d at 1183 (citation omitted), and Defendant has cited no

law to support the sweeping proposition that actions based on the privileged advice of

counsel are also privileged.  The Court therefore concludes that the information

requested by Interrogatory No. 14 is privileged only if it so closely mirrors the contents

of the privileged memorandum that it would be impossible to disclose the information

without also divulging the contents of the memorandum.

Indeed, Defendant NMT argues that "to disclose in detail what was done and by

whom in response to specific communications and recommendations of counsel would

in turn, disclose the heart of the communications themselves."  *Doc. 284* at 6.  But the

Court finds that none of the individual subparts of Interrogatory No. 14 so closely

mirror the contents of the memorandum as to receive the protection of privilege or work-product doctrine. Based on the amended privilege log (*doc. 278-4*) and Defendant's briefing (*doc. 284*), the Court concludes that the memorandum contained recommendations and advice from counsel regarding what should be done with Plaintiff's records—in particular, with the termination letter—in order to comply with the Settlement Agreement. None of the questions posed by Interrogatory No. 14 requests information about counsel's recommendations or even the reasons behind Defendant NMT's decision to transfer certain documents to a legal file. Instead, Interrogatory No. 14 asks for concrete factual information regarding Defendant NMT's actions. Defendant NMT's objections that the requested information is protected by attorney-client privilege and/or work product doctrine are therefore OVERRULED.

The only question remaining is whether Defendant NMT has already provided a sufficient response to the interrogatory. As noted above, Defendant NMT made no effort whatsoever to respond to subparts (2), (4), or (5), requesting the date of transfer, the identity of the transferor, and the identity of the individual(s) who authorized the transfer. Defendant NMT is therefore ORDERED to respond to these individual questions.

Though Defendant NMT did not provide much substantive description of the transferred documents in response to subpart (1), Defendant NMT did specifically identify each already-produced document by bates number. The Court finds that this

11

constitutes a sufficient response to subpart (1), which requested a "detailed description"

of the documents transferred to the legal file.

Finally, while Defendant NMT satisfactorily answered subpart (3)—which asked

which file(s) the documents were transferred from—with respect to the termination

letter, it provided no response with respect to the "related correspondence" previously

identified and referenced by bates number above.  Therefore, Defendant NMT is

ORDERED to provide this information with respect to *all* documents transferred to

Plaintiff's legal file.

   **B.  Interrogatory No. 15**

Interrogatory No. 15 reads as follows:

> Describe in detail why and how the transfer of the "certain documents"
> referenced [in Defendant NMT's response to Request for Production No.
> 20] "to a legal file" was "pursuant to the terms of the Settlement
> Agreement."  In other words, what was it about these "certain
> documents" that the terms of the Settlement Agreement required their
> transfer to a legal file?  Include in your answer which terms exactly of the
> Settlement Agreement you are referring to.

*Doc. 278-2* at 3.  Defendant NMT responded with the following objection:

> Objection, this Interrogatory seeks materials protected from disclosure by
> the attorney-client privilege and/or work product doctrine.  As worded,
> this Interrogatory seeks the mental impressions of counsel and/or
> recommendations made by counsel, which is improper and falls outside
> the scope of Rule 26.

*Id*. at 3–4.

Based on the available information, the Court infers that Defendant NMT transferred the referenced documents to a legal file based specifically on the recommendations of counsel communicated through the August 22, 2017 memorandum.  Any more detailed answer, therefore, would effectively require Defendant NMT to divulge the contents of the memorandum.  Defendant NMT's full answer to Interrogatory No. 15 would look virtually identical to its answer to the question: "What were counsel's August 22, 2017 recommendations regarding compliance with the Settlement Agreement?"  That information is non-discoverable.

It is certainly true, as Plaintiff urges, that neither attorney-client privilege nor the work-product doctrine protects underlying facts from disclosure merely because they are contained in a privileged or otherwise protected communication.  *See Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981).  Defendant NMT would not, simply by virtue of the August 22, 2017 memorandum, be protected from disclosing the existence of the Settlement Agreement, the precise terms of the Settlement Agreement, or the concrete actions taken in order to comply with the Settlement Agreement.  What Plaintiff is *not* entitled to, however, are the mental impressions and legal analysis of counsel that guided Defendant NMT in its attempt to comply with the Settlement Agreement.

