**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LINDSAY O'BRIEN QUARRIE,

      Plaintiff,

v.                                          Civ. No. 17-350 MV/GBW

STEPHEN WELLS, *et al.*,

      Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR SANCTIONS**

THIS MATTER comes before the Court on Plaintiff's Motion for Discovery and Spoliation Sanctions (*doc. 325*) and related briefing (*docs. 330, 338*).  For the reasons that follow, the Court will GRANT IN PART and DENY IN PART Plaintiff's Motion.

**I.    BACKGROUND**

The factual and procedural history of this case has been related many times, most recently in the Order issued on May 4, 2020.  *See doc. 308* at 1–4.  The facts directly and specifically pertinent to the instant dispute are as follows:

On October 8, 2015, following Plaintiff's dismissal from the New Mexico Institute of Mining and Technology ("NMT") and unsuccessful suit in federal court, Plaintiff and NMT entered into a Settlement Agreement.  *Doc. 325-1* at 2–5.  This agreement

established, *inter alia*, that Plaintiff would never again reapply for enrollment at NMT, and that NMT would

> permanently remove the words "TERMINATED FROM GRADUATE PROGRAM" (or any similar language) from Plaintiff's [NMT] transcript, as well as from any other related documents in Plaintiff's academic and/or administrative files at [NMT], within five (5) business days from the execution of this Settlement Agreement.

*Id*. at 3.

Plaintiff alleges that on May 26, 2016, he inspected his academic and administrative files at NMT and discovered several copies of the April 27, 2012 letter from Dean Lorie Liebrock notifying Plaintiff of his termination from the graduate program. *See doc. 325-2 at 3; doc. 338-2 at 8*. He notified President Daniel Lopez of his finding via email on June 30, 2016, and expressed his belief that the Settlement Agreement had been rendered "null and void."[1] *Doc. 325-2 at 2–3*. Plaintiff thereafter went on to reapply to NMT's graduate program several times, and his rejections form the basis of this suit. *See doc. 150 at 20*.

On December 16, 2019, Plaintiff sent an email to defense counsel Ms. Wigley-Delara expressing "serious concerns" that Defendant NMT had spoliated evidence by transferring various documents out of Plaintiff's academic and/or administrative files

---

[1] This was not the first breach of the Settlement Agreement alleged by Plaintiff. On or about October 12, 2015, Plaintiff sent a similar email to NMT based on "an edited copy of Plaintiff's NMT academic transcript with a defamatory statement added to it." *Doc. 325 at 4*. This first email appears to have no relevance to the present dispute.

after commencement of the instant suit.  *Doc. 325-3* at 4.  Plaintiff requested that counsel

for NMT indicate the truth or falsity of the following statements:

1. A litigation hold was placed on my NMT academic and administrative files starting no later than March 20, 2017.
2. No documents (including copies of Lorie Liebrock's April 27, 2012 letter to me) have been transferred out of any of my NMT academic and/or administrative files since the filing of my current lawsuit against Defendant Wells et al in federal court on March 20, 2017.

*Id*.  Plaintiff sent several follow-up emails, *see id.* at 2–3, and defense counsel at last

responded on December 30, 2019, stating:

> I had hoped that with the service of the Responses to the 8th Set of Requests for Production, you would have received the information you believe to be so urgent.  I cannot and will not provide you with additional information as your emails are seeking protected attorney-client communications to which you are not entitled.

*Id.* at 2.

Plaintiff's Request for Production No. 20 asked Defendant NMT to "[p]roduce

copies of any and all documents that were transferred out of (or removed from) Lindsay

O'Brien Quarrie's academic files at NMT for any reason between October 8, 2015 and

the present."  *Doc. 325-4* at 2.  Defendant NMT's response, which has featured

prominently in this ongoing discovery dispute, reads as follows:

> Objection, this Request is vague and ambiguous as to the meaning of the terms "transferred out" or "removed from."  While certain documents were transferred to a legal file pursuant to the terms of the Settlement Agreement (e.g., the termination letter and associated communications), no documents were destroyed.  Subject to said objection and without

> waiving the same, to the extent this Request seeks the termination letter,
> this has already been produced.  No other responsive documents.

*Id*.

Plaintiff obviously believes that (a) one or more copies of the termination letter remained in his academic file five business days after execution of the Settlement Agreement, (b) the termination letter is a "related document" within the meaning of the Settlement Agreement, containing language about his termination from the graduate program, and (c) Defendant NMT intentionally removed the Settlement Agreement from Plaintiff's academic file in order to conceal its violation of the agreement.[2]  With the apparent aim of discovering further evidence to support this belief, Plaintiff served his Fifth Set of Interrogatories on January 13, 2020, and his Sixth Set of Interrogatories on February 1, 2020.  Collectively these requests comprised Interrogatories No. 14, 15, 16, 17, and 18.  Upon receipt of Defendant NMT's responses to these requests, Plaintiff filed two motions to compel.  *Docs. 278*, *286*.

