IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDSAY O'BRIEN QUARRIE,

    Plaintiff,

v.                                                                 Civ. No. 17-350 MV/GBW

STEPHEN WELLS, *et al.*,

    Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NMT'S MOTION FOR PROTECTIVE ORDER

THIS MATTER comes before the Court on Defendant NMT's Motion for Protective Order to Plaintiff's Notice to Take Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) and Notice of Non-Appearance. *Doc. 348*. Having read the Motion and Plaintiff's Response (*doc. 357*), the Court will GRANT IN PART and DENY IN PART the Motion.

**I.**     **BACKGROUND**

On June 10, 2020, Plaintiff notified Defendant New Mexico Institute of Mining and Technology ("NMT") of his intention to conduct a 30(b)(6) deposition on twenty-four separate topics. *Doc. 348-2* at 4–6. On June 19, 2020, Defendant NMT advised Plaintiff that it objected to Plaintiff's proposed topics as overly broad and requested that Plaintiff revise the list. *Id.* at 4. On July 7, 2020, Plaintiff served a notice and subpoena

on Defendant NMT for a deposition to proceed on July 30, 2020 on all the topics Plaintiff originally proposed. *Doc. 348-1.* These topics are as follows:

1) Plaintiff's intentional racial discrimination claim under Title VI against Defendant NMT et al (Count I in his Third Amended Complaint) and Plaintiff's request for injunctive relief under *Ex parte Young* (Count II of his Third Amended Complaint.
2) Previously unlitigated and undetermined issue of whether or not Plaintiff was afforded due process when terminated from the PhD program at NMT in spring of 2012.
3) Plaintiff's NMT academic transcript.
4) The contents of Plaintiff's academic and administrative files at NMT.
5) Plaintiff's PhD coursework and transfer credits at NMT.
6) The approval of Plaintiff's dissertation credits at NMT.
7) The passage of Plaintiff's qualifying examinations at NMT.
8) Plaintiff's dissertation research, independent study, and research articles at NMT.
9) The April 27, 2012 termination letter from Lorie Liebrock to Plaintiff.
10) The appeal of Plaintiff's 2012 termination from NMT.
11) The mediation between Plaintiff and NMT in the summer of 2012.
12) Plaintiff's 2013 federal lawsuit against NMT.
13) The previously unlitigated and undetermined issue of whether or not NMT met the conditions precedent and contractual requirements of the 2015 Settlement Agreement and Mutual Release between Plaintiff et [sic] NMT et al.
14) The addition of the phrase 'No Degree Earned' to Plaintiff's academic transcript.
15) The previously unlitigated and undetermined issue of whether or not the Settlement Agreement was void ab initio due to its violation of public policy by racially discriminating against Plaintiff.
16) Plaintiff's applications for readmission to the PhD program at NMT in June, August, and December of 2016.
17) The June 28, 2016 meeting between New Mexico State Representative Sheryl Stapleton and former President Daniel Lopez of NMT.
18) The August 19, 2016 meeting between NM State Rep. Stapleton and President Stephen Wells of NMT.
19) President Wells' September 13, 2016 letter to NM State Rep. Stapleton.
20) Plaintiff's $45 application processing fee paid to NMT in December of 2016.

2

21) Plaintiff's reimbursement of the $6,000 payment received as part of the Settlement Agreement.
22) Plaintiff's 2017 federal lawsuit against NMT.
23) The transfer or removal of documents from Plaintiff's academic and administrative files at NMT between October 8, 2015 and the present.
24) The spoliation of Plaintiff's academic and administrative files at NMT.

*Doc. 348* at 3–4.

On July 20, 2020, Defendant NMT again objected to Topics 1, 2, 11–13, 15, 22, and 24 but designated representatives to testify on Topics 3–10, 14, 16, 18–21, and 23.[1]  *Doc. 348-3* at 1.  Defendant NMT noted that its designees for Topics 3, 4, and 16 were subject to clarification from Plaintiff concerning the scope.  *Id*.  Defendant NMT also proposed that the 30(b)(6) depositions be conducted at the same time as the previously scheduled depositions of its designees.  *Id*.  Plaintiff evidently did not respond to the request for clarification of the scope of Topics 3, 4, or 16.  *Doc. 348* at 6.  On July 23, 2020, Plaintiff took the depositions of Stephen Wells and Lorie Liebrock but refused to depose them on the topics on which Defendant NMT designated them to speak.  *Doc. 348-4* at 1.

Defendant NMT advised Plaintiff that it intended to proceed with a Motion for Protective Order.  *Id*.  Upon the filing of this Motion, Plaintiff cancelled the previously scheduled 30(b)(6) deposition.  *Doc. 357* at 4.  Plaintiff filed a response to this Motion on August 6, 2020.  *Doc. 357*.  Pursuant to Local Rule 7.4(a), Defendant NMT's reply (if any) was due August 20, 2020; none was filed.

---

[1] Defendant NMT also stated that it had no corporate representative possessing information on Topic 17.

## II. LEGAL STANDARDS

### A. Scope of Discovery

The Federal Rules of Civil Procedure provide:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has any tendency to make a material fact more or less probable. Fed. R. Evid. 401. Information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). However, "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)). The Court, on a motion or *sua sponte*, "must limit the frequency or extent of discovery" beyond the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C)(iii).

### B. Rule 30(b)(6)

Federal Rule of Civil Procedure 30(b)(6) authorizes a party to depose a corporation by its representatives. It provides:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons

> who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization.

*Id*. The requirement of "reasonable particularity" in stating the topics for deposition ensures that the entity to be deposed is not faced with an "impossible task" in preparing its representatives. *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 584 (D. Kan. 2008).

Federal Rule of Civil Procedure 26(c) permits the Court, with good cause, to issue an order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Issuing a protective order is required when the party seeking discovery attempts to obtain information outside the scope of discovery." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 6 (D.D.C. 2016) (citing Fed. R. Civ. P. 26(b)(2)(C)(iii)). The Court may issue a protective order to limit the topics of a deposition conducted pursuant to Rule 30(b)(6). *See, e.g., Bhasker v. Fin. Indem. Co.*, 2018 WL 4773363 (D.N.M. Oct. 3, 2018) (unpublished). The burden is on the moving party to demonstrate good cause for the requested protective order. *Benavidez v. Sandia Nat'l Labs.*, 319 F.R.D. 696, 721 (D.N.M. 2017) (citations omitted). *See also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981).

### C. Attorney-Client Privilege and Legal Opinions

The attorney-client privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010)

(citation and internal quotation marks omitted). Operating in the other direction, the privilege "protect[s] at least those attorney to client communications which would have a tendency to reveal the confidences of the client." *Id*. (quoting Kenneth S. Brown, *McCormick on Evidence* § 89 (6th ed. 2006)). Courts have also protected attorney-to-client communications that "constitute legal advice." *Id*. (quoting *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990)); *see also Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011) (extending the privilege to communications of "legal advice based on . . . client confidences"). The attorney-client privilege must be "strictly construed," *Trammel v. United States*, 445 U.S. 40, 50 (1980), and the burden of establishing its applicability "rests on the party seeking to assert it." *In re Grand Jury Proceedings*, 616 F.3d at 1183 (quoting *In re Grand Jury Subpoena Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 279 (10th Cir. 1983)).

Attorney work product is similarly protected. The work-product doctrine "only prevents disclosure of information that was prepared by the attorney in anticipation of litigation or for trial." *Id.* at 1184 (citing *Grand Jury Proceedings v. United States*, 156 F.3d 1038, 1042 (10th Cir. 1998)). The doctrine "only applies to attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006)). As with attorney-client privilege, "[t]he party asserting a work product privilege as a bar to discovery must prove the doctrine is applicable."

6

*Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). Attorney-client privilege and work-product protection must be established as to "specific questions or documents, not by making a blanket claim." *Forest v. Hill (In re Foster)*, 188 F.3d 1259, 1264 (10th Cir. 1999) (citation omitted).

Related to the work-product doctrine is the rule that a party may not use a deposition to inquire into the opposing party's legal opinions. *Schyvincht v. Menard, Inc.*, 2019 WL 3002961, at *2 (N.D. Ill. July 10, 2019) (unpublished) ("Questions seeking a legal conclusion from a lay person exceed the permissible scope of a Rule 30(b)(6) deposition."); *Olsen-Ivie v. K-Mart*, 2018 U.S. Dist. LEXIS 24194, at *3 (D. Utah Feb. 12, 2018) (unpublished) (prohibiting plaintiffs from asking questions "intended to elicit Kmart's legal opinion or analysis of claims or defenses"). Although inquiries into a party's "mental impressions, conclusions, opinions, and legal theory" are generally beyond the scope of a 30(b)(6) deposition, inquiries into the facts underlying a party's legal opinions and theories may be permitted. *Radian Asset Assurance, Inc. v. Coll. of Christian Bros. of N.M.*, 273 F.R.D. 689, 691 (D.N.M. 2011) (quoting *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002)).

### III. ANALYSIS

Defendant NMT seeks a protective order prohibiting the 30(b)(6) deposition on Topics 1, 2, 11, 12, 13, 15, 22, and 24. *Doc. 348* at 4–6. Topics 1, 11, 12, and 22 relate to specific legal proceedings. Topics 2, 13, 15, and 24 relate to specific legal contentions

7

advanced by Plaintiff.  Additionally, Defendant NMT seeks a protective order either prohibiting or limiting the deposition on Topics 3, 4, and 16.  *Id.* at 6.  Finally, Defendant NMT seeks a protective order limiting the deposition "to a mutually convenient time for counsel and the witnesses."  *Id.* at 8.

### A. Topics 1, 11, 12, and 22

The following topics relate to specific proceedings between Plaintiff and Defendant NMT:

> 1) Plaintiff's intentional racial discrimination claim under Title VI against Defendant NMT et al (Count I in his Third Amended Complaint) and Plaintiff's request for injunctive relief under Ex parte Young (Count II of his Third Amended Complaint.
> [. . .]
> 11) The mediation between Plaintiff and NMT in the summer of 2012.
> 12) Plaintiff's 2013 federal lawsuit against NMT.
> [. . .]
> 22) Plaintiff's 2017 federal lawsuit against NMT.

*Doc. 348* at 3–4.  Defendant NMT objects to these topics as overly broad, vague, and seeking legal opinions and/or information protected by attorney-client privilege.  With respect to the last objection, Defendant argues, "Any factual information known to a designated NMT witness about the mediation or the lawsuits would be information learned exclusively through communications with counsel."  *Doc. 348* at 5.

Attorney-client privilege protects communications between clients and their counsel, but it does not shield "the underlying information contained in the communication."  *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992).

8

Discovery of "the underlying facts of a communication depends on its nature, rather than its source." *Henry v. Champlain Enters.*, 212 F.R.D. 73, 91 (N.D.N.Y. 2003) (citation omitted). Clients' confidences are protected, as is an attorney's legal advice based on those confidences. *In re Grand Jury Proceedings*, 616 F.3d at 1182. Similarly, the work-product doctrine protects documents prepared by counsel in anticipation of litigation, but it "is not broad enough to prohibit all inquiry regarding information received from working with counsel." *Dunkin' Donuts Inc. v. Mary's Donuts, Inc.*, 206 F.R.D. 518, 520 (S.D. Fla. 2002). Moreover, objections of attorney-client privilege and/or work-product protection are generally insufficient to prevent deposition on an entire topic. "Courts addressing this issue have generally declined to uphold attorney-client and work-product objections to topics set out in Rule 30(b)(6) notices unless the requested topics, on their face, call for testimony invading the attorney-client privilege or attorney work product doctrine." *McBride*, 250 F.R.D. at 587.

Plaintiff's topics do not, on their face, seek privileged communications. Rather, they seek information about specific proceedings between Plaintiff and Defendant NMT. Information cannot be shielded from disclosure merely because it was learned through communications with an attorney. The information must reveal the client's confidences or the attorney's legal advice to be protected. If, in the course of a deposition, Plaintiff asks questions that invade on the attorney-client privilege,

9

Defendant NMT may raise an objection at that time. Defendant NMT's blanket objection of privilege is OVERRULED.

Topics 1, 11, 12, and 22 also do not, on their face, seek legal opinions. As the Court reads them, these topics seek facts related to the specified proceedings. Inquiries into "facts underlying legal claims and theories" are permissible. *Radian Asset Assurance*, 273 F.R.D. 689 at 691. Moreover, "while objections based on attorney-client privilege or calling for a legal conclusion can certainly be raised during the Rule 30(b)(6) deposition, such objections do not constitute good cause to enter a protective order preventing a Rule 30(b)(6) deposition." *P.S. v. Farm, Inc.*, 2009 WL 483236, at *11 (D. Kan. Feb. 24, 2009) (unpublished). Defendant NMT's objection that Topics 1, 11, 12, and 22 seek legal opinions is OVERRULED.

Defendant NMT's objections of overbreadth and vagueness are more persuasive. Plaintiff himself describes these topics as "broader in scope" but insists that they are proper topics for a 30(b)(6) deposition. *Doc. 357* at 8. The breadth of Topics 1 and 22 is obvious. They address nothing less than the entirety of the present case. Topics 1 and 22 are also vague to the point of meaninglessness. Any relevant subject on which Plaintiff could depose a witness must bear some relation to Counts I and II of Plaintiff's Third Amended Complaint (i.e., the only two counts in Plaintiff's operative complaint, *see doc. 150*). Any relevant subject matter would necessarily fall under the topic of "Plaintiff's 2017 federal lawsuit against NMT." Topic 12 is similarly overbroad and

vague. It concerns Plaintiff's 2013 federal lawsuit, which was brought against NMT and six officials of NMT and raised similar claims as in the present suit. *See Quarrie v. N.M. Inst. of Mining & Tech.*, Civ. No. 13-349 MV/SMV (D.N.M. Apr. 12, 2013). Plaintiff provides no indication of what facts from the 2013 lawsuit will form the basis of his inquiry. Topic 12, like Topics 1 and 22, fails to provide the reasonable particularity necessary to allow Defendant NMT to designate and prepare a suitable representative. Defendant NMT's motion is GRANTED as to Topics 1, 12, and 22.

Topic 11 concerns the parties' unsuccessful 2012 mediation, which Plaintiff describes in his complaint. *See doc. 150* at 10–11. Unlike Topics 1, 12, and 22, Topic 11 concerns a single, discrete, and evidently brief event. It is not entirely clear what facts Plaintiff seeks to discover concerning a proceeding in which he was a party. Nonetheless, the topic is sufficiently particular to allow Defendant NMT to designate an appropriate representative based on who participated in the mediation. The Court reiterates that, during the deposition, Defendant NMT may object to any questions that seek legal opinions or information protected by attorney-client privilege. With that reminder, Defendant NMT's motion is DENIED as to Topic 11.

**B. Topics 2, 13, 15, and 24**

The following topics describe legal theories that Plaintiff intends to advance in this case:

> 2) Previously unlitigated and undetermined issue of whether or not Plaintiff was afforded due process when terminated from the PhD program at NMT in spring of 2012.
> [. . .]
> 13) The previously unlitigated and undetermined issue of whether or not NMT met the conditions precedent and contractual requirements of the 2015 Settlement Agreement and Mutual Release between Plaintiff et [sic] NMT et al.
> [. . .]
> 15) The previously unlitigated and undetermined issue of whether or not the Settlement Agreement was void ab initio due to its violation of public policy by racially discriminating against Plaintiff.
> [. . .]
> 24) The spoliation of Plaintiff's academic and administrative files at NMT.

*Doc. 348* at 3–4. On their face, these topics appear to seek Defendant NMT's opinion on the viability of Plaintiff's legal theories. Plaintiff argues that legal opinions are a proper subject of inquiry on a 30(b)(6) deposition. *Doc. 357* at 9–10. Plaintiff compares depositions to interrogatories and quotes from this Court's order dated December 19, 2019, in which the Court compelled a response to Plaintiff's contention interrogatories. *See doc. 214* at 15–16.

The Court does not agree with Plaintiff that the standard for interrogatories applies equally to depositions. Interrogatories are typically drafted with the assistance of counsel, while depositions require direct answers from witnesses. *Funk v. Pinnacle Health Facilities XXXII*, 2019 WL 858718, at *3 (D. Kan. Feb. 22, 2019) (unpublished). Legal opinions are generally beyond the purview of a lay witness. *Schyvincht*, 2019 WL 3002961, at *2. "In a nutshell, depositions, including 30(b)(6) depositions, are designed

to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means." *JPMorgan Chase Bank*, 209 F.R.D. at 363. Consequently, the Court will not allow any inquiry into legal opinions during the 30(b)(6) depositions.

Although inquiries into legal opinions are not permitted, inquiries into the "facts underlying legal claims and theories" are. *Radian Asset Assurance*, 273 F.R.D. at 691; *see also U.S. E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 434 (D. Nev. 2006). Topics 2 and 13 refer to specific factual circumstances (respectively, the process through which Plaintiff was terminated from the PhD program and Defendant NMT's performance of its contractual obligations under the parties' Settlement Agreement). Plaintiff is permitted to inquire into the factual events underlying his legal theories on these subjects. Topics 15 and 24, however, do not present any factual matters for inquiry. Topic 15 addresses whether the parties' Settlement Agreement was void *ab initio* on public policy grounds. Contracts may be void on public policy grounds when "they are clearly contrary to what the legislature or judicial decision has declared to be the public policy, or they manifestly tend to injure the public in some way." *Mata v. Anderson*, 685 F. Supp. 2d 1223, 1260–61 (D.N.M. 2010) (quoting *Berlangieri v. Running Elk Corp.*, 48 P.3d 70, 74 (N.M. Ct. App. 2002)). Whether a contract is void as against public policy depends on the state's interests and not on such factual circumstances as the parties' negotiations or performance of the contract. *See Mason v. Orthodontic Ctrs. of Colo., Inc.*,

516 F. Supp. 2d 1205, 1212 (D. Colo. 2007).  Because there are no factual matters to be inquired into on this subject, Plaintiff will not be permitted to depose Defendant NMT on Topic 15.  Finally, Topic 24 states a pure legal conclusion and does not articulate any underlying facts, thus it is beyond the permissible scope of a 30(b)(6) deposition.  For these reasons, the Court will GRANT a protective order as to Topics 15 and 24 but DENY it as to Topics 2 and 13.

    C. **Topics 3, 4, and 16**

Defendant NMT designated representatives for Topics 3, 4, and 16 but seeks a protective order limiting the scope.  Topics 3 and 4 are as follows:

> 3) Plaintiff's NMT academic transcript.
> 4) The contents of Plaintiff's academic and administrative files at NMT.

*Doc. 348* at 3.  Defendant NMT designated Sara Grijalva and Lorie Liebrock to speak on these topics but asked Plaintiff to clarify the intended scope.  *Doc. 348-3* at 1.  Plaintiff did not respond.  In response to Defendant's Motion, Plaintiff asserts that Ms. Grijalva and Ms. Liebrock are inappropriate designees concerning the "current state of affairs regarding Plaintiff's NMT academic and/or administrative files (e.g., where certain documents are presently located)."  *Doc. 357* at 13.  As Plaintiff explains, Ms. Grijalva and Ms. Liebrock are the former Registrar and Dean of Graduate Studies, respectively.  Plaintiff insists that Defendant NMT must designate the current Registrar and Dean of Graduate Studies instead of or in addition to Ms. Grijalva and Ms. Liebrock.  *Id.* at 15.

The Court cannot see the relevance of any testimony by the current Registrar and Dean of Graduate Studies. The factual allegations in this case concern events that happened prior to the filing of this lawsuit on March 20, 2017. *See generally doc. 150*. Plaintiff's claim for injunctive relief also relates to decisions made by officials of Defendant NMT prior to the filing of this suit. *See id.* at 23. If, as the Court suspects, Plaintiff's purpose in inquiring into the "current state of affairs" relates to the transfer of his termination letter to a legal file, the Court has already concluded that no further discovery on that topic is necessary. *See docs. 353, 371.* Because the testimony of the current Registrar and Dean of Graduate Studies is not relevant and/or proportional to the needs of the case, the Court will not require Defendant NMT to make them available for 30(b)(6) deposition. Defendant NMT's request for a protective order limiting the scope of Topics 3 and 4 is GRANTED. Plaintiff shall be limited to asking about the state of his academic transcript and academic and/or administrative files through March 20, 2017.

Topic 16 seeks information regarding "Plaintiff's applications for readmission to the PhD program at NMT in June, August, and December of 2016." *Doc. 348* at 4. Defendant NMT sought clarification from Plaintiff concerning his reference to applications in June and August 2016, stating that Plaintiff only applied for readmission in December 2016. *Doc. 348-3* at 1. Plaintiff did not respond to Defendant NMT on this

point, nor does he address it in his response.² Unlike Topics 3 and 4, Plaintiff does not indicate any objection to the designation of Ms. Liebrock on this topic. If Defendant NMT has no record of a reapplication from Plaintiff in June or August of 2016, then the designee may so state in response to any questions regarding said reapplications. Defendant NMT's request for a protective order preventing or limiting the scope of Topic 16 is DENIED.

### D. Timing of the Depositions

As to the remaining topics for the deposition, Defendant NMT has no apparent objections and has already designated appropriate individuals. Because Plaintiff cancelled the deposition scheduled for July 30, 2020, Defendant NMT's grievance concerning Plaintiff's failure to confer on scheduling is moot. Furthermore, while the Court acknowledges Defendant NMT's frustration regarding Plaintiff's refusal to depose Mr. Wells and Ms. Liebrock on the 30(b)(6) topics during their previously scheduled depositions, Plaintiff is correct that he has the right to depose them separately as individuals and corporate representatives. *See, e.g., In re Motor Fuel Temperature Sales Practices Litig.*, 2009 WL 5064441, at *2 (D. Kan. 2009) (unpublished).

Given that there are at least four designees, the Court will give the parties an additional fifteen days beyond the current depositions deadline to complete the 30(b)(6)

---

² The Court further notes that Plaintiff describes only one reapplication (in December 2016) in his Third Amended Complaint. *See doc. 150* at 14–19.

depositions. The Court will also extend the dispositive motions deadline to accommodate any motions pertaining to the 30(b)(6) depositions. To facilitate the completion of these depositions, Defendant NMT will be required to provide Plaintiff with the names and dates of availability for all 30(b)(6) designees within ten days of this Order.

### IV.  CONCLUSION

For the foregoing reasons, Defendant NMT's Motion for Protective Order to Plaintiff's Notice to Take Deposition Pursuant to Fed. R. Civ. P. 30(b)(6) and Notice of Non-Appearance (*doc. 348*) is GRANTED IN PART and DENIED IN PART.

Defendant NMT's motion for protective order is GRANTED with respect to Topics 1, 12, 15, 22, and 24 and GRANTED IN PART with respect to Topics 3 and 4 as explained herein.

The motion is DENIED as it pertains to Topics 2, 11, 13, and 16, subject to the Court's limitation on inquiries into legal opinions.

Defendant NMT shall designate appropriate representatives to testify on Topics 2, 11, and 13 and provide dates of availability for all designated representatives **no later than September 14, 2020.** All depositions of 30(b)(6) designees must be completed **no later than October 17, 2020**, absent good cause for an additional extension. All dispositive pretrial motions must be filed **no later than November 16, 2020**.

Finally, the Court declines to award attorney fees or other expenses to either party. Pursuant to Fed. R. Civ. P. 37(a)(5)(C), it is within the Court's discretion to grant expenses when a motion is granted in part and denied in part. While Defendant NMT's motion was granted for more than half of the disputed topics, many of its objections lacked merit. The parties shall bear their own costs.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE