**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LINDSAY O'BRIEN QUARRIE,

     Plaintiff,

v.                                       Civ. No. 17-350 MV/GBW

STEPHEN WELLS, *et al.*,

     Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Defendants' Motion for Summary

Judgment. *Doc. 410.* Having reviewed the Motion and its attendant briefing (*docs. 419,*

*434*), I find that Plaintiff has failed to rebut Defendants' reliance on the parties'

settlement agreement as a legitimate, nondiscriminatory reason for rejecting Plaintiff's

application for readmission. I therefore recommend that the Court GRANT

Defendants' Motion and DISMISS Plaintiff's claims WITH PREJUDICE. I further

recommend that the Court DENY Plaintiff's Motion for Leave to Submit a Surreply (*doc.*

*440*) because it does not relate to any issue that is material to the resolution of

Defendants' Motion.

I.    **BACKGROUND**

Plaintiff filed the present suit on March 20, 2017. *Doc. 1.* On August 6, 2019,

Plaintiff filed his Third Amended Complaint, the operative complaint in this matter.

*Doc. 150*.  Plaintiff's Third Amended Complaint presents two claims: (1) racial

discrimination by Defendant New Mexico Institute of Mining and Technology ("NMT")

in violation of Title VI of the Civil Rights Act, 42 U.S.C. § 2000d *et seq.*; and (2) an

injunction against Defendants Stephen Wells and Aly El-Osery, in their official

capacities as NMT's President and Dean of Graduate Studies, respectively, pursuant to

*Ex parte Young*, 209 U.S. 123 (1908).  *Id.* at ¶¶ 82–100; *see also doc. 196* at 2.  Plaintiff

alleges that Defendants committed racial discrimination by rejecting his 2016

application for readmission to NMT's PhD program in materials engineering.  *See*

*generally doc. 150*.

Relevant to Plaintiff's claims, the parties entered into a Settlement Agreement

and Mutual Release ("Settlement Agreement") in 2015 to resolve a prior lawsuit filed by

Plaintiff against Defendant NMT arising from his 2012 termination from the PhD

program.  *Doc. 410-3*.  Pursuant to the Settlement Agreement, Plaintiff agreed not to

submit any future applications for admission to NMT.  *Id.* at 2.

Plaintiff's Third Amended Complaint presents a variety of theories for why the

Settlement Agreement is "void, invalid, and unenforceable" and thus does not provide

a basis for Defendants to reject his application for readmission.  *See, e.g., doc. 150* at ¶ 55.

Plaintiff alleges that Defendant NMT "fraudulently induced Plaintiff to sign the

Settlement Agreement, which was void *ab initio* due to its violation of public policy by

racially discriminating against Plaintiff in the context of higher education."  *Id.* at ¶ 85.

Plaintiff also alleges that Defendant NMT took advantage of Plaintiff's "extremely precarious economic situation" caused by his lack of a doctoral degree and engaged in "bait-and-switch" tactics by offering him a higher settlement at the outset of negotiations than he ultimately received. *Id.* at ¶¶ 47–48. Plaintiff also alleges that Defendant NMT "violated the letter and spirit" of the Settlement Agreement "by adding the defamatory language 'No Degree Earned' to Plaintiff's NMT academic transcript." *Id.* at ¶ 51. Finally, Plaintiff alleges that Defendant NMT failed to fulfill a "condition precedent" of the Settlement Agreement by failing to remove "any and all similar language to 'Terminated from Graduate Program' from any related documents in Plaintiff's academic and administrative files at NMT." *Id.* at ¶ 55.

Defendants filed the instant Motion for Summary Judgment on November 16, 2020. *Doc. 410*. Plaintiff filed a response in opposition on December 18, 2020. *Doc. 419*. Defendants filed a reply on January 15, 2021. *Doc. 434*. Asserting that Defendants' reply raised new factual and legal arguments, Plaintiff moved for leave to file a surreply on January 29, 2021. *Doc. 440*. A proposed surreply was attached to this motion. *Id.* at 7–25. Defendants filed a response in opposition on February 12, 2021, to which Plaintiff replied on February 26, 2021. *Doc. 442*; *doc. 443*.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

movant bears the initial burden of "show[ing] 'that there is an absence of evidence to

support the nonmoving party's case.'"  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d

887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Once

the movant meets this burden, the non-moving party is required to designate specific

facts showing that "there are . . . genuine factual issues that properly can be resolved

only by a finder of fact because they may reasonably be resolved in favor of either

party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Celotex*, 477 U.S.

at 324.

## III.   UNDISPUTED FACTS

Based on the facts presented by the movants and other facts gleaned from the

record, I find the following material facts undisputed:

1.   From 2009 to 2012, Plaintiff, an African American man, was a student pursuing a

PhD in materials engineering at NMT.  *Doc. 150* at ¶¶ 3, 12; *doc. 151* at ¶¶ 3, 12.

2.   On April 27, 2012, Plaintiff received a letter from then-Dean of Graduate Studies,

Lorie Liebrock, informing him that he was terminated from his PhD program.

*Doc. 419-5.*

3.   On April 12, 2013, Plaintiff filed suit against Defendant NMT, alleging that his

termination constituted racial discrimination in violation of Title VI of the Civil

Rights Act.  Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 at 1, *Quarrie v.*

*N.M. Inst. of Mining & Tech.*, Civ. No. 13-349 MV/SMV (D.N.M. Apr. 12, 2013).

4.    On October 8, 2015, Plaintiff and Defendant NMT executed the Settlement

Agreement.  *Doc. 410-3*.  In pertinent part, Plaintiff agreed to cease pursuing the

claims raised in his 2013 lawsuit in exchange for $6,000.  *Id.* at 1–2.

5.    The Settlement Agreement contained the following provision: "No Future

Application: Plaintiff agrees that he will not re-apply for enrollment at [NMT]

now or in the future."  *Id.* at 2.

6.    The Settlement Agreement also contained the following provision:

> The Parties agree that [NMT] will permanently remove the words
> "TERMINATED FROM GRADUATE PROGRAM" (or any similar
> language) from Plaintiff's [NMT] transcript, as well as from any
> other related documents in Plaintiff's academic and/or
> administrative files at [NMT], within five (5) business days from
> the execution of this Settlement Agreement.  The Parties further
> agree that no such language shall ever be added to Plaintiff's
> [NMT] transcript (or to any other related documents in Plaintiff's
> academic and/or administrative files at [NMT]) at any future time
> by Defendants.  Plaintiff agrees that he will not represent that he
> graduated from, or received a diploma from, [NMT].

*Id*.

7.    On October 12, 2015, Plaintiff reviewed his transcript and saw that the phrase

"No Degree Earned" had been added.  *Doc. 419-2*.  Plaintiff informed Defendant

NMT's counsel that he believed this phrase was in violation of the Settlement

Agreement.  *Doc. 419-8*; *doc. 419-10*.

8.     On October 21, 2015, Defendant NMT's counsel sent Plaintiff a letter detailing its

position that the addition of the phrase "No Degree Earned" does not violate the

Settlement Agreement.  *Doc. 419-12*.

9.     On October 22, 2015, Plaintiff responded to Defendant NMT detailing his

position that it had breached the Settlement Agreement and demanded that

Defendant NMT remove the offending language.  *Doc. 419-26*.

10.    On November 6, 2015, Plaintiff noted that Defendant NMT had not complied

with his demand and stated that the Settlement Agreement was "now officially

null and void."  *Doc. 419-27*.

11.    On June 30, 2016, Plaintiff sent a letter to Defendant NMT's counsel and then-

President of NMT, Daniel Lopez, informing him that he had discovered copies of

the termination letter from Dr. Liebrock in his academic and administrative files

at NMT.  *Doc. 419-28*.  Plaintiff asserted that this constituted a violation of the

provision of the Settlement Agreement requiring the removal of the language

"Terminated from the Graduate Program" and thus provided an additional

reason why the Settlement Agreement was null and void.  *Id*.

12.    On July 5, 2016, Defendant NMT's counsel responded to Plaintiff's letter,

informing him that he disagreed with Plaintiff's position and that NMT

"consider[s] the Settlement Agreement to be fully enforceable and valid."  *Doc.*

*419-29*.

13.   On August 22, 2016, New Mexico State Representative Sheryl Stapleton sent

Defendants a letter informing them that she considered the Settlement

Agreement null and void for the reasons Plaintiff provided in his June 30 letter.

*Doc. 419-30* at 4.  Representative Stapleton further informed Defendants that

Plaintiff had promised to return the $6,000 he had received pursuant to the

Settlement Agreement.  *Id.*

14.   Also on August 22, 2016, Plaintiff sent Defendants a letter stating that he would

return the $6,000 "upon [his] official reinstatement in the PhD program in

Materials Engineering at NMT and the award of [his] earned doctorate degree."

*Id.* at 6.

15.   On September 13, 2016, Defendant Wells, the current President of NMT, sent a

response to Representative Stapleton informing her of NMT's position that the

Settlement Agreement "finalized interactions with [Plaintiff] and, thereby, put an

end to this matter."  *Doc. 419-32*.

16.   On October 10, 2016, Plaintiff sent checks for $100.00 each to Defendant NMT

and the State of New Mexico's Risk Management Division in partial repayment

of the $6,000 he received pursuant to the Settlement Agreement.  *Doc. 419-33*.

17.   On December 2, 2016, Plaintiff applied for readmission to the materials

engineering PhD program.  *Doc. 150* at ¶ 74; *doc. 151* at ¶ 74.

18.    Defendant NMT states that it "took no action whatsoever" on Plaintiff's

application, viewing it as a violation of the Settlement Agreement.  *Doc. 410-2* at

4.

19.    On January 18, 2017, Defendant NMT's counsel returned both checks to Plaintiff

and informed Plaintiff that Defendant NMT considered the Settlement

Agreement binding.  *Doc. 419-34*.

20.    On March 7, 2017, Plaintiff sent checks to Defendant NMT and the State of New

Mexico in full repayment of the $6,000 he had received.  *Doc. 419-35* at 2; *doc. 419-*

*36* at 2.

21.    One to two weeks thereafter, Defendant NMT's counsel returned both checks to

Plaintiff and reiterated Defendant NMT's position that the Settlement Agreement

remained binding on the parties.  *Doc. 419-35* at 1; *doc. 419-36* at 1.

22.    On April 18, 2018, Plaintiff filed suit in state court, seeking a declaration that the

Settlement Agreement was "void ab initio, invalid, or otherwise unenforceable."

*Doc. 410-12* at 2.  On September 17, 2018, that suit was dismissed pursuant to the

statute of limitations.  *Doc. 410-14* at 2.

23.    On August 3, 2020, the New Mexico Court of Appeals affirmed the dismissal.

*Doc. 410-15* at 14.  On November 9, 2020, the New Mexico Supreme Court denied

Plaintiff's petitioner for writ of certiorari.  *Doc. 410-16*.

IV.   **ANALYSIS**

### A. The *McDonnell Douglas* Framework & Plaintiff's Prima Facie Case

The parties agree that the controlling authority for the present case is *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), an employment discrimination case arising under Title VII of the Civil Rights Act of 1964.  *Doc. 410* at 8; *doc. 419* at 20.  The *McDonnell Douglas* burden-shifting framework provides a method of proving discrimination by circumstantial or indirect evidence, where direct evidence is unavailable.  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  Under this framework, Plaintiff bears the initial burden of establishing a prima facie case for discrimination in violation of Title VI.  *Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty.*, 334 F.3d 928, 930 (10th Cir. 2003) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)).  In the context of a rejected application, a prima facie case of racial discrimination may be established by showing that: (i) Plaintiff belongs to a protected class; (ii) he applied and was qualified for admission to an educational program with Defendant NMT; (iii) he was rejected; and (iv) applicants outside of Plaintiff's protected class were accepted for admission.  *See McDonnell Douglas*, 411 U.S. at 802; *Bryant*, 220 F.3d at 930.  The burden on Plaintiff at this stage "is not onerous."  *Burdine*, 450 U.S. at 253.

When Plaintiff has established a prima facie case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for rejecting Plaintiff's application.

*Id.* at 254.  Defendants' burden at this stage is a burden of production, not persuasion.

*Id.* at 254–55.  Upon the assertion of a legitimate, nondiscriminatory reason, the burden

returns to Plaintiff to show that Defendants' proffered reason is pretext for

discrimination.  *Id.* at 253, 256.  If Plaintiff successfully rebuts Defendants' proffered

reason, his case will proceed to a jury for the ultimate determination of whether

Defendants engaged in impermissible discrimination.  *Fallis v. Kerr-McGee Corp.*, 944

F.2d 743, 744 (10th Cir. 1991).

Defendants contend that Plaintiff cannot establish a prima facie case because he

was not "qualified" for admission due to the "No Future Application" provision in the

Settlement Agreement.  *Doc. 410* at 9–10.  Defendants base this argument on the

dictionary definition of "qualified" as "having complied with the specific requirements

or precedent conditions (as for an office or employment)."  *Id.* at 10 (quoting *Qualified*,

Merriam Webster, https://www.merriam-webster.com/dictionary/qualified).  To

support their position, Defendants cite their own discovery responses in which they

state their opinion that Plaintiff was not qualified due to the Settlement Agreement.  *See*

*id.*; *doc. 410-8* at 2 ("It is my understanding that [Plaintiff] is not qualified for

readmission by the terms of a Settlement Agreement amongst the parties."); *doc. 410-9*

at 2 (same).

Defendants' subjective understanding that Plaintiff was not qualified is properly

considered at the second stage of the *McDonnell Douglas* framework but not the first.

*See Burrus v. United Tel. Co. of Kan.*, 683 F.2d 339, 342 (10th Cir. 1982).  The goal at the prima facie stage is to "eliminate[] the most common nondiscriminatory reasons for the plaintiff's rejection."  *Burdine*, 450 U.S. at 254.  In this context, "qualified" is best understood as referring to the academic standards and technical requirements of admission according to which all applicants are screened.  This definition is consistent with one used in a similar context, under Section 504 of the Rehabilitation Act of 1973, which prohibits disability discrimination by recipients of federal financial assistance. *See* 29 U.S.C. § 794.  The regulations implementing Section 504 define "qualified" in the context of postsecondary education as meaning that a person "meets the academic and technical standards requisite to admission or participation" in the educational program. 45 C.F.R. § 84.3(*l*)(3).

The absence of a settlement agreement barring all future applications is not the sort of technical prerequisite that is commonly used to screen applicants.  Nor is the existence of such a settlement agreement the sort of common nondiscriminatory justification that defeats a prima facie case for discrimination—certainly not where the settlement agreement arose from an earlier suit for discrimination.  The parties' Settlement Agreement is more properly considered at subsequent stages of the *McDonnell Douglas* framework, where reasons for disqualification that are specific to the plaintiff may be closely evaluated for discriminatory intent.  *See E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192–94 (10th Cir. 2000).

Furthermore, Plaintiff's attempt to rescind the Settlement Agreement merits some consideration here. Setting aside the question of whether Plaintiff's attempted rescission was successful, it is clear that Plaintiff wishes to be relieved of the Settlement Agreement. Defendants could, if they so choose, accept Plaintiff's offer to return the $6,000 and rescind the Settlement Agreement by mutual agreement. *See, e.g., Young v. Lee*, 138 P.2d 259, 259 (N.M. 1943). As Defendants have the option to mutually rescind the Settlement Agreement, they cannot insist upon its terms as the basis for finding Plaintiff not qualified. Stated differently, Defendants cannot argue that Plaintiff is not qualified on the basis that Defendants choose to consider him not qualified. Having disposed of Defendants' only argument for summary judgment regarding Plaintiff's prima facie case, I will proceed to the next stages of the *McDonnell Douglas* framework.

**B. Defendants' Proffered Reason & Pretext**

Turning to the second stage, Defendants' reliance on the "No Future Applications" provision of the Settlement Agreement is now a proper subject of consideration. Plaintiff does not dispute that the Settlement Agreement provides a nondiscriminatory reason for rejecting his application. *Doc. 419* at 21. The heart of the parties' dispute is whether Defendants' reliance on the Settlement Agreement was pretextual.

Pretext may be shown by demonstrating "either that a discriminatory reason more likely motivated [Defendants] or that [Defendants'] proffered explanation is

unworthy of credence." *Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003).  To

show that the proffered reason is unworthy of credence, Plaintiff must demonstrate

"such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in

[Defendants'] proffered legitimate reasons for [their] action that a reasonable factfinder

could rationally find them unworthy of credence and hence infer that [Defendants] did

not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United*

*Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (internal quotation marks and citation

omitted).  "The relevant inquiry is not whether [Defendants'] proffered reasons were

wise, fair or correct, but whether [they] honestly believed those reasons and acted in

good faith upon those beliefs." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 924-25

(10th Cir. 2004).

### 1.   *Invalidity of the Settlement Agreement*

Plaintiff's primary argument for pretext is that the Settlement Agreement was

not in effect at the time he submitted his application because it was void on various

grounds and because Plaintiff had rescinded it by offering to return the $6,000.  *Doc. 419*

at 22–24.  Defendants disagree that Plaintiff effectively rescinded the Settlement

Agreement.  *Doc. 410* at 12–14.  Defendants furthermore argue that, because Plaintiff did

not seek a suit for rescission within the statute of limitations, the Settlement Agreement

is "presumptively valid."  *Id.* at 14.  Plaintiff disagrees with Defendants that he was

required to bring a suit for rescission, asserting that rescission may be accomplished out of court.  *Doc. 419* at 23–24.

Whether reliance on a "no future applications" provision of a settlement agreement is a legitimate non-pretextual reason to reject an application is not a matter of first impression in this circuit.  *See Kendall v. Watkins*, 998 F.2d 848, 850–52 (10th Cir. 1993); *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1266–68 (10th Cir. 2007).  In *Kendall*, the plaintiff agreed to withdraw her E.E.O.C. complaint in exchange for an award of backpay and the revision of her personnel file to show that she had resigned and not been terminated.  998 F.2d at 849.  The parties' agreement provided that the employer would "have no further obligation" to the plaintiff upon her resignation.  *Id*.  Subsequently, the plaintiff submitted applications for employment, which were rejected by the employer with the statement that the "terms of the agreement state [we have] no further obligation to you; therefore, any other applications we receive from you will not be considered and will be returned to you."  *Id*.  The plaintiff filed suit for discrimination and retaliation.  *Id*.  She argued that the settlement agreement was not a legitimate reason for rejecting her applications because the employer's interpretation of the "no further obligation" provision was incorrect.  In rejecting the plaintiff's argument, the Tenth Circuit noted that "[t]his is not an action for breach of the settlement agreement or to enforce the agreement" and therefore it need not determine whether the employer's interpretation was correct.  *Id.* at 851.  Even though the "no

further obligation" language did not clearly prohibit future applications, the Tenth

Circuit noted that "[m]erely showing that the reason articulated by the employer is

wrong or unreasonable will not suffice" to show pretext. *Id*. Because the plaintiff

presented no other argument for pretext, the Tenth Circuit affirmed summary judgment

for the employer. *Id.* at 852.

In *Jencks*, the employer relied on a no-reemployment provision in the parties'

settlement agreement to refuse to consider the plaintiff's application for a position as an

independent contractor. 479 F.3d at 1263. To begin, the Tenth Circuit noted that if the

employer "erred in interpreting the contract *and did so with retaliatory intent*," then its

reliance on the settlement agreement would not defeat the plaintiff's retaliation claim.

*Id.* at 1266 (emphasis added). Without deciding whether the employer "was correct in

its interpretation of and reliance on the Settlement Agreement," the Tenth Circuit

determined that the employer had asserted a legitimate nondiscriminatory reason for

rejecting the plaintiff. *Id.* at 1266–67. In attempting to show pretext, the plaintiff

described the employer's interpretation of the settlement agreement as "a tortured

reading" of its terms. *Id.* at 1268. The Tenth Circuit rejected this argument, finding that

the employer's interpretation of the no-reemployment provision to include positions as

an independent contractor was reasonable and thus not pretextual. *Id*.

Courts in other circuits have considered similar arguments and applied similar

reasoning. *See Franklin v. Burlington N. & Santa Fe Ry. Co.*, 2005 WL 517913, at *3–6

(N.D. Tex. Mar. 3, 2005) (unpublished); *Smith v. Ne. Ga. Med. Ctr., Inc.*, 2018 WL 3731121, at *3–5 (N.D. Ga. June 25, 2018) (unpublished); *Kersey v. Wash. Metro. Area Transit Auth.*, 586 F.3d 13, 17–19 (D.C. Cir. 2009).  One court has observed that a "plaintiff arguing pretext must do more than win the dispute over contractual interpretation; she must show that her opponent was concocting its story."  *Reese v. Karl Schmidt Unisia, Inc.*, 2008 WL 2783259, at *8 (N.D. Ind. July 14, 2008) (unpublished).  That court held that the plaintiff's interpretation of the parties' settlement agreement was "not so obviously correct, nor [the employer's] so without reason, so as to create any inference that [the employer] is lying about its motivation for not re-hiring" the plaintiff.  *Id*.

In *Franklin*, the plaintiff entered into a verbal settlement agreement with his employer to resolve his suit for racial discrimination.  2005 WL 517913, at *1.  As part of that agreement, the plaintiff resigned from his employment.  *Id*.  After he resigned and accepted a settlement check, the employer sought to have the plaintiff sign a written agreement that included a provision barring the plaintiff from reapplying to any position with the employer.  *Id*.  The plaintiff refused, but a note was added to his personnel file indicating that he was ineligible for rehire.  *Id*.  Subsequently, the plaintiff reapplied for employment and was rejected on the grounds that he was ineligible for rehire.  *Id*.  In his subsequent suit for discrimination and retaliation, the court granted summary judgment to the employer, finding that "a mere mistake in [the employer's] view of the terms of the contract is not grounds" to find pretext.  *Id.* at *4.  The court

16

emphasized evidence showing that a no-rehire provision was contemplated by the parties during their negotiations and that the employer "at all times acted in conformity" with a belief that such a provision was included in their verbal agreement. *Id*.

Conversely, in *Smith*, the court denied an employer's motion to dismiss due to allegations that its reliance on the no-hire provision in the settlement agreement was inconsistent.  2018 WL 3731121, at *5.  There, the parties entered into a settlement agreement regarding the plaintiff's claims under the Americans with Disabilities Act. *Id.* at *1–2.  In contrast to *Franklin*, the settlement agreement included an explicit no-rehire provision.  *Id.* at *2.  However, the plaintiff alleged that she had received verbal representations from the employer that it might consider her for rehire in the future, notwithstanding the no-rehire provision.  *Id.* at *5.  Citing *Jencks*, *Kendall*, and *Franklin*, the court elaborated on the appropriate analysis when the employer's proffered reason is a no-rehire provision of a settlement agreement:

> [E]ven with a no-rehire provision, an employer may still choose to rehire an employee in spite of such a provision; it is simply not required to do so. And if an employer decides not to hire an employee who has agreed not to seek reemployment, it might be because of the terms of that agreement or it might be for reasons prohibited under the federal employment discrimination statutes, or both.

*Id.* at *4.  Thus, the *Smith* court found that the plaintiff's allegations regarding the employer's inconsistent representations cast doubt on its asserted reliance on the settlement agreement and defeated the employer's motion to dismiss.  *Id.* at *5.

17

Finally, *Kersey* presents the inverse situation to the matter at hand.  There, the plaintiff alleged that his employer had rescinded a settlement agreement under which the plaintiff was barred from any position that required driving.  586 F.3d at 17–18.  The plaintiff alleged that the employer's refusal to promote him to driving positions was discriminatory and that its reliance on the settlement agreement was pretextual.  *Id*.  The plaintiff pointed to several pieces of evidence to contend that the employer had waived or rescinded the bar on driving positions.  *Id*. at 18–19.  The court found the plaintiff's evidence unconvincing to establish that the employer had intended a rescission.  *Id*.  Although the D.C. Circuit grounded its holding in contract law principles, *see id*. (citing Williston on Contracts § 39:28), the analysis was akin to *Smith* and turned on whether the employer acted in a manner inconsistent with an intent to hold to the terms of the settlement agreement.  *See id*. at 19.

From this review of applicable case law, a few principles become clear.  The first is that mistakes or disagreements as to the correct interpretation or the enforceability of a contractual provision do not suffice to establish pretext, even if the defendant is wrong; the critical question is whether the defendant honestly believed its interpretation was correct.  *Kendall*, 998 F.2d at 851; *Jencks*, 479 F.3d at 1268; *Reese*, 2008 WL 2783259, at *8; *Franklin*, 2005 WL 517913, at *4.  Second, in order to undermine the defendant's belief in its interpretation, a plaintiff must identify such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions," *Swackhammer*, 493

F.3d at 1167, in the defendant's position that would permit an inference that the defendant did not honestly believe the settlement agreement provided a legitimate basis to reject the plaintiff's application. *See Kersey*, 586 F.3d at 19; *Smith*, 2018 WL 3731121, at *5.

The parties engage in extensive argumentation regarding whether or not a contract may be rescinded unilaterally. *Doc. 410* at 12–13; *doc. 419 passim*; *doc. 434 passim*; *see also doc. 440* at 10–19. Whether a contract may be rescinded by unilateral action and, conversely, whether a party seeking rescission must necessarily file a suit in equity are highly general propositions that provide little guidance for the matter at hand. In light of the principles outlined above, the correct procedure for rescinding a contract is simply irrelevant. Assuming *arguendo* that the Settlement Agreement was rescindable on some ground[1] and that Plaintiff's offer to return the $6,000 fully accomplished the rescission, Plaintiff must still refute Defendants' *belief* that the Settlement Agreement was valid and enforceable.

The undisputed facts in the record show that Defendants have consistently treated the Settlement Agreement as enforceable regardless of Plaintiff's belief that it was void. Each time Plaintiff advised Defendants that he considered the Settlement Agreement null and void and/or took steps to rescind it, Defendants made clear to

---

[1] "In the absence of mutual mistake of fact, fraud, failure to express the agreement of the parties, or material breach by the other party, a contract may not be rescinded." *Travelodge Hotels, Inc. v. Kali Ltd.*, 2005 WL 8163885, at *4 (D.N.M. July 26, 2005) (unpublished).

Plaintiff that they disagreed and refused to reconsider their position that it was binding and enforceable. *Doc. 419-12*; *doc. 419-29*; *doc. 419-32*; *doc. 419-35* at 1; *doc. 419-36* at 1; *doc. 410-10* at 6.

Moreover, none of Plaintiff's theories for the invalidity or avoidance of the Settlement Agreement are so overwhelmingly convincing that Defendants' belief that it was enforceable strains credulity. The only theory that Plaintiff specifically develops in his response to Defendants' Motion concerns the addition of the phrase "No Degree Earned" to his transcript. *Doc. 419* at 22–24. The plain language of the Settlement Agreement does not contain any provision expressly prohibiting the addition of "No Degree Earned" to Plaintiff's transcript. *See doc. 410-3*. Plaintiff believes that "No Degree Earned" is "similar" to the phrase "Terminated from the Graduate Program," *see id.* at 2, but provides no evidence to suggest that Defendants understood this to be the case. In fact, the two phrases appear to be materially different in this context. "Termination" is by its nature involuntary and misconduct might reasonably be inferred from its use. The phrase "No Degree Earned" simply states a fact which could have come about by any number of reasons such as a financial inability to continue with an educational program. Based on the evidence adduced by the parties, there is no basis to conclude that Defendants believed that adding "No Degree Earned" to Plaintiff's transcript would invalidate the Settlement Agreement. Because Plaintiff has

not provided any evidence to undermine Defendants' belief that the Settlement

Agreement was valid, he has failed to establish pretext on this basis.

   2.  *Statistical Evidence*

   Although Plaintiff devotes considerably less time and energy to this argument

(and Defendants do not address it at all), he also contends that statistical evidence

supports a finding of pretext.  *See doc. 419* at 21–22.  Statistical evidence is one way of

showing that "a discriminatory reason more likely motivated" the defendant.  *Stinnett*,

337 F.3d at 1218; *Smith v. Bd. of Cnty. Comm'rs of Johnson Cnty.*, 96 F. Supp. 2d 1177, 1189

(D. Kan. 2000).  However, statistical evidence "will rarely suffice" on its own to show

pretext.  *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1115 (10th Cir. 2007) (quoting

*Ortiz v. Norton*, 254 F.3d 889, 897 (10th Cir. 2001)).  "At the very least, in order to create

an inference of pretext, a plaintiff's statistical evidence must focus on eliminating

nondiscriminatory explanations for the disparate treatment by showing disparate

treatment between *comparable* individuals."  *Id.* (internal quotation marks and citation

omitted).

   Plaintiff has submitted statistical evidence for the following populations: (1)

graduates from NMT's materials engineering PhD program for the last thirty years, and

(2) professors in NMT's materials engineering department.  *Doc. 419* at 20.  The broadest

relevant comparative population for purposes of Plaintiff's Title VI claim is *applicants* to

NMT's materials engineering PhD program.  *See Turner v. Pub. Serv. Co. of Colo.*, 563

F.3d 1136, 1147 (10th Cir. 2009) (rejecting overall employment statistics and emphasizing gender composition of applicant pool in failure-to-hire claim based on sex). Plaintiff provides no evidence regarding the composition of the applicant pool in 2016 (the year he applied) or any other year. In his Third Amended Complaint, Plaintiff *alleges* that several less qualified non-black students were admitted into NMT's materials engineering PhD program in or around 2016. *Doc. 150* at ¶ 93. Although all doubts must be resolved in Plaintiff's favor, allegations alone will not defeat summary judgment. *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997). Moreover, assuming that Plaintiff could provide evidence corroborating this allegation, he makes no allegations about non-black applicants who had previously sued the school (and/or its officials) and subsequently settled with an agreement not to reapply.[2] Without such allegations and evidence to support them, Plaintiff fails to present a statistical analysis of a relevant comparative population which would eliminate Defendants' nondiscriminatory reason for refusing to consider Plaintiff's application for readmission.

Plaintiff has failed to provide any evidence that would permit a factfinder to conclude that Defendants did not honestly believe they were entitled to rely on the

---

[2] Certainly, "comparable" does not mean that the population must precisely mirror Plaintiff's circumstances. Nonetheless, the population of all applicants without any negative or litigative history with the school is not comparable.

Settlement Agreement.  Because he has failed to establish that Defendants' reliance on the Settlement Agreement was pretextual, his Title VI claim must be dismissed.

## C.  Injunctive Relief Under *Ex Parte Young*

The *Ex parte Young* doctrine permits federal courts to issue injunctions to prevent state officers from violating federal law.  209 U.S. 123, 155–56 (1908).  Ordinarily, the Eleventh Amendment bars suits by individuals against states and against state officers in their official capacities.  *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).  The *Ex parte Young* doctrine overcomes this bar where a plaintiff seeks prospective injunctive relief from an ongoing violation of federal law.  By permitting injunctive relief against state officers in their official capacity, the doctrine strikes a balance between state sovereign immunity and "the need to promote the supremacy of federal law."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984).  Because *Ex parte Young* is rooted in the Supremacy Clause, U.S. Const. art. VI, cl. 2, it applies exclusively to violations of federal law.  The court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" in assessing whether the Eleventh Amendment bar is overcome.  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks, brackets, and citation omitted).  Where there has been no violation of federal law, the Eleventh Amendment bars suit.

Plaintiff seeks an injunction against Defendants Wells and El-Osery, requiring them to readmit Plaintiff into the PhD program. *Doc. 150* at ¶ 98; *doc. 196*. Because Plaintiff has failed to raise a genuine dispute of material fact that would permit his Title VI claim to proceed, and because his Third Amended Complaint asserts no other violation of federal law, his claim for injunctive relief against the individual Defendants necessarily fails as well.

## V.    CONCLUSION

Plaintiff has not provided adequate evidence to show that Defendants' reliance on the Settlement Agreement was pretextual. I therefore RECOMMEND that the Court GRANT Defendants' Motion for Summary Judgment (*doc. 410*) and DISMISS WITH PREJUDICE Plaintiff's Third Amended Complaint.

I further RECOMMEND that the Court DENY Plaintiff's Motion for Leave to Submit a Surreply (*doc. 440*) as the proposed surreply contains no information or arguments material to the resolution of this case.

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**