The Court finds that Defendant NMT cannot be compelled, either directly or indirectly, to disclose the contents of the privileged memorandum.  Accordingly, Defendant NMT's objections to Interrogatory No. 15 are SUSTAINED.

However, Defendant NMT is ORDERED to supplement its answer to reflect, if true, the assumption noted above: that Defendant NMT's transfer of the referenced documents to the legal file was undertaken upon the legal analysis and recommendations of counsel contained in the August 22, 2017 memorandum.[4]  Having so certified, Defendant NMT need not disclose the specifics of those recommendations.

### C. **Interrogatory No. 16**

Plaintiff's sixteenth interrogatory reads:

> It is presumed that by "termination letter" [in Defendant NMT's response to Request for Production No. 20,] Defendant NMT is referring to the April 27, 2012 letter from Lorie Liebrock to Plaintiff.  Describe in detail how many copies of the April 27, 2012 letter from Lorie Liebrock to Plaintiff (including all variations of it) are currently in each of Plaintiff's academic, administrative, and legal files at NMT.  Include in your answer the total number of variations of this letter—i.e., signed or unsigned, stamped or unstamped, and with or without letterhead—that are currently in each of Plaintiff's academic, administrative, and legal files at NMT.

*Doc. 278-2* at 4.  Defendant NMT objected to the request in its entirety and provided no substantive response, stating:

> Objection, this interrogatory is harassing, overbroad, burdensome, and cumulative.  Multiple copies of this letter have been produced.  There is no dispute over the contents of the termination letter.  Over the course of multiple disputes among the parties since 2012 . . . multiple copies of this letter have been generated.  Because there is no dispute over the contents of the letter, seeking NMT to review its files to count the number of copies

---

[4] If Defendant NMT's treatment of the referenced documents was not based on the recommendations of its counsel, then no basis for attorney-client privilege or work-product doctrine has been asserted, and Defendant NMT must provide a full response to Interrogatory No. 15.

of this letter, and whether it contains a stamp, signature, etc., serves no
purpose and is cumulative and burdensome.

*Id.*

The Court is unpersuaded by Defendant NMT's argument that the request is
objectionable because the contents of the termination letter are not in dispute.  No part
of Interrogatory No. 16 asks Defendant NMT to describe or provide the substantive
contents of the termination letter, and establishing the letter's contents is quite evidently
not Plaintiff's aim in requesting this information.  Rather, Plaintiff clearly believes that
the number of copies of the termination letter present in his various NMT files bears on
the validity and enforceability of the Settlement Agreement.  To the extent that
Plaintiff's ability to sue is premised on Defendant NMT's failure to remove the
termination letter from his academic and other administrative files within five business
days of the Settlement Agreement,[5] the relevance of any current copies of that
termination letter—including their total number and specific locations—is self-evident.

The relevance of ascertaining whether such copies are "signed or unsigned,
stamped or unstamped, and with or without letterhead," *doc. 278-2* at 4, is less readily
apparent.  As best the Court can tell, Plaintiff's aim is to better identify each individual
copy such that he has a complete knowledge of which letters are currently in which

---

[5] The Court expresses no opinion about whether Defendant NMT's failure to remove the termination
letter would, in fact, constitute a material breach of the Settlement Agreement, as that issue has not been
properly raised or briefed.

files.  This aim might have been better achieved by requesting all copies of the

termination letter in a request for production, and then asking Defendant NMT to

identify the file location of each copy by bates stamp.  However, Defendant NMT has

presented no specific argument about the relevance of this request as it relates to

establishing the *number* or *current location* of copies.  Instead, Defendant NMT's

objections and arguments appear to relate solely to the hypothetical purpose of

establishing the letter's *contents*.  *See doc. 278-2* at 4 ("*Because* there is no dispute over the

contents of the letter . . . [the request] serves no purpose and is cumulative and

burdensome.") (emphasis added).  The Court declines to construct additional

arguments on Defendant's behalf.  *See, e.g.*, *Gheesling v. Chater*, 162 F.R.D. 649, 650 (D.

Kan. 1995) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 –

85 (5th Cir. 1990); *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir.

1985); *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)) (the party resisting

discovery must "show specifically" how the request is irrelevant, immaterial, unduly

burdensome, or overly broad).

Furthermore, Defendant NMT has provided no reason why this additional step

of identifying whether the copies are signed, stamped, or on letterhead would be

particularly or unduly burdensome.  Objections of undue burden must be supported by

"sufficient detail and explanation about the nature of the burden in terms of time,

money, and procedure required to produce the requested documents."  *Dentsply Int'l*,

*Inc. v. Lewis & Roca, LLP*, 2013 WL 12246642, at *3 (D.N.M. May 21, 2013) (unpublished) (citing *Gen. Elec. Capital Corp. v. Lear Corp.*, 215 F.R.D. 637, 641 (D. Kan. 2003)).  In the absence of any such explanation, the Court finds that the apparently minimal difficulty of providing this information does not outweigh its possible relevance to the case.

Finally, as to Defendant NMT's objections that Interrogatory No. 16 is "harassing," "overbroad," and "cumulative," these are largely unexplained and appear generally without basis.  For the reasons explained above, the Court finds that the request—at least in the absence of specific, persuasive argument to the contrary—is reasonably proportional to the needs of the case, and therefore is neither "harassing" nor overbroad.  There is still less indication of the request's being cumulative. Certainly, Defendant NMT asserts that "multiple copies of this letter have been generated," *doc. 278-2* at 4, and the Court sees no reason to doubt it.  But Interrogatory No. 16 does not ask Defendant NMT to generate copies of the termination letter. Instead, it requests identification of the location and other details of all currently existing copies of the termination letter.  The Court therefore finds no evidence that Plaintiff has made this specific discovery request before, and does not consider it cumulative.

For these reasons, Defendant NMT's objections to Interrogatory No. 16 are OVERRULED, and Defendant NMT is ORDERED to provide a full and complete answer.

**D. <u>Interrogatory No. 17</u>**

Interrogatory No. 17, which requests information similar to that sought by

Interrogatory No. 16, reads as follows:

> On May 26, 2016, Plaintiff personally checked his academic and administrative files at NMT and found therein four (4) different copies of the April 27, 2012 letter from Lorie Liebrock to Plaintiff.  Upon request, Plaintiff received a copy of each of the four different copies of the April 27, 2012 Liebrock letter on May 26, 2016 from NMT administrators.  See Plaintiff's attached affidavit (Exhibit A).  These four different copies of the April 27, 2012 Liebrock letter are attached hereto as Exhibits 1–4 in attached Exhibit A.  The watermarks, handwritten dates, and Plaintiff's signature were added to these four different copies of [the] April 27, 2012 Liebrock letter for security reasons.
>
> Describe in detail how many copies of each of these four different copies of the April 27, 2012 Liebrock letter (attached hereto as Exhibits 1–4 in attached Exhibit A) are currently located in Plaintiff's academic, administrative, and legal files at NMT, when these copies of the April 27, 2012 Liebrock letter were first placed in each of those files, who placed them there, and who authorized them to be placed there.

*Doc. 278-2* at 5.  Defendant NMT responded with the single line: "See Objection to

Interrogatory No. 16."  *Id*.

As Plaintiff acknowledges, *see doc. 302* at 9, Interrogatory No. 16 and

Interrogatory No. 17 are facially similar.  Consequently, Defendant NMT's referenced

objection that the discovery request is "cumulative," though insufficiently explained in

the specific context of Interrogatory No. 17, merits closer consideration.  *See* Fed. R. Civ.

P. 26(b)(2)(C)(i) (establishing courts' independent duty to consider cumulativeness).

Plaintiff points out that Interrogatory No. 16 targets "only those copies of the April 27,

2012 Liebrock letter . . . that Defendant NMT referenced in its response to Plaintiff's

Request for Production No. 20," while Interrogatory No. 17 asks specifically about the four copies of the termination letter attached as exhibits.  However, it appears to the Court that Interrogatory No. 16 must encompass *all* copies of the termination letter contained in any of Plaintiff's files at NMT, including the four exhibit copies, as Defendant's response to Request for Production No. 20 referenced the termination letter generally.

Nevertheless, the Court finds that Interrogatory No. 17 is not cumulative because it requests additional historical information about the copies not addressed in Interrogatory No. 16.  Unlike Interrogatory No. 16, Interrogatory No. 17 asks Defendant NMT to "[d]escribe . . . when these copies of the April 27, 2012 Liebrock letter were first placed in each of those files, who placed them there, and who authorized them to be placed there."  *See doc. 278-2* at 5.  Therefore, the request is not cumulative or duplicative.

Defendant NMT's remaining objections are meritless for the reasons explained with reference to Interrogatory No. 16.  Broadly speaking, the relevance of determining which copies of the termination letter were in which files, at which time, is clear.  Plaintiff additionally explains in his briefing that he

> has serious concerns that Defendant NMT has spoliated Plaintiff's NMT academic and/or administrative files by removing/transferring copies of the April 27, 2012 Liebrock letter from those files since the instant case began in March of 2017 in an attempt to hide the evidence that Defendants have been in violation of the Settlement Agreement.

*Doc. 278* at 15.  Whatever the truth or falsity of these allegations, Plaintiff is certainly

entitled to explore the possibility through discovery, at least in the absence of any

specific and persuasive objections to the contrary.  Defendant NMT has articulated no

such objections.  Therefore, Defendant NMT's objections are OVERRULED and it shall

provide a complete response to Interrogatory No. 17.

### E.  Interrogatory No. 18

Interrogatory No. 18 of Plaintiff's Sixth Set of Interrogatories references a January

30, 2020 email by Defendant NMT's counsel, which provided specific bates numbers of

all the "copies of the termination letter" and "correspondence about this letter" already

produced.  *Doc. 286-7* at 2.  Plaintiff's interrogatory requests the following:

> Describe in detail when (day, month, and year) each of [the documents
> cited in the January 30, 2020 email] (i.e., NMT Bates number 64, 65, 66, 83,
> 275–285, 287–293, 295–301, 303–305, 308, 309, 311, and 314) was transferred
> or removed from Lindsay O'Brien Quarrie's academic and/or
> administrative files at NMT, what file each document was
> transferred/removed from, what file each document was transferred to,
> who transferred them, and who authorized their transfer.

*Doc. 286-2*. at 3.  Defendant NMT responded:

> Objection, this Interrogatory seeks materials protected from disclosure by
> the attorney-client privilege and/or work product doctrine.  As a further
> objection, this Interrogatory misconstrues NMT's prior Answer to the
> Interrogatory as well as clarification by counsel to suggest that the above
> bates stamped documents were contained within Plaintiff's administrative
> files.  Subject to said objections and without waiving the same, see
> Amended Privilege Log produced in Answer to Interrogatory Nos. 16 and
> 17.  The termination letter was contained within Plaintiff's academic files
> maintained by the Registrar and by Graduate Studies and transferred to a
> legal file upon recommendations of counsel.

20

*Id.*

For the same reasons recited at length with respect to Interrogatory No. 14, the Court hereby OVERRULES Defendant NMT's objections as to attorney-client privilege and work-product doctrine. Although the August 22, 2017 memorandum is itself protected by attorney-client privilege, that privilege does not extend to the actions taken by Defendant NMT pursuant to counsel's advice; it protects only the advice itself. As for Defendant NMT's further objection that the request "misconstrues NMT's prior Answer to the Interrogatory as well as clarification by counsel to suggest that the above bates stamped documents were contained within Plaintiff's administrative files," *id.*, the Court finds that this would be more appropriate as a substantive response to the interrogatory than as a legally cognizable objection to answering it. Defendant NMT provides no legal support for the idea that such misconstruction would relieve it from its obligation to answer. The objection is therefore OVERRULED.

However, even absent a targeted objection by Defendant, the Court must consider the extent to which Interrogatory No. 18 is cumulative or duplicative. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (the Court, on its own, must limit discovery if "the discovery sought is unreasonably cumulative or duplicative"). Interrogatory No. 18 is substantively almost identical to Interrogatory No. 14. Despite differences in wording, both interrogatories refer to the same documents. The documents identified by bates number in Interrogatory No. 18 were previously identified by Defendant NMT, in a

supplemented response to Plaintiff's Request for Production No. 20, as being among the "certain documents . . . transferred to a legal file pursuant to the terms of the Settlement Agreement." *See doc. 286* at 7. Interrogatory No. 14 does not identify documents by bates number, but refers directly to the "certain documents . . . transferred to a legal file" that were first identified in Defendant NMT's response to Request for Production No. 20. *Doc. 278-2* at 2. The Court therefore concludes that the same documents are covered by both interrogatories.

There are, however, minor differences in the details requested. While both interrogatories ask who transferred the documents and who authorized their transfer, *see id*.; *doc. 286-2* at 3, Interrogatory No. 18 asks for the date of transfer *from* Plaintiff's academic and/or administrative file, as well as the specific file location *to* which they were transferred, while Interrogatory No. 14 asks only for the date of transfer *to* Plaintiff's legal file. It is conceivable that some documents might have been transferred *from* Plaintiff's academic and/or administrative files without being transferred *to* Plaintiff's legal file, and vice versa. Therefore, the Court will grant Plaintiff's motion to compel Defendant NMT's response on the following two questions only: (1) On what date was each document transferred from Plaintiff's academic and/or administrative file; and (2) to what file was each document transferred? The Court finds that the remaining subparts of Interrogatory No. 18 are duplicative of Interrogatory No. 14, and will not compel additional responses.

22

Because Defendant NMT's response to Interrogatory No. 18 is manifestly deficient as to these two questions, Defendant NMT is ORDERED to respond to each of these questions in full, with respect to *any and all documents* previously identified in its response to Request for Production No. 20 as being "transferred to a legal file pursuant to the terms of the Settlement Agreement," i.e., "the termination letter and associated communications." *Doc. 278-1* at 3. If in fact the "associated communications" were never in Plaintiff's academic and/or administrative files at NMT, then Defendant NMT must say so in its certified response.

## IV.   CONCLUSION

Plaintiff's first Motion to Compel Discovery (*doc. 278*) is GRANTED as to Interrogatory No. 14, Interrogatory No. 16, and Interrogatory No. 17. It is DENIED as to Interrogatory No. 15. However, Defendant NMT must supplement its response to Interrogatory No. 15, as described above, to certify that its transfer of the referenced documents to the legal file was pursuant to the legal analysis and recommendations of counsel.

Plaintiff's second Motion to Compel (*doc. 286*) is GRANTED IN PART. As explained, Defendant NMT must provide the date of transfer of each document from Plaintiff's academic and/or administrative file, and identify the file to which each document was transferred. Defendant NMT need not provide responses to the additional questions contained in Interrogatory No. 18.

IT IS ORDERED that Defendant NMT shall provide its updated responses, as delineated herein, no later than **May 18, 2020**.

Each party has requested an award of its expenses pursuant to Rule 37(a). *See doc. 284* at 9; *doc. 301* at 5; *doc. 304* at 12. Because the Court grants Plaintiff's motions in part and denies them in part, Fed. R. Civ. P. 37(a)(5)(C) provides the applicable standard. Pursuant to that rule, the court "*may*, after giving an opportunity to be heard, apportion the reasonable expenses of the motion." *Id*. (emphasis added); *see also Benavidez v. Sandia Nat'l Labs.*, 319 F.R.D. 696, 730 (D.N.M. 2017). Upon consideration and in the exercise of its discretion, the Court finds an award of expenses to either party inappropriate.[6] Both requests are therefore DENIED, with each party to bear its own expenses.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

---

[6] Moreover, the Court notes that Plaintiff requested expenses for the first time in the reply brief to his second motion. *See doc. 304* at 12. Consequently, Defendant NMT has not received sufficient opportunity to be heard on Plaintiff's request.