In an Order dated May 4, 2020, the Court granted Plaintiff's motions in part and denied them in part.  *Doc. 308*.  Defendant NMT was ordered to provide complete answers to Interrogatory No. 14, Interrogatory No. 16, and Interrogatory No. 17.  Defendant NMT was also ordered to provide responses to several of the subparts of

---

[2] As in previous orders, the Court expresses no opinion about whether the termination letter, if left in Plaintiff's academic file past the five-day deadline, counts as a "related document" in violation of the Settlement Agreement.

Interrogatory No. 18.  Although Plaintiff's motion to compel was denied as to

Interrogatory No. 15, Defendant NMT was ordered to update its response "to certify

that its transfer of the referenced documents to the legal file was pursuant to the legal

analysis and recommendations of counsel."  *Id*. at 23.

Defendant NMT sent its Supplemental Objections and Answers in accordance

with the Court's Order on May 18, 2020.  *See doc. 325* at 7.  In response to email

communications from Plaintiff, Defendant sent its Second Supplemental Objections and

Answers to Plaintiff's Fifth Set of Interrogatories on May 19, 2020, and its Third and

Second Supplemental Objections and Answers to Plaintiff's Fifth and Sixth Set of

Interrogatories, respectively, on June 2, 2020.  *See id*. at 8; *doc. 326* at 1; *doc. 325-12*; *doc.

325-13*.

Plaintiff, who asserts that Defendant NMT's responses remain insufficient, filed

the present motion on June 8, 2020.  *Doc. 325*.  As a remedy for Defendant NMT's

alleged violation of the Court's May 4, 2020 Order, he requests (1) that the "voidance,

invalidity, and unenforceability" of the Settlement Agreement be taken as established in

this case, (2) that Defendant NMT be prohibited from opposing or presenting evidence

against Plaintiff's claim that the Settlement Agreement is "void, invalid, and

unenforceable," and (3) that Defendant NMT be held in contempt of court until it can

demonstrate its compliance.  *Id*. at 2.  As a sanction for Defendant NMT's alleged

spoliation of evidence by transferring files out of Plaintiff's academic and

administrative files, Plaintiff requests (1) a presumption that the evidence was unfavorable to Defendant NMT, (2) an adverse inference jury instruction against Defendant NMT, and (3) a Court referral of Defendant NMT's spoliation to the United States Attorney's Office for criminal prosecution.  *Id.* at 3.

In the time after filing a response to Plaintiff's motion, but before Plaintiff filed his reply, Defendant NMT served several additional supplemental discovery responses. On July 2, 2020, Defendant sent Plaintiff its Fourth Supplemental Answers to Plaintiff's Fifth Set of Interrogatories, containing a Third Supplemental Answer to Interrogatory No. 14 with more precise information about document transfer dates.  *Doc 338* at 11; *doc. 338-3.*  In addition, and notably, Defendant NMT admitted in a supplemental response to Plaintiff's Second Set of Requests for Admission on June 25, 2020, that at least one copy of the termination letter was in Plaintiff's academic and/or administrative files on May 16, 2016, when Plaintiff examined those files in person.  *Doc. 338-1* at 2.

Briefing on Plaintiff's motion for sanctions was completed on July 5, 2020 with the filing of Plaintiff's reply, and the motion is now before the Court.

## II.   LEGAL STANDARDS

### A. <u>Violation of a Discovery Order</u>

"District courts have broad discretion to sanction a party who violates discovery orders."  *United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002) (citing *United States v. Gonzales*, 164 F.3d 1285, 1291 (10th Cir. 1999)).  To the extent that Defendant

NMT violated the Court's order of May 4, 2020, it is subject to sanctions under Federal

Rule of Civil Procedure 37, which reads in pertinent part:

> If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
>
> (i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)    prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)   striking pleadings in whole or in part;
>
> (iv)   staying further proceedings until the order is obeyed;
>
> (v)    dismissing the action or proceeding in whole or in part;
>
> (vi)   rendering a default judgment against the disobedient party; or
>
> (vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

Furthermore, "[i]nstead of or in addition to the orders above, the court must

order the disobedient party . . . to pay the reasonable expenses, including attorney's

fees, caused by the failure, unless the failure was substantially justified or other

circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

## B.  <u>Spoliation of Evidence</u>

Spoliation is the "intentional destruction, mutilation, alteration, or concealment

of evidence."  *Hernandez Concrete Pumping, Inc. v. Duquette*, 2019 WL 4303323, at *1

(D.N.M. Sept. 11, 2019) (unpublished) (quoting *Spoliation*, *Black's Law Dictionary* (8th ed. 2004)). *See also Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 620 (D. Colo. 2007) ("Spoliation has been defined as the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.") (internal quotation marks omitted) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

"Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)).

As for the sanction itself, "[d]istrict courts have 'substantial weaponry' in their arsenal to shape the appropriate relief for a party's spoliation of evidence." *Helget v. City of Hays*, 844 F.3d 1216, 1225–26 (10th Cir. 2017) (quoting *Turner*, 563 F.3d at 1149). The district court may, *inter alia*, strike witnesses, issue adverse inferences, or dismiss a party's claims. *Helget*, 844 F.3d at 1226 (citing *103 Invr's I, L.P. v. Square D Co.*, 470 F.3d 985, 988 (10th Cir. 2006); *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1219–20 (10th Cir. 2008); *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912 (10th Cir. 1998) (unpublished)). Issuance of an adverse inference, the principal remedy sought here by Plaintiff, is appropriate only where the aggrieved party can prove bad faith.

*Turner*, 563 F.3d at 1149 (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir.

1997); *Henning*, 530 F.3d at 1220).

### III.   ANALYSIS

### A.  Compliance with the Court's May 4, 2020 Order

Plaintiff first seeks discovery sanctions on the basis that Defendant NMT violated

the Court's May 4, 2020 discovery order by failing to adequately supplement its

answers to Interrogatories No. 14–18.  For the reasons that follow, the Court will grant

in part and deny in part Plaintiff's motion for sanctions.

i.      Interrogatory No. 14

Plaintiff's Interrogatory No. 14 requested the following:

> Describe in detail each of the "certain documents" referenced [in
> Defendant NMT's response to Request for Production No. 20] that "were
> transferred to a legal file pursuant to the terms of the Settlement
> Agreement," when exactly they were transferred (day, month, and year),
> what files they were transferred from, who transferred them, and who
> authorized their transfer.

*Doc. 325-12* at 2–3.  In its order of May 4, 2020, the Court identified five distinct subparts

contained within this interrogatory:

> (1) a detailed description of the documents transferred to the legal file; (2)
> the date of transfer; (3) what file(s) the documents were transferred from;
> (4) who transferred them; and (5) who authorized their transfer.

*Doc. 308* at 8.  The Court overruled Defendant NMT's privilege and work-product

objections, but found that Defendant NMT had provided sufficient answers to subpart

(1), and to subpart (3) as it related to the termination letter.  Defendant was ordered to

respond fully to subparts (2), (4), and (5), as well as to subpart (3) as it applied to the

"related correspondence."  *Doc. 308* at 11–12.

After further communications between Plaintiff and Defendant NMT, Defendant

provided the following Second Supplemental Answer[3] to Interrogatory No. 14:

> Subject to the production of the Amended Privilege Log (previously
> produced) and the above Answers, the termination letter identified by
> bates numbers above was in Plaintiff's file maintained by the Registrar.
> The email correspondence or "related correspondence" previously
> produced and identified above by bates number has never been in any file
> regarding Plaintiff except for a legal file.  After Plaintiff was terminated
> from the PhD Materials Engineering program and during the pendency of
> the several administrative and legal proceedings involving Plaintiff and
> NMT, all file materials regarding Plaintiff maintained by Graduate Studies
> was [sic] designated as a legal file.  This designation was made by the
> former President of NMT, President Lopez.  A precise date of this
> designation is unknown, but it occurred close in time to Plaintiff's
> termination from the PhD program and the court proceeding seeking a
> restraining order against Plaintiff.  Sometime after the execution of the
> Settlement Agreement, the termination letter was transferred by the
> former Registrar Sara Grijalva to the legal file in accordance with the
> decision of the former President of NMT to create the legal file.  It is
> unknown the precise date when this occurred.

*Doc. 325-12* at 3–4.  Plaintiff contended in his motion that this supplemental answer was

insufficient to address subparts (2) and (3) of the interrogatory as ordered by the Court.

---

[3] Before providing this Second Supplemental Answer, Defendant NMT provided a Supplemental Answer
containing slightly less detail.  Additional information was added in response to Plaintiff's concerns.  The
Court will concern itself, here and elsewhere, only with Defendant NMT's most recent supplementations.

*Doc. 325* at 12–16.  Plaintiff made no objection to Defendant NMT's answer as it related to subparts (4) and (5).

On July 2, 2020, after Plaintiff's motion and Defendant's response had already been filed, Defendant served its Fourth Supplemental Answers to Plaintiff's Fifth Set of Interrogatories, containing a single Third Supplemental Answer to Interrogatory No. 14. This supplementation states:

> In addition to the Answers above, the termination letter was transferred by the former Registrar Sara Grijalva to the legal file in or about August or September of 2017.  A precise date remains unknown.

*Doc. 338-3* at 4.

With the addition of the Third Supplemental Answer, the Court finds that Defendant NMT's response is sufficiently specific with respect to the April 27, 2012 termination letter.  Although Plaintiff continues to maintain that Defendant NMT is "commit[ting] perjury, since it definitely knows the exact transfer date of the termination letter," *doc. 338* at 11, the Court finds no evidence of record to support this weighty accusation.  The Court is unconvinced by Plaintiff's argument that it is "inconceivable that both the registrar of NMT and its legal counsel neglected to create a record of the transfer date of such an important document from Plaintiff's academic file to a legal file 'upon recommendations of counsel.'"  *Id.* at 5 (citation omitted).  *See also doc. 325* at 12–13 (arguing it is "standard administrative procedure by registrars at all public and private universities" to record a document's date of transfer from an

11

academic file to a legal file, and that the failure to do so would be "gross negligence").

Defendant NMT has certified that it does not know the exact date of transfer, and the

Court accepts its response. Whether it could, or even should, have kept more diligent

records is beside the point.

It is puzzling to imagine, moreover, what advantage could accrue to Defendant

NMT from withholding the precise date of transfer within the temporal window of

August and September 2017. Defendant NMT has admitted and acknowledged, under

oath and in several different contexts, that at least one copy of the termination letter was

in Plaintiff's academic and/or administrative file more than five business days after

execution of the Settlement Agreement. If, as Plaintiff believes, the presence of the

termination letter in his file after that time voided the Settlement Agreement, then no

further evidence is needed to support his theory. Any prevarication about the specific

date of transfer would be as pointless as it would be unethical.

As for Plaintiff's contention that Defendant NMT's more specific, supplemented

response evidences perjury in its earlier, more general responses, the Court is similarly

unpersuaded. A lack of specificity in discovery responses, or even an incorrect

response given in error, does not constitute perjury. Pursuant to the Federal Rules of

Civil Procedure, parties are under a continuing duty to supplement their earlier

discovery responses upon learning that those responses are incomplete or incorrect.[4]
*See* Fed. R. Civ. P. 26(e)(1).  Absent some showing of bad faith, intentionality, or
unreasonableness, a party's subsequent discovery of new information is not a discovery
violation.  At worst, Defendant's earlier ignorance may connote an early lack of
"reasonable inquiry" into Plaintiff's discovery requests.  *See* Fed. R. Civ. P. 26(g)(1).
However, given the complex and protracted nature of Plaintiff's litigation with NMT,
the Court finds no specific evidence of unreasonableness.  Defendant NMT's
supplemented response to Interrogatory No. 14 is satisfactory with respect to the
termination letter and does not violate the Court's May 4, 2020 Order.

Turning next to the "associated communications" (elsewhere termed the "related
correspondence") referenced in Defendant's response to Request for Production No. 20,
the Court's Order required a response to both subparts (2) and (3) of Interrogatory No.
14.  In its briefing, Defendant explains that this correspondence consists of email
communications sent between NMT staff between early April 2012 and April 27, 2012.

---

[4] Plaintiff makes much of the fact that Defendant NMT's earlier responses contradict its present one.  *See
doc. 338* at 3–5, 11.  The Court notes in passing that Defendant NMT's prior supplemented answer to
Interrogatory No. 14 does not directly contradict its most recent one.  Defendant stated that the
termination was transferred "[s]ometime after the execution of the Settlement Agreement."  *Doc. 325-12* at
4.  This appears to be accurate.  On the other hand, in its briefing, Defendant stated that its affirmative
answer to Request for Admission No. 30 ("Admit or deny that at least one document was removed or
transferred from Plaintiff's academic and/or administrative file at NMT after the instant case commenced
in March of 2017") did *not* refer to the termination letter.  *Doc. 330* at 13.  In retrospect, this statement is
evidently untrue.  Nevertheless, as explained above, the Court finds no evidence of perjury or intentional
concealment.  Rather, the likeliest explanation is that Defendant NMT did not know the approximate date
of transfer before, and has since discovered—and communicated—new factual information.

*Doc. 330* at 4–5.  Responsive to subpart (3) (what file(s) the documents were transferred

from), Defendant NMT clearly states that the "related correspondence . . . has never

been in any file regarding Plaintiff except for a legal file."  *Doc. 325-12* at 4.  Plaintiff

argues this is "clearly false" because defense counsel, in an email sent on January 30,

2020, indicated that a letter Bates-stamped NMT.00314 "was encompassed in the

registrar's file."  *See doc. 325* at 15–16; *doc. 325-16* at 2.  Defendant NMT has explained in

its response brief that defense counsel mistakenly believed NMT.00314 had been in the

registrar's file, but that NMT has "never maintained in a sworn Answer that

NMT.00314 or the other related correspondence . . . was in any file, but a legal file."

*Doc. 330* at 6.  Because the Court sees no reason to doubt counsel's explanation, and

because the January 30, 2020 email was, indeed, not a sworn answer, the Court does not

find on this basis that the second supplemental response to subpart (3) of Interrogatory

No. 14 is inaccurate or false.  Defendant's answer that the related correspondence was

never in any other file is adequate.

Because the Court accepts Defendant NMT's answer to subpart (3) as it relates to

these email communications, there is no need for any response to subpart (2).  Plaintiff

has made it clear that he does not consider a placement of the emails into his legal file,

without their antecedent placement in another file, to be a "transfer" within the

meaning of his interrogatory.  *See doc. 325* at 16 (citing the dictionary definition of the

word "transfer" and concluding that "no transfer could take place" if the "associated

communications" were never in any file except for Plaintiff's legal file). The Court

accepts Plaintiff's common-sense definition of the word "transfer" as applied to his own

discovery request. Because no transfer between files took place,[5] there can be no date of

transfer, and Defendant NMT's response is adequate. Plaintiff's motion is DENIED.

     ii.    <u>Interrogatory No. 15</u>

Plaintiff's Interrogatory No. 15 was as follows:

> Describe in detail why and how the transfer of the "certain documents"
> referenced [in Defendant NMT's response to Request for Production No.
> 20] "to a legal file" was "pursuant to the terms of the Settlement
> Agreement." In other words, what was it about these "certain
> documents" that the terms of the Settlement Agreement required their
> transfer to a legal file? Include in your answer which terms exactly of the
> Settlement Agreement you are referring to.

*Doc. 325-12* at 4–5. In its May 4, 2020 Order, the Court sustained Defendant NMT's

objections that the requested information was privileged because it would effectively

require NMT to divulge the contents of a privileged memorandum from counsel.

However, Defendant NMT was ordered

> to supplement its answer to reflect, if true, the assumption noted above:
> that Defendant NMT's transfer of the referenced documents to the legal

---

[5] The Court acknowledges that in its previous response to Request for Production No. 20, Defendant
stated that the "associated communications" were "*transferred* to a legal file pursuant to the terms of the
Settlement Agreement[.]" *Doc. 278-1* at 3 (emphasis added). The Court sees two possible explanations
for this disparity. The first is that Defendant NMT was using a different definition of the word
"transfer," one that would encompass a transfer from, e.g., an email server to Plaintiff's legal file. The
second is that Defendant NMT's response to Request for Production No. 20 was in error. The fact that the
associated communications were transferred "pursuant to the terms of the Settlement Agreement," which
only applied to Plaintiff's academic and/or administrative files, may indicate the latter. If so, Defendant
NMT is under a continuing duty to supplement its earlier response with the correct information. *See* Fed.
R. Civ. P. 26(e)(1).

file was undertaken upon the legal analysis and recommendations of
counsel contained in the August 22, 2017 memorandum.

*Doc. 308* at 14.  In addition, the Court noted:

> If Defendant NMT's treatment of the referenced documents was not based
> on the recommendations of its counsel, then no basis for attorney-client
> privilege or work-product doctrine has been asserted, and Defendant
> NMT must provide a full response to Interrogatory No. 15.

*Id*. at 14 n.4.

In Defendant NMT's Second Supplemental Answer to Interrogatory No. 15, it

responded as follows:

> Pursuant to the Court's Order entered on May 4, 2020 (Doc. 308) and
> subject to the objections stated above, see NMT's Supplemental Answers
> to Interrogatory Nos. 14 and 17.  The transfer of the termination letter was
> undertaken upon the recommendations of counsel.

*Doc. 325-12* at 5.

Plaintiff now argues that because Defendant NMT did not certify that the

transfer of the termination letter was undertaken based on the recommendations of

counsel *found in the August 22, 2017 memorandum*, no valid basis for its attorney-client

privilege and work-product doctrine objections has been asserted.  *Doc. 325* at 17.  It is

true that Defendant NMT's Second Supplemental Answer contains no mention of the

August 22, 2017 memorandum.  This omission appears to be intentional, though the

reason is not entirely clear.  Defendant NMT in its response brief mentions "legal advice

provided to NMT outside of the contents of the Memorandum," suggesting that

perhaps the transfer of documents was undertaken based on the advice of counsel, but not based solely on the advice contained in the memorandum.

In any event, Defendant NMT's privilege objection does not rise and fall with the specific source or date of its counsel's recommendations, i.e., their inclusion in the August 22, 2017 memorandum.  Rather, the critical point is that Defendant NMT's transfer of documents into Plaintiff's legal file was undertaken "based on the recommendations of its counsel," *doc. 308* at 14 n.4.  *See also id*. at 23 ("Defendant NMT must supplement its response . . . to certify that its transfer of the referenced documents to the legal file was pursuant to the legal analysis and recommendations of counsel.").  As the Court previously explained, Plaintiff is not entitled to "the mental impressions and legal analysis of counsel that guided Defendant NMT in its attempt to comply with the Settlement Agreement."  *Id*. at 13.  Because Defendant's actions were undertaken upon the advice of counsel, and because it is largely irrelevant how, where, or in what format that advice was communicated, its supplemented response to Interrogatory No. 15 is sufficient and Plaintiff's motion is DENIED.

iii.    Interrogatory No. 16

Plaintiff's Interrogatory No. 16 asked Defendant NMT to:

Describe in detail how many copies of the April 27, 2012 letter from Lorie Liebrock to Plaintiff (including all variations of it) are currently in each of Plaintiff's academic, administrative, and legal files at NMT.  Include in your answer the total number of variations of this letter—i.e., signed or unsigned, stamped or unstamped, and with or without letterhead—that

are currently in each of Plaintiff's academic, administrative, and legal files
at NMT.

*Doc. 325-7* at 4.  In its May 4, 2020 ruling, the Court ordered Defendant NMT to respond

in full.  *Doc. 308* at 17.

Defendant NMT provided the following Supplemental Answer: "Pursuant to

Fed. R. Civ. P. 33(d), see twenty-four copies of termination letter in all its forms

produced herein (NMT.00464 through NMT.00487)."  *Doc. 325-7* at 4.  Defendant

attached twenty-four Bates-stamped documents.  *Id*. at 7–30.

Plaintiff contends that this supplemented response fails to address subpart (2) of

his interrogatory, which asked Defendant to identify in which NMT file each individual

copy of the letter was "currently" located.  He argues:

> According to Defendant NMT's response to Request for Production No. 9,
> there are "approximately five legal files" pertaining to me at NMT.  Which
> of the twenty-four copies of the termination letter are currently in each of
> those five legal files, which are currently in Plaintiff's (former)
> administrative files, and which are currently in Plaintiff's NMT academic
> files?

*Doc. 325* at 19.

Plaintiff's belief that there are five legal files pertaining to Plaintiff at NMT

derives from a response to Plaintiff's Request for Production No. 9, which asked for

"[e]ach and every document . . . that pertain[s] to the creation, execution, performance,

enforcement, and validity of the 2015 Settlement Agreement and Mutual Release

between Lindsay O'Brien Quarrie and NMT *et al.*"  *Doc. 330-4* at 2.  Defendant

18

responded, in relevant part: "Because this Request seeks documents that are clearly

privileged . . . and because of the breadth of the Request, NMT will not prepare a

privilege log of the contents of approximately five legal files." *Id*. at 3. In its response

brief, Defendant NMT explains that Plaintiff's belief is based on a "misconstruction" of

its answer, and that "[t]here are not five separate legal files." *Doc. 330* at 9–10. The

nature of this misconstruction is not entirely clear to the Court, but it seems that

Defendant NMT's prior response may have been based on the "five legal proceedings"

between Plaintiff and NMT. *See id*.

More importantly, no part of Defendant's supplemented response to

Interrogatory No. 16 answers, even by reference, the simple question of which file(s) the

copies may currently be found in. To be sure, Defendant answers this question readily

in its response brief. *See id*. at 10 ("The multiple copies of the termination letter

identified and produced to Plaintiff in Supplemental Answer to Interrogatory No. 16

were contained within the legal file maintained by Graduate Studies."). But, as this

Court has explained before, answers to interrogatories must be clearly stated without

reference to outside documents. *See* Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must,

to the extent it is not objected to, be answered separately and fully in writing under

oath."). Defendant's statement in its response brief is not a proper substitute for a full

and separate answer to Plaintiff's interrogatory.

Accordingly, Plaintiff's motion is GRANTED with respect to Interrogatory No.

16.  Defendant NMT shall further supplement its response to describe the current file

location of all twenty-four copies of the termination letter.  In addition, some further

clarification about the "five legal files" referenced in response to Request for Production

No. 9 would not go amiss.  However, because the Court finds that the violation of its

Order was neither willful nor severe, no sanctions will be imposed.

   iv. <u>Interrogatory No. 17</u>

Interrogatory No. 17 asked several questions with reference to the attached "four

(4) different copies of the April 27, 2012 letter from Lorie Liebrock" discovered by

Plaintiff in his academic and administrative files at NMT on May 26, 2016.  *Doc. 325-12*

at 5.  Specifically, Defendant NMT was asked to:

> Describe in detail how many copies of each of these four different copies
> of the April 27, 2012 Liebrock letter (attached hereto[]) are currently
> located in Plaintiff's academic, administrative, and legal files at NMT,
> when these copies of the April 27, 2012 Liebrock letter were first placed in
> each of those files, who placed them there, and who authorized them to be
> placed there.

*Id.* at 6.

Defendant NMT provided the following responses in its First and Second

Supplemental Answers:

> Supplemental Answer: See Supplemental Answer to Interrogatory No. 14.
> After the termination letter was emailed and mailed to Plaintiff on April
> 27, 2012, a copy of the letter was placed in the file maintained by Graduate
> Studies by Dr. Liebrock.  During the time when Dr. Liebrock was the Dean

of Graduate Studies, she would have placed copies of the termination
letter in the legal file maintained by Graduate Studies at various points in
time as it was the subject of disputes among NMT and Plaintiff. This was
done in accordance with the instructions of the former President of NMT.
*See* NMT's Answer to Interrogatory No. 14. It cannot be determined when
each copy was placed in the legal file. The termination letter was first
placed in the Registrar file on April 30, 2012 after it was emailed to the
Registrar by Dr. Liebrock. *See* NMT.00314 and NMT.00421.

Second Supplemental Answer: See Answer and Supplemental Answers to
Interrogatory No. 14. See also answer stated above.

*Id*.

Plaintiff takes issue with this amalgamated response as it relates to what he

terms subpart (1) ("Describe how many copies of each of these four different copies . . .

are currently located in Plaintiff's academic, administrative, and legal files at NMT")

and subpart (2) ("when these copies . . . were first placed in each of those files"). *Doc.*

*325* at 20.

At first blush, Defendant's response to Interrogatory No. 17 appears to suffer

from the same deficiency as its response to Interrogatory No. 16, by failing to identify

the files in which the attached letters are currently located. However, the response by

reference to the "Answer and Supplemental Answers to Interrogatory No. 14," *doc. 325-*

*12* at 6, is in this instance curative. Response by reference to another interrogatory is

generally permitted where the reference is clearly understandable. *See*, *e.g.*, *Yazzie v.*

*Law Office of Farrell & Seldin*, 2010 WL 11450784, at *2 (D.N.M. Oct. 1, 2010)

(unpublished) (citing *Pilling v. Gen. Motors Corp.*, 45 F.R.D. 366, 369 (D. Utah 1968))

("While a party may incorporate by reference prior answers to interrogatories to avoid duplication, it may not do so by referring to documents outside the answers."); *Constr. Funding v. NCUA Bd.*, 2013 WL 588919, at *3 (D. Utah. Feb. 13, 2013) (unpublished) ("The current response, by reference to Interrogatory No. 2, is sufficient.").  Here, the reference to Interrogatory No. 14 clearly establishes that all copies of the termination letter are currently located in Plaintiff's legal file.  *See doc. 325-12* at 3–4 (stating that "all file materials regarding Plaintiff maintained by Graduate Studies was [sic] designated as a legal file" and that "the termination letter was transferred by the Registrar to the legal file").  Moreover, the text of the response to Interrogatory No. 17 conveys a strong inference that all copies of the attached letters are currently located in Plaintiff's legal file by stating that "[i]t cannot be determined when each copy was placed in the legal file."  *Id.* at 6.  The Court will not insist on needless repetition of the same information.  Plaintiff's question has been answered, and his motion with respect to subpart (1) is DENIED.

The Court also finds no deficiency in subpart (2).  Defendant NMT states that it "cannot be determined when each copy was placed in the legal file."  *Id.*  Plaintiff's only argument to the contrary is that the date of placement "should have been recorded."  *Doc. 325* at 20–21.  As explained with regard to Interrogatory No. 14, what NMT should or should not have recorded is irrelevant.  Plaintiff's motion is DENIED.

v.   <u>Interrogatory No. 18</u>

Interrogatory No. 18 asked Defendant NMT to

Describe in detail when (day, month, and year) each of [the documents cited in defense counsel's January 30, 2020 email regarding Request for Production No. 20] (i.e., NMT Bates numbers 64, 65, 66, 83, 275–285, 287–293, 295–301, 303–305, 308, 309, 311, and 314) was transferred or removed from Lindsay O'Brien Quarrie's academic and/or administrative files at NMT, what file each document was transferred/removed from, what file each document was transferred to, who transferred them, and who authorized their transfer.

*Doc. 325-13* at 3.  In its May 4, 2020 Order, the Court overruled Defendant NMT's objections but held, *sua sponte*, that the interrogatory was largely duplicative of Interrogatory No. 14.  *Doc. 308* at 21–23.  Therefore, Defendant was only required to answer the following two questions: "(1) On what date was each document transferred from Plaintiff's academic and/or administrative file; and (2) to what file was each document transferred?"  *Id*. at 22.  Defendant NMT, in its Second Supplemental Answer, stated: "In addition to the above answer, see NMT's Supplemental and Second Supplemental Answer to Interrogatory No. 14."  *Doc. 325-13* at 3.  Plaintiff objects that this supplemental response address neither of the questions posed by the Court.  *Doc. 325* at 21–22.

The Court previously determined that "the same documents are covered by both [Interrogatory No. 14 and Interrogatory No. 18]."  *Doc. 308* at 22.  Therefore, the only issue before the Court is whether the response by reference to Interrogatory No. 14

23

adequately answers both questions (1) and (2).  The Court finds that it does.  The

reasoning behind the Court's prior Order was explained as follows:

> While both interrogatories ask who transferred the documents and who
> authorized their transfer, [citations omitted], Interrogatory No. 18 asks for
> the date of transfer *from* Plaintiff's academic and/or administrative file, as
> well as the specific file location *to* which they were transferred, while
> Interrogatory No. 14 asks only for the date of transfer *to* Plaintiff's legal
> file.  It is conceivable that some documents might have been transferred
> *from* Plaintiff's academic and/or administrative files without being
> transferred *to* Plaintiff's legal file, and vice versa.

*Doc. 308* at 22.

As explained above with respect to Interrogatory No. 17, the supplemented

responses to Interrogatory No. 14 sufficiently establish that all copies of the termination

letter in Plaintiff's NMT files were transferred to a legal file, where they currently

remain.  Defendant's previous answer to Interrogatory No. 18 establishes that "[t]he

termination letter was contained within Plaintiff's academic files maintained by the

Registrar and by Graduate Studies."  *Doc. 325-13* at 3.  Therefore, subpart (2) has been

answered: each referenced document was transferred *to* Plaintiff's legal file.

In addition, it is now clear that none of the referenced documents were

"transferred *from* Plaintiff's academic and/or administrative files without being

transferred *to* Plaintiff's legal file, [or] vice versa," *doc. 308* at 22, meaning that

Interrogatory No. 14 and Interrogatory No. 18 pose an essentially identical question

with respect to the date of transfer—namely, when was each copy of the termination

letter transferred from Plaintiff's academic and/or administrative file to his legal file. Defendant's supplemented responses to Interrogatory No. 14, which satisfactorily establish the date of transfer to the legal file, are also sufficient to address subpart (1) of Interrogatory No. 18.  Plaintiff's motion is DENIED.

### B. <u>Spoliation of Evidence</u>

Finally, Plaintiff seeks several different sanctions on the basis that Defendant NMT has engaged in spoliation of evidence by "[r]emoving or transferring any documents for any reason from Plaintiff's NMT academic and/or administrative files" after the commencement of this suit in federal court.  *Doc. 325* at 25.  He maintains that the removal of the termination letter and/or other documents from Plaintiff's academic and/or administrative files constituted spoliation by alteration.

Indeed, spoliation may sometimes involve the intentional and significant alteration, rather than the destruction, of evidence.  *See Duquette*, 2019 WL 4303323, at *1 (citations omitted).  Whether spoliation can involve the kind of alteration alleged by Plaintiff—i.e., the transfer of documents into a legal file—is less certain.  Indeed, one might argue that removing relevant documents to a legal file is well in keeping with the obligation to place a "litigation hold" on potential evidence.  No law cited by either party sufficiently resolves whether this kind of "alteration" could violate a party's duty to preserve evidence.

Regardless, the Court finds that Defendant NMT's conduct is not sanctionable because of the absence of prejudice to Plaintiff. "Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) *the adverse party was prejudiced* by the destruction of the evidence.'" *Turner*, 563 F.3d at 1149 (quoting *Burlington*, 505 F.3d at 1032) (emphasis added). Defendant NMT has admitted in several different contexts that at least one copy of the termination letter was present in Plaintiff's academic and/or administrative file more than five business days after execution of the Settlement Agreement, and was moved to a legal file subsequent to the commencement of this suit. *See doc. 338-1* at 2 (Defendant's Supplemental Response to Request for Admission No. 24, admitting that at least one copy of the termination letter was in Plaintiff's academic and/or administrative files on May 26, 2016); *doc. 338-3* at 4 (Defendant's Third Supplemental Answer to Interrogatory No. 14, certifying that the termination letter was transferred to a legal file around August or September of 2017). As Defendant NMT remarks in its brief, "[i]t is undisputed that the termination letter was not 'permanently removed' from [Plaintiff's] academic file at any time, much less within five-days [sic] of execution of the Settlement Agreement." *Doc. 330* at 13.

The hallmark of spoliation is that, because of the destruction or significant alteration of evidence, a party is unable to determine whether that evidence would have been helpful to its case. *See, e.g., Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288,

1299 (D.N.M. 2016) ("Because of the City's inadequate litigation hold, neither Plaintiffs nor the Court will ever know how important the cell phone may have been to Plaintiffs' case.").  In order for a court to impose spoliation sanctions there must be "meaningful evidence" that a party has been "actually, rather than merely theoretically, prejudiced" by the loss of the evidence.  *Burlington*, 505 F.3d at 1032–33.  The court in *Burlington* concluded that "no reasonable finder of fact could determine that [the movant] was meaningfully prejudiced" by the opposing party's alteration of evidence, because the evidence was otherwise available to him in presenting his case.  *Id*. at 1032.  The situation here is still more strikingly unprejudicial.  Not only is the information pertinent to Plaintiff's case—the presence of the termination letter in Plaintiff's academic and/or administrative files, long after execution of the Settlement Agreement—available to him by other means, it is positively admitted and undisputed. To the extent that this constitutes a violation of the Settlement Agreement, therefore, Plaintiff has all the evidence he could possibly require.[6]  Indeed, it is difficult to imagine an appropriate adverse inference regarding this information that has not already been admitted.

---

[6] The Court does not consider whether the continued presence of the "associated communications" in Plaintiff's academic and/or administrative files would contribute anything additional to Plaintiff's case. There is no evidence that these documents ever resided in Plaintiff's academic and/or administrative files at NMT, nor did Plaintiff find them during his own inspection of his files on May 26, 2016.  *See doc. 338-2.*

Because no material evidence has been lost to Plaintiff by way of Defendant NMT's transfer of files, the Court finds that, for all practical purposes, no spoliation has occurred.  In the alternative, sanctions are inappropriate because there has been no actual prejudice to Plaintiff.  Moreover, Plaintiff has made no showing of the kind of intentionality necessary to support the particular sanctions he seeks.  *See Turner*, 563 F.3d at 1149 (citing *Aramburu*, 112 F.3d at 1407; *Henning*, 530 F.3d at 1220).  For these reasons, Plaintiff's motion is DENIED.

## IV.    CONCLUSION

Plaintiff's Motion for Discovery and Spoliation Sanctions (*doc. 325*) is DENIED as it pertains to Interrogatory No. 14, Interrogatory No. 15, Interrogatory No. 17, Interrogatory No. 18, and the request for spoliation sanctions.

The Motion is GRANTED as it pertains to Interrogatory No. 16.  Defendant NMT is hereby ORDERED to update its response to reflect the current file location of all copies of the termination letter.  This may be done by clear and concise reference to its other interrogatory responses.

The Court, in its discretion, declines to impose any of the requested sanctions on Defendant NMT for the reasons more fully detailed herein.  The Court also declines to impose a payment of Plaintiff's reasonable expenses based on Defendant NMT's failure to comply with the Court's discovery Order in responding to Interrogatory No. 16. Pursuant to Rule 37(b), the court need not require a disobedient party to pay such

expenses if "the failure was substantially justified or other circumstances make an

award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  Because Defendant's failure was

minimal and not materially prejudicial to Plaintiff, the Court hereby finds that an award

of expenses would be unjust.

**IT IS SO ORDERED.**

